Gwendolyn Barlow
IL ARDC # 6274519
P.O. Box 5829
Buffalo Grove, IL 60089
Attorney for Raymond Ervin

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Sarina Ervin, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 20-6006 |
| | ) | (formerly 19th Judicial Circuit Court of Lake |
| | ) | County – Case 04D1943) |
| | ) | |
| vs. | ) | |
| | ) | |
| Raymond Ervin, | ) | |
| Respondent. | ) | |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Respondent Raymond N. Ervin ("Raymond") hereby removes Case Number 04D1943 from the Nineteenth Judicial Circuit Court of Lake County to the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C § 1441(b), 1331, 1332 and 1446, and as grounds for its removal states as follows:

**STATEMENT OF THE CASE**

1.      Petitioner served summons with Third Party Citation to Social Security Administration (SSA) (see attachments) on or about August 20, 2019. The matter was continued due to COVID-19, however, was finally scheduled for hearing on September 11, 2020 where the court, due to a new judge, continued the hearing to Third Party Citation to SSA to October 9, 2020.  A copy of the Service of Process, Citation and Orders served upon Respondent in the state court action are attached in the list of attachments in the e-record.  Pursuant to 28 U.S.C. § 1446**(b),** this notice has been timely filed.  Background and procedural history is located in Appendix 1 for reference.

1

2.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § **1331** and is one which may be removed to this Court by Respondent as it involves one of federal law pursuant to the provisions of 28 U.S.C. § **1441(b)**, the Social Security Act, 26 USC, the Internal Revenue Code and the 31 USC § 5311, the Bank Secrecy Act. In addition, complete diversity exists among the parties pursuant to 28 U.S.C. § **1332**. Sarina Ervin ("Sarina") is a citizen of Ontario, Canada and Raymond is a citizen of Buffalo Grove, Illinois, USA with an amount in controversy in excess of $75,000.  The holding by the Supreme Court in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 clarifies instances where the *Rooker-Feldman* doctrine does not bar matters where the state court has not issued a judgment. "A state court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." Id., at 487. [Emphasis added]. The Social Security Act, Internal Revenue Code and Bank Secrecy Act,  all federal statutes, are the basis for Sarina's claim and gives the district court subject matter jurisdiction for the removal. Raymond's Notice of Removal would not be barred by the *Rooker-Feldman* doctrine. See also *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U. S. 280 (2005).

3.      Since the state court has set the SSA Memorandum of Law (see attachments) for hearing on October 9, 2020 and has not ruled on the matter, the matter presents an independent claim based on the garnishment of SSA benefits by a private collection attorney. In addition, the Supreme Court in *Law v. Siegal*, 134 S. Ct. 1188 (2014) was clear that courts cannot decide in their discretion, to order garnishment of exemptions such as Social Security benefits.  Federal law "does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate." *Id.*, at 1196. Hence the state court would be precluded from ordering the garnishment of an exempted federal benefit such as Social Security.

4.      Sarina's Memorandum of Law seeks a turnover order for garnishment of Raymond's SSA benefits to satisfy child support payments.  Pursuant to a citation served upon SSA (see attchments), Sarina is seeking to compel SSA to submit to an examination and to provide books and records regarding Raymond's Social Security benefits payments to her and cites *Thomas V. Illinois Department of Healthcare and Family Services*, 2016 IL App (1st) 143933 in support of her citation to discover assets.  Sarina states that "it is clear that this Court can enter a turnover or garnishment order directing the Social Security administration to turnover to Sarina a percentage

of Raymond's monthly SSDI benefits…" *Thomas* is premised on the state acting to garnish the proceeds of a personal injury settlement from a private insurance company. This case differs in that Sarina, absent a private right of action and through engagement of a private attorney, seeks to garnish Raymond's SSA benefits on a claim of child support despite evidence from the Illinois Department of Healthcare and Family Services (ILDHFS) of an Termination of IWO (see attachments) and rebates of overpayment (see attachments) since May 2019 to present. According to 31 U.S.C § 3716 (c)(3)(A)(i), only the federal government can garnish SSA benefits. Any other creditor is prevented by 42 U.S.C. § 407 (a). Pursuant to 42 U.S. Code Subchapter IV, the proscribed rules are codified that govern child support assistance of which The Federal Office of Child Support Enforcement (OCSE), U. S. Department of Health & Human Services, has oversight.

5.      It is unclear how or when the Canadian order was forwarded to Social Security, but even after the ILDHFS issued the termination of the IWO letter, Social Security continues to garnish money each month and the State of Illinois then rebates the same amount to Raymond 7-10 days later. This process has occurred in excess of a year and threatens Raymond's ability to support himself. There is still an outstanding amount of money that has never been returned by the State and begs the question as to where this money went.

6.      Sarina, a non-resident Canadian national is a Title IV-D recipient of the foreign reciprocating country (Province of Ontario), Canada, and does not have a 42 USC § 1983 individual right to pursue child support remedies independently in a 735 ILCS 5/2-1402 action where she has assigned her rights to the Province of Ontario pursuant to 42 USC Chapter 7 Sub IV §§601–687. As such the State of Illinois is the only authorized agent to pursue such matters on behalf of the assignee, the Province of Ontario in accordance with the CSEA guidelines.

7.      Sarina assigned her rights to collect in exchange for public assistance benefits in the Province of Ontario, Canada in 1999 (see attachments). Because she had assigned her rights and lacked standing, she does not possess a private right of action and is precluded under 42 U.S.C.§ 1983 to bring a collection action in this matter. In violation of the court's holding in *Blessing (Blessing v. Freestone*, 520 U.S.329, 117 S. Ct, 1353, 137 L.Ed.2d 569 (1997)) she stood in the place of the assignee, Province of Ontario, Canada – a foreign member state by agreement - and collected money that was not hers to collect. The Court in *Blessing* held that "individuals who

received Title IV-D assistance, a federal right, were not afforded a private right of action to collect under §1983." The Court went on to state that "Dismissal is proper if Congress specifically foreclosed a section 1983 remedy." *Id* at 329. This Court also held similarly in *King v. Bradley*, 829 F. Supp. 989 (N.D. Ill. 1993).

8.      Illinois maintains a similar requirement that when a party agrees in writing to receive assistance from the State, they assign their rights to collect child support to the State. The court in *Department of Public Aid v. Peavy, 716 N.E.2d 1261, 1265, 307 Ill. App.3d 16, 240 Ill.Dec. 314 (Ill. App., 1999)* states that,

> "Title IV-D of the Social Security Act also required states to assist in enforcing and collecting child support for families who receive AFDC in order to receive federal AFDC funds. 42 U.S.C. §§ 651 *et seq.* (1982). Congress mandated the assignment of support rights to the states in section 602(a)(26) of the United States Code, which required a state plan to provide:
>
> "[A]s a condition of eligibility for aid, each applicant or recipient will be required —
>
> (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family
>
> member for whom the applicant is applying for or receiving aid, and
>
> (ii) which have accrued at the time such assignment is executed[.]" 42 U.S.C. § 602(a)(26)(A) (1982).

9.      Sarina, as the assignor, is not permitted to exercise the rights of the assignee, *See Community Bank of Greater Peoria v. Carter*, 283 Ill.App.3d 505, 508, 218 Ill.Dec. 791, 669 N.E.2d, (An "`assignment operates to transfer to the assignee all of the assignor's right, title or interest in the thing assigned. [Citations.] The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor".) *See also Bank of Waunaukee v. Rochester Cheese Sales*, 906 F.2d 1185. The Province of Ontario, Canada through the State of Illinois, solely possesses the right to bring a collection action when child expenses (including support) - public assistance funds were provided to Sarina. The relationship is similarly defined within any contract where one party assigns one thing in exchange for another. Sarina assigned her right to collect child support in exchange for the receipt of public assistance from the Province of Ontario, Canada. Among several provisions in the assignment, paragraph 6 expressly states, "The Recipient agrees that only the Minister may end this Agreement at any time." And paragraph 7 expressly states, " The Recipient agrees that when the Assignment ends, any money owing under the order and any interest on the arrears accumulating during the period Recipient received benefits under the FBA or assistance under the GWAA **remain the property of the**

4

**Minister**…" [Emphasis added]. The signed and executed copy of the assignment demonstrate that Sarina was a public assistance recipient. Since Sarina signed this assignment, she agreed that she would not have a right to collect any monies paid to her during the time that she received benefits from the Province. However, Sarina's Memorandum of Law clearly indicates that she sought to collect for money since July 2000. She assigned her rights in 1999 so she has collected and continues to seek to collect money during the same period that she was also receiving public assistance benefits from the Province of Ontario, Canada. When reviewing legislative intent, *Blessing* illuminates that when Congress created Title IV-D, it did not contain a provision for private remedy.

10. The attempt by Sarina appears to pose another blatant issue regarding the demand on Raymond's SSA as the judgment (see attachments) whereby they claim authority was allegedly procured by fraud (see attachments) and lack of notice (see attachments) and these defects are insurmountable.

Sarina's Memorandum of Law (see attachments) further states the following:

> *" Since the outset of these post judgment collection proceedings, Sarina successfully recovered the sum of $124,873.39 from the turnover of various life insurances policies. As such, at this point of time, and as reflected on the Citation served on the Administration, the balance due and owing for child support is $595,163.14"*

This admission of a turnover of life insurance proceeds (see attachments) in a 735 ILCS 5/2-1402 post collection proceeding to a non-resident Canadian citizen that has assigned her rights under Title IV-D and seeks to further advance the improper grant of §1983 rights by the Illinois Courts appears contrary to the *Blessing* ruling that no individual rights attach. Further, the action of the Illinois Courts and Sarina in failing to adhere to the holdings of *Blessing* appears to have trampled Raymond's privacy and property rights by trespassing upon the sovereign domain of the Federal Government as it attempted to fashion a remedy for Sarina that did not observe the long standing boundaries established by 31 USC§5311, Bank Secrecy Act, 31 USC 5312 et. seq., USA Patriot Act, 26 USC §§1471-1474 (and various other sections in Title 26) FACTA, 26 USC§7206 et. seq. Internal Revenue Code.

11. The cash surrender of the insurance proceeds that Sarina indicates in her Memorandum of Law are a direct result of the actions of the Illinois State Court disregarding the regnant Social

Security Act 42 U.S.C. § 602(a)(26)(A) and generating turnover orders to Sarina and the life insurance companies of exempt life insurance policies which without the consent of the policyholder of then in-force variable and universal life policies surrendered, these having a combined face value of approximately $1.25 MM which stripped the sum of $124,873.39 in cash surrender values from said insurance policies that was turned over to Sarina's counsel, Beerman Law for subsequent disposition to her, and the corresponding tax liability was to be attributed to Raymond. In this instance, the Court neither observed the aspects of the BSA 31 USC 5312 et. seq or USA Patriot Act, 26 USC §§1471-1474 that strictly reserves the dissemination of the financial data and personal data of Raymond and his named beneficiaries of these policies and in essence provided Sarina unfettered access to Raymond's personal financial identification. Further, the transfer of assets was made in a manner that the life insurance companies had been previously notified of the suspicious activity by Raymond wherein these requests for information were invalid and suggestive of wire and mail fraud and outside the stated terms of the contracts by parties without privity. The State Court in these turnover orders stated that the cash surrender values of the insurance policies should be turned over and insinuated that the corresponding tax liability was to be attributed to Raymond, which demonstrated that the Court recognized that the funds were indeed taxable proceeds that were being directed to a foreign entity. The turnover order would require that the insurers forego the provisions of 31 CFR §§1025.300 et. seq by shifting the tax burden of the cash surrender assets issued to Sarina to be borne by Raymond, though he did not consent to the surrender or request this action be directed to Sarina, nor did he authorize the release of his private financial data or records to any third party. Further he had informed the insurers by mail, facsimile and phone not to release any data to Sarina or her counsel based on the 2/10/2017 court order terminating the citation, which they did.

12.    To circumvent the FATCA reporting the State Court then ordered that the insurance proceeds were to be forwarded to Beermann Law until such time as the court ordered that the funds could be released by Beermann Law to Sarina. Though Raymond never received the funds he was presented with an IRS Form 1099 against his Social Security Number, (which he at no time released to Sarina or her counsel for each of the policies (three) that were terminated, without his consent upon order of the state court) for the cash surrender value.  The fact that the insurance companies each sent a Form 1099 to Raymond demonstrate that not only did Sarina and her counsel fail to report as required and should have been reported via (FATCA) pursuant

to 26 U.S.C. §§ 1471-1474 and 26 USC§7206 et. seq. IRC, but she impermissibly shifted the tax burden to Raymond which is prohibited (shifting of the tax burden 26 USC§7201). This failure is the very scenario that the legislature envisioned when FATCA was enacted. This statute was intended to curtail this type of tax evasion and identity fraud.

13.     Sarina through her Memorandum of Law further seeks to repeat this scheme in respect to Raymond's Social Security using the same questionable Canadian Order in the Illinois State Court, whereas they rely upon their judicially constructed fiat of 42 USC§1983 to provide her standing contrary to the law of the case in *Blessing*. We also posit that the order upon which she relies is alleged to be fraudulent and may be tested by this Court as it serves as the basis of claim against Raymond as a beneficiary of the Federal Government SSA, of whom she has assigned her rights to via Ontario, Canada, a member state and now comes to stand in the assignee's shoes. This appears to be a violation of 18 USC §§2, 1001(a) wherein the underlying order may be scrutinized for defects in light of Sarina's past testimony of perjury and lack of notice (see trial briefs in the attachments).

14.     The summary examination of the proceedings related to the turnover order of the State Court (see trial briefs in the attachments) is presented below:

> The Court in this instant action had premised its actions upon the disingenuous pleadings of the Petitioner wherein no valid enforceable judgment existed. The possession of a valid enforceable order is required as per 735 ILCS 5/2-1402 to begin supplementary proceedings. In the instant case a Canadian order claimed to be procured by fraud and without notice registered by Sarina, a non-resident Canadian national Title IV-D recipient (lacking standing due to assignment) has served as the basis of a judgment to confer personal jurisdiction over Raymond, a US citizen and Illinois resident.

15.     Because Sarina lacks standing to bring an action in this matter, the state court lacks subject matter jurisdiction as standing is required in order to result in a justiciable matter. Since the court was without jurisdiction, the subsequent orders of the state courts were void, not merely voidable. A case with a void order can be attacked at any time and in any court. See *Kalb v. Feuerstein* (1940) 308 US 433, 60 S Ct 343, 84 L ed 370. An order that exceeds the jurisdiction of the court, is void, voidable, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. See *Pennoyer v. Neff* (1877) 95 US 714, 24 L ed 565.

16.     In addition, SSA, without waiver of sovereign immunity and a non-party, cannot be compelled to produce Social Security information. See *Illinois v. Glover* (No. 17 C 8912 N.D. Ill. Feb. 13, 2018). In this case, the Circuit Court of Cook County entered an order to compel the SSA, who was not a party, to provide social security numbers associated with a criminal prosecution. SSA then filed a notice of removal pursuant to 28 U.S.C. § 1442 to this honorable Court with a motion to vacate the state court order arguing that federal law prohibits disclosure of social security records to the state courts in this manner. The Court agreed with SSA holding "that state courts may not compel a federal agency or official unless sovereign immunity has been waived." *Id* at 2. As in the present case, Sarina has served SSA with a citation to produce social security records of Raymond and is seeking an order from the state court to compel SSA to produce these records. As in *Glover,* Sarina should be prohibited from seeking an order in state court to compel SSA to produce Raymond's social security records.

17.     The laws of cross border litigation are clear. Sarina, a non-citizen of the United States, would have to had served her citation via The Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial matters. Wherein, both the US and Canada are signatories. Assuming Sarina was able to bring an individual matter in the US, she would have to had provided service via the Hague Convention to Raymond. Here a thorough examination of the record does not contain any evidence that Raymond was ever so served. This lack of proper notice violates Raymond's due process rights as an action by a Canadian National against a U.S. citizen in a U.S. forum. Further Sarina's attempt to bring the collection matter to Illinois is restricted. The U.S. Supreme Court restricts forum shopping, whereby in this case there is an attempt by Sarina to find a particular court or forum to try her case, where she believed the chances were greatest for a favorable decision. See *BNSF Railway Co v. Tyrrell*, 137 S. Ct. 1549 (2017). Since Canada retains continuing and exclusive jurisdiction in the matter, then the proper forum should have been in the Canadian Courts.

18.     A foreign country judgment should be converted to a domestic judgment prior to enforcement ("A judgment of a foreign country may not be enforced by registration, which is available only for the judgments of courts of the United States." See, e.g., 28 U.S.C. § 1963). In

this case, the record demonstrates that Sarina did not complete this requirement before initiating the collection proceeding.

19.     The state court's order to hear Sarina's request for garnishment of SSA benefits seeks to deprive Raymond of his right to equal protection under the 14th Amendment of the constitution which prohibits states from denying any person within its jurisdiction the equal protection of the law.   Illinois Department of Healthcare and Family Services (as agent for Province of Ontario) had determined that Raymond had no arrearage and that no child support was due (see attachments). The States Attorney Office has also declined to pursue an action to collect as they have not been requested to proceed by the assignee, Province of Ontario, Canada. (see 6/2/19 court transcript and letter from State's attorney in the attachments).

20.     The statutory requirements of 735 ILCS 5/2-1402 are quite clear and apply to everyone who seeks to conduct supplementary proceedings in Illinois.  The statute among other things, requires a judgment with a specific amount owing.    Similarly situated judgment debtors are afforded the safeguards and provisions intended by the legislature, however Raymond, otherwise similar, was treated differently by the state court.  The State Court refused to enforce the definite judgment amount provision of the statute.  The State Court failed to enforce the statute in Raymond's case and allowed the enforcement of an amount of money that had not been specifically included in a judgment. Yet, in Raymond's case, Sarina includes her own calculations of an amount owing which they have attached to the Memorandum of Law; **there is no U.S. judgment with the specific amount owing**. Within the various citations there were several different amounts were provided to the Court pursuant to their belief as to the exchange rate between the Canadian and U.S. dollar as to arrearages.  Of note, the state court terminated the original citation because the order had been vacated (See 2/10/2017 transcript in the attachments). The refusal to follow the state statute requiring a judgment that includes a specific amount in a citation proceeding are violations of Raymond's right for equal protection. See *Schak v. Blom*, 777 N.E.2d 635, 334 Ill. App.3d 129, 267 Ill.Dec. 832 (Ill. App., 2002).  The State Court violated its own statutes and therefore violated Raymond's constitutional (federal and state) rights. The State of Illinois, through its judges, ignored its own statutes and Supreme Court rules and thus violated his access to equal protection under the laws of the State.  Of note,

without the violation of the statutes and Supreme Court Rules, Sarina would not now be attempting to violate the Federal Statutes and Rules as to the Social Security Administration. The state court in Illinois has permitted Sarina and her counsel to continue to violate or the court ignore the statutory requirements, let alone violates Title IV-D (see p. 9, 8/11/17 transcript in attachments) .

21.  It is unclear how an attorney cannot know where to sign the Certification on a Citation to Discover Assets.  It begs the question whether an attorney should then attach a Certification to the Citation if they are unsure as to where to sign it and thus comply with the statute.  The violation of the exemption statute in turning over exempt personal property, that is the insurance policies is also of significance. If §1402 does not list something as an asset to seize to satisfy a judgment, you cannot do it.  The statute was later amended by the legislature to specifically include assets such as country club memberships but not life insurance policies. See *Itasca Bank & Trust Co. v. Larsen and Son*, 815 N.E.2d 1259, 352 Ill. App.3d 262, 287 Ill.Dec. 456 (Ill. App., 2004).

22.      It is unclear how a non-resident Canadian party absent a §1983 right via legislative act and without standing can enforce a judgment that has been assigned under Title IV-D, where they are improperly before the court as no remedy may be afforded them in law, and they are not an aggrieved party before the court, bring an action against a US citizen who is in compliance regarding the Illinois Child Support Enforcement Program.

23.      It is also unclear whether a non-resident Canadian party acquiring §1983 rights via judicial fiat has the right to impinge the legitimate rights of due process and equal protection wherein the Respondent has demonstrated his right to equal protection and due process as a citizen of the US and that the basis for such action rests in a scheme upon both the citizen and the US Government.

24.      Because Sarina did not having standing to bring the citation, Raymond should be restored to his status prior to the initiation of the matter whereby his three life insurance policies were in full force and effect as well as the award of all costs and fees associated with the defense of this action.

WHEREFORE, Respondent Raymond Ervin prays that this action be removed to the United States District Court for the Northern District of Illinois, Eastern Division.

Dated: October 8, 2020

By:     s/Raymond N. Ervin

 s/ Gwendolyn M. Barlow

Gwendolyn M. Barlow
P.O. Box 5829
Buffalo Grove, IL 60089
(847) 204-0416 Phone (847) 465-1910 Facsimile
 barlowervin727@gmail.com
ARDC # 6274519
Attorney for Raymond Ervin, Respondent

## CERTIFICATE OF SERVICE

This is to certify that the foregoing NOTICE OF REMOVAL, with exhibits, was e-filed through ECF and electronically served on October 8, 2020 to:

> Jonathan Steele
> 161 North Clark Street, Suite 3000
> Chicago, IL  60601
> jsteele@beermannlaw.com
>
> *Attorney for Petitioner*

## APPENDIX 1

### Background/procedural history

As the gravamen of the case at bar centers upon the impermissible grant of §1983 rights a brief exploration as to how such rights manifested themselves is necessary.

1.      This is the furtherance of a series of impermissible civil actions undertaken over the past twenty (20) years in the Illinois Courts by Sarina Ervin, a non-resident Candian citizen receiving public assistance pursuant Title IV-D that has neither a right under 42 USC§1983 due to her assignment and surrender of her individual rights to the Province of Ontario in *all matters related to the Canadian judgment* under Title IV-D, 42 U.S.C. 651 et seq., as the statute provides no private right of action, nor does she qualify as a party having standing in Illinois as she has no domicile or minimal contacts in the State, who has assumed the role of the assignee and donned the robe of the State in the pursuit of the registration of an alleged fraudulently obtained judgment by filing her action using the case number  from a previously dismissed State's case. This is evidenced in the 00D002067 case wherein Sarina and her counsel had clearly undertaken to interfere in the lawful administration of a Title IV-D program and shape the contours by attempting to apply aspects of the IMDA that would allow them to financially enrich themselves. This would merely be a matter of *forum non conveniens* as the issue should have been brought in Ontario, Canada, but Sarina was able to do so in Illinois as it was outside the purview of the Ontario Ministry and unable to be scrutinized. The use of an Illinois attorney, Ms. Nancy Murphy, Esq. that was providing personal representation for Sarina in this matter in violation of the Illinois Supreme Court Rules regarding Multi-Jurisdictional Practice and the fact that this action had no proper notice under the Hague Convention for Service Abroad also demonstrate this point. Subsequent to the dismissal of the case and the direction that the matter had to be filed under the existing UIFSA (2004),  the case was filed again by Sarina and her attorney Nancy Murphy under 04D001943 and after a series of appeals at the State Court the order was registered. Thereafter, an independent action was undertaken at the Federal District Court and appealed to the Federal Appellate Court which dismissed the matter because of *Rooker-Feldman*, thereafter the case sat idle for approximately four years.

2.      When the Petitioner brought the Citation to Discover Assets in 2016, the defects in bringing this action were glaring:

(a) The Petitioner was a Title IV recipient that had <u>permanently assigned her rights to recovery to the Province of Ontario, Canada.</u> A point that the Court misapprehended as **the Petitioner never had standing to bring the matter as she was owed no right to the any claim.**

(b) **The Petitioner had <u>admitted to committing perjury to procure the Canadian Order</u>**.

(c) The Petitioner also failed to provide for the Respondent to receive notice of the Canadian hearing resulting in the order, where he was without counsel, had no substantial contacts (resided in US for five years) and the Petitioner demonstrated that no notice was provided by a Canadian attorney that researched the matter and a Registered Illinois Process Server that researched the Lake County Sheriff's Service logs. The Illinois Supreme Court in *Heard* has held that the clear evidence of fraud precludes the validity of registration and any subsequent judgment as void and unenforceable.

> "The long-standing constitutional standard for determining whether a forum may enter a binding judgment against a defendant is whether the defendant had minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Kulko, 436 U.S. at 92, 98 S.Ct. at 1696-97, 56 L.Ed.2d at 141. For minimum contacts to exist, it is essential "`that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Boyer v. Boyer*, 73 Ill.2d 331, 337, 22 Ill.Dec. 747, 383 N.E.2d 223, 225 (1978), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). "The Respondent's conduct with respect to the forum state must be such that he would reasonably anticipate being haled into that state's court." *Bombliss v. Cornelsen*, 355 Ill.App.3d 1107, 1113, 291 Ill. Dec. 925, 824 N.E.2d 1175, 1179 (2005), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This constitutional standard applies, as here, when the out-of-state forum is a foreign country and a party seeks to have a foreign judgment enforced in Illinois. See generally *Koster v. Automark Industries, Inc.*, 640 F.2d 77 (7th Cir.1981)." *Department ex rel. Heard v. Heard*, 916 N.E.2d 61, 334 Ill.Dec. 28 (Ill. App., 2009)

(d) The Petitioner here presents a claim for child support, wherein she has received the same benefits she has received from the Province of Ontario, Canada and even if the Petitioner were able to overcome the high bar of her previous impediments, she would still have no basis for a judgment as she has already received benefit from the Canadian Order. This action on her part is disingenuous and serves to mislead the Court and further uses the Court's power in a vexatious fashion to the Respondent.

(e) After doing this multiple time despite the quashing of the citation they refiled the same order with <u>unsigned citations to commence a taking</u>. Then they refiled the Canadian order with merely a registration and claimed the Illinois Marriage and Dissolution of Marriage Act (IMDMA)

allowed them to utilize it [order] without a court hearing on enforcement contrary to the Illinois Supreme Court's established position on foreign child support orders.

3.  The Court here has no justiciable matter before it as the foreign matrimonial order does not confer authority upon the Court as per the Illinois Constitution, further Sarina Ervin a Canadian citizen and Canadian resident <u>whose 42 USC §1983 rights have been foreclosed through her assignment</u>, comes on her own accord here in a post-judgment matter wherein she can neither demonstrate that Raymond had any contemporaneous connection to Canada at the time the order was obtained and had been given proper notice of the judgment, nor that she has satisfied the minimal contacts necessary to bring this matter within Illinois domain. "The existence of personal jurisdiction "depends upon the presence of reasonable notice to the defendant that an action has been brought, [citation] and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." *Kulko v. Superior Court of California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 141 (1978)." *Department ex rel. Heard v. Heard*, 916 N.E.2d 61, 334 Ill.Dec. 28 (Ill. App., 2009)

4.  Supreme Court Rule 277 (a) states, "… if there has been a prior supplementary proceeding with respect to the same judgment against the party, whether it is the Debtor or Third Party, no further proceedings shall be commenced against him except by leave of Court." There was no written leave of court provided by the Petitioner with the second round of citations. Petitioner issued two different citations predicated on two different orders, both orders had been previously vacated by the court. The Citations to Discover Assets were violative of both 735 ILCS 5/2-1402 and Supreme Court Rule 277 which require that there first be a judgment capable of enforcement before there can be an issuance of a Citation to Discover Assets.

5.  Further, "This principle was extended to citation proceedings in *Schak v. Blom*, 334 Ill.App.3d 129, 777 N.E.2d 635, 267 Ill.Dec. 832 (1st Dist. 2002). In an extreme case, misuse of postjudgment collection procedures can constitute abuse of process or malicious prosecution." See March v. Cacioppo, 37 Ill.App.2d 235, 185 N.E.2d 397 (1st Dist. 1962). These opinions would clearly indicate such a taking in the current case.

6.  The court allowed the Petitioner to move forward with the turnover hearing without the prescribed civil procedure to obtain an enforceable judgment and conducting a citation

14

examination hearing. Without these necessary predicates, the action by the Court is no more than an unconstitutional confiscation of property. As required by Supreme Court Rule 277 (c) (3), the judgment debtor is to appear for examination, which never occurred. Rather the Petitioner's counsel, with the court's approval, bypassed the examination.

7.     The court, without authority, entered three Turnover Orders based on an unsigned, unverified Citation without an **enforceable judgment** in violation of SCR 277 (emphasis added). Petitioner served yet another citation to Respondent to conduct a citation examination hearing, after the court had ordered the termination of the Movant's exempt life insurance policies.  The citation was again unsigned, unverified and without an enforceable judgement and not served by the Sheriff.  The record of the Trial Court is silent here, as to the matter of leave of the court to use a special process server, yet an unidentified party delivered the citation to Movant on July 7, 2017, after a timely filed Notice of Appeal.

8.     The facts in this case are similar to those in *Secura Insurance Co. v. Illinois Farmers Insurance Co*.,902 N.E.2d 662, 232 Ill.2d 209, 327 Ill.Dec 541 (Ill., 2009) wherein Secura filed a notice of appeal but did not include a signed certificate or affidavit containing the date of filing with the circuit court. The Appellate Court ruled in favor of Secura. Consequently, the Supreme Court granted Farmers leave to appeal and found that Secura's notice of appeal was untimely due to the lack of signed certification.

9.     The first issue is that the citations were not signed by judgment creditor or attorney for the judgment creditor. When reviewing 2-1402, the requirements are clear regarding the need for a signature and certification.  Signatures were not present on any of the citations sent to the applicable three (3) third party respondent insurance companies.  Based on the language of the statute, the citations were improper and should have been voided by the court.  Instead, the court appeared to have minimized a **statutory** requirement as somehow confusing by the citation form (and therefore within his discretion) when the court stated

> THE COURT: "Just commenting further I do think that it's appropriate for me to note that the issue concerning the signature or non-signature by an attorney of the citations form that is being used is not the most clear form. I would say that. There was information as to who issued it, at least what firm issued it but that issue was not a new fact." R. line 25, p.64, R. line 1-8, p.65, 6/2/2017 transcript.

10.      The citation form states, "The undersigned certifies, under penalties provided by law pursuant to 735 ILCS 5/1-109, that the information contained herein is true and correct."  How can it be that the court excuses the lack of a signature by the attorney or judgment creditor because the form is not clear, disregarding the clear and unambiguous statutory requirements. The Petitioner's attorney did sign the first citation, so it was clearly understood that the knowledge of the signature requirement is imputed to all of the attorneys in the firm.

11.      The court in *Schak v. Blom*, 777 N.E.2d 635, 334 Ill.App.3d 129, 267 Ill.Dec 832 (Ill.App., 2002) held quoting *Siddens*, 304 Ill.App.3d at 511, 238 Ill.Dec 205, 711 N.E.2d at 22, "Courts have a duty to vacate and expunge void orders from court records and thus may sua sponte declare an order void."   In this case, the court not only allowed the unsigned citations, but went further to grant three turnover orders; the court, without authority, breached the life insurance policies without consent of the insured or the beneficiaries.  Clearly the turnover order should not ever have been granted and most certainly should have immediately been subsequently voided by the court as a violation of the exemption statute.

12.      **There has never been an enforceable judgment attached to any of the citations issued by the Petitioner** (underline and emphasis added).  Petitioner merely attached an order from Canada that had not been reduced to a judgment by the court subjecting it to enforcement. The statute is clear that the amount owed must be specific, 735 ILCS 5/2-1402(b).  The order does not contain a specific amount owed.

13.      The court in *Bianchi v. Savino Del Bene Intern. Freight Forwarders*, 329 Ill.App.3d 908, 264 Ill.Dec 379, 770 N.E.2d (Ill.App., 2002) held that "…we construe this language to limit citation proceedings to judgments that are certain and state a specific monetary amount." Bianchi at 694.   The Petitioner's citations have certified, under penalties provided by law pursuant to 735 ILCS 5/1-109, to various amounts, $720,036.53 and $506,586.69 + Interest and Costs, yet these amounts are nowhere to be found in the Canadian order that Petitioner has consistently attached to each of the citations.

14.      It begs the question, where did the figures come from?   The court in *Bianchi* went further to state, "…court's order is not certain, does not state a specific monetary amount, and is not capable of enforcement under the supplementary proceedings statute and Supreme Court Rule 277, 735 ILCS 5/2-1402(b) (West 1998); 134 Ill.2d R.277."  Even though the order from Canada

16

was attached to the citations and amount was indicated as certified by Petitioner's counsel (part of the wording on the form) however it was not signed as required , the court could not have reviewed it because the disparity would have been clear.

15.     Even though the order from Canada was attached to the citations and amount listed as certified by Petitioner's counsel, the circuit court did not enforce the requirement for certainty of the amount of the order pursuant to the statute (§1402) . The court in *Bianchi v. Savino Del Bene Intern. Freight Forwarders*, 329 Ill.App.3d 908, 264 Ill.Dec 379, 770 N.E.2d (Ill.App., 2002) held that "…we construe this language to limit citation proceedings to judgments that are certain and state a specific monetary amount." *Bianchi* at 694.  The court in *Bianchi* went further to state, "…court's order is not certain, does not state a specific monetary amount, and is not capable of enforcement under the supplementary proceedings statute and Supreme Court Rule 277, 735 ILCS 5/2-1402(b)" (West 1998); 134 Ill.2d R.277.

16.     The Canadian order has never been reduced to a judgment amount in Illinois.  The Petitioner attempted to attach orders to citations twice previously, but these orders were previously vacated by the court.  The court in *Gowdy* simply stated, "…a court "cannot confer jurisdiction where none existed and cannot make a void proceeding valid." *People ex rel. Gowdy v Baltimore & Ohio R.R. Co*., 385 Ill. 86, 92, 52 N.E.2d 255 (1943).

**Court Orders Termination and Surrender of Life Insurance Policies in First Void Citation**

17.     The court ordered the termination and surrender of the Respondent's life insurance policies.  There is no authority under 735 ILCS 5/2-1402 to order the surrender of the insurance policies. By inclusion, these life insurance policies, with proceeds payable to Respondent's dependent beneficiaries, are considered exempt and outside the reach of the judgment creditor. The language of 735 ILCS 5/12-1001(f) makes it clear that a life insurance policy is exempt from judgment if the proceeds are payable to the insured's wife, husband, child, parent or other person dependent on the insured.  In fact, this section of the statute, 735 ILCS 5/12-1001(f) could not be clearer of the exemption from judgment of life insurance policies of the insured:

"All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, or to a revocable or irrevocable trust which names the wife or husband of the insured or which names a

child, parent, or other person dependent upon the insured as the primary beneficiary of the trust, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not;"

(Source: P.A. 97-1030, eff. 8-17-12.)

18.     The court in the current matter disregarded this exemption even though Respondent's counsel provided an abundance of caselaw to support the argument that the life insurance policies were exempt from judgment and should not be the source of the turnover order.  The transcript in the hearing on June 2, 2017, demonstrates that the court was determined to justify its actions terminating the life insurance policies and turning over the cash surrender value to Petitioner.  The court specifically states,

> THE COURT: "Well, the judgment exemptions statute does exempt certain life insurance policies from judgment creditors.  But the fact that it exempts certain, only certain policies but not others would seem to support the theory that in other instances where that exemption doesn't apply the Court could probably order the surrender of a cash value for life insurance policy."  R. line 9-17, p. 40, 6/2/2017 transcript.

The court goes through an elaborate analysis to justify the court being able to order the surrender of a cash value for life insurance policy.  But what really was occurring, was argued by Respondent's counsel,

> MR. BOLDT: "You are directing that my client's assets which are his insurance policies be surrendered and turned over, and/or contractual rights for the benefit of the judgment creditor."  R. line 22-25, p. 34, R. line 1, p.35, 6/2/2017 transcript.

19.     Nothing in the statute gives the court this authority yet, the court usurped the contractual rights of the movant with the insurance companies, in effect breaching the contract.  The Appellate Court of Illinois, Second District, summed it up best by quoting a Washington case most closely on point:

> "However, it also held that Washington execution law, despite providing for "`commanding the enforcement of or obedience to any special order of the court'" (Safeco, 47 Wash.App. at 200, 734 P.2d at 43, quoting Wash. Rev.Code § 6. 04.020 (----)) did not give the trial court authority "to direct the management of a judgment debtor's assets or contract rights for the benefit of a judgment creditor" (Safeco, 47 Wash.App. at 197, 734 P.2d at 42). We reach the same conclusion under section 2-1402." *Itasca Bank & Trust Co. v. Thorleif Larsen and Son*, 815 N.E.2d 1259, 1264, 352 Ill. App.3d 262, 287 Ill.Dec. 456 (Ill. App., 2004).

18

The language in 735 ILCS 5/2-1402 and the holding of the court, in *Thorleif Larsen*, are clear and unambiguous that 2-1402 is an exclusive statute regarding assets. If life insurance policies are not named in the statute as an asset, then the policies cannot be reached.

20.     The circuit court in a rush to judgment against Respondent allowed the action to continue without addressing or considering the aspects of the filing that rendered it void ab initio. The court further disregarded the evidence put forth by Respondent's counsel that the Court was without authority; the citation was not executed by the attorney and was not filed to the Judgment Debtor as ordered by the court. Served on Respondent, lacked the verification by affidavit as it was filed against the same parties as the previous citation, that was quashed for lack of a valid judgment, and should be collaterally estopped due to res judicata.

**Petitioner Lacked Standing to Bring any Supplementary Proceeding in Illinois**

21.     It was also pointed out to the Court that Petitioner had assigned her rights in the matter in 1991 to the Province of Ontario, Canada, who exclusively retained all rights to recovery and the matter was presently being attended by the Illinois Department of Child Support under Title IV; wherein Movant was registered and was in compliance; that the Court had no authority to interfere in the rulings of an administrative body. See *Millineum Maintenance v. County of Lake*, 894 N.E.2d 845, 858, 384 Ill.App.3d 638 (Ill. App., 2008).

22.     Movant's counsel also pointed out to the Court that its prior rulings brought by Petitioner at both the trial court and Appellate Court were void as she had no standing to bring them**.** It should be noted that the Petitioner has acted without standing in this court since October of 2004 and generated in excess of a hundred appearances, events, motions, etc. and caused the Respondent considerable expense and defending against them.  **"**It is well established that where standing is lacking, it is inappropriate to consider the merits of the claim raised." Harris Trust & Savings Bank v. Duggan (1983), 95 Ill.2d 516, 70 Ill.Dec. 195, 449 N.E.2d 69; the Province of Ontario maintained the exclusive right to recovery, as such only those actions by the State of Illinois on behalf of Ontario, which were dismissed by the circuit court, are valid. See Community Bank of Greater Peoria v. Carter, 283 Ill.App.3d 505, 508, 218 Ill.Dec. 791, 669 N.E.2d, (An "`assignment operates to transfer to the assignee all of the assignor's right, title or interest in the thing assigned. [Citations.] The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor".)

**Petitioner's Canadian Order Should Never Have Been Registered in Illinois Due to Lack of Notice to Respondent/Appellant Ervin by Issuing Tribunal**

23.     What is most stunning here is that the court was under the patent belief that it had the authority to rectify and resolve the issues that render the Canadian Order void and through some obscure legal wrangling, produce a valid order. This creation myth is simply unacceptable and well beyond the court's reach as the order upon which they relied was without benefit of full faith and credit or comity. See *In re Marriage of Tanveer Basith* , 2019 IL App (2d) 180332-U (Ill. App. 2019).

24.     The Appellate Court in the *Basith* case rendered its opinion under Supreme Court Rule 23 which states, "…may not be cited as precedent by any party except in the limited circumstances allowed under Rule 22(e)(1)."  Supreme Court Rule 22(e)(1) indicates, "An order entered under subpart (b) or (c) of this rule is not precedential and may not be cited by any party except to support contentions of double jeopardy, res judicata, collateral estoppel or law of the case. When cited for these purposes, a copy of the order shall be furnished to all other counsel and the court."

25.     In this matter, the law of the case is applicable as the law applied in *Basith* should also have been applied in the divorce decree issued by the Canadian Court in the Ervin case.

26.     The Appellate Court in *Basith* quotes a US Supreme Court case as it considered the prevailing laws and rights of due process in determining the outcome of the case.  The facts surrounding lack of notice for a divorce decree entered in India without notice to Petitioner/Appellee are startlingly similar to the facts in Respondent Ervin's divorce decree entered in Canada.

27.     The *Basith* Court states, "Finally, we note that we find the trial court's ruling troubling. The trial court's comments reflect that, in dismissing Tanveer's petition, it did not consider American law and fundamental precepts of due process such as the right to notice and the right to defend one's interests. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Rather, the trial court's reasoning indicates that its decision was based on what it assumed the law was in India for pious Muslims. The trial court's carelessness in rendering its decision has caused an

unnecessary year-long delay in the proceedings as Tanveer has had to needlessly wait for her equitable rights afforded under the Act. As our courts have repeatedly observed, "justice delayed is justice denied." Daewoo Int'l v. Monteiro, 2014 IL App (1st) 140573, ¶ 90; People v. Ladd, 294 Ill. App. 3d 928, 930 (1998); Gray v. Gray, 6 Ill. App. 2d 571, 578-79 (1955) ("The law's delay in many lands and throughout history has been the theme of tragedy and comedy. * * * 'Justice delayed is justice denied,' and regardless of the antiquity of the problem and the difficulties it presents, the courts and the bar must do everything possible to solve it"). We therefore strongly encourage the trial court to be more cognizant of the parties' fundamental rights and controlling case law before dismissing an action."   *In re Marriage of Tanveer Basith* 2019 IL App (2d) 180332-U (Ill. App. 2019).

28.     Respondent Ervin, like Tanveer Basith, was subject to the same shortcomings in that the court also did not consider "American law and fundamental precepts of due process such as the right to notice and the right to defend one's interest."  This case was reviewed by the Appellate Court Second District some ten years after Respondent presented his case with strikingly similar facts and evidence, yet his case was dismissed as frivolous and without merit.  As in Basith, "the trial court's carelessness in rendering its decision" caused over a decade long struggle only to have no equitable rights afforded to him under American law.  The axiom "Justice delayed is justice denied" is all too familiar in this case.  The Appellate Court found that the trial court abused its discretion as it granted comity to the Indian divorce in Basith.

29.     Because the Canadian tribunal did not provide notice to Respondent Ervin, the Canadian tribunal lacked personal jurisdiction over him.   The Court in *Basith* quotes *Morey Fish Co. v. Rymer Foods, Inc,.* 158 Ill.2d 179, 187-89 (1994) when it states, "It is essential that a defendant whose personal jurisdiction a foreign court seeks to determine actually be afforded the opportunity to appear, present its case and be heard." Consequently, based on this Reviewing Court's holding in *Basith*, the Canadian divorce decree should never have been registered in Illinois.  This case demonstrates that the law has evolved in the State of Illinois regarding foreign country matrimonial matters and similarly situated litigants were treated differently than Raymond.

**The Citation is Frivolous as There Exists No Legal Controversy To Support The Post-Decree Action**

30.     Respondent further states that there is no judgment for child support in this matter as demonstrated by the attached Release of Income Withholding from the Illinois Department of Health Care and Family Services (ILDHFS) showing no balance due whatsoever and a credit for erroneously withholding funds from Respondent's Social Security Income.

31.     Given that there is no cause of action in this matter the rulings of this Court must be reversed, and the Respondent restored to his previous capacity as the Petitioner has committed an alleged fraud upon the Illinois Courts.

32.     The action of the Petitioner and her counsel to promulgate this alleged fraud on the Court by repeatedly casting the aspiration of doubt on the Respondent through claims he was a "He should be in the hall of fame of dead beat Dads," (see p. 9, 12/27/16 transcript in attachments) and repeatedly claiming that child support served as the basis for this action so as to utilize the power of the Court for vexatious means and to unjustly enrich themselves at the expense of the Respondent is abhorrent and defiles the legal institutions of this State as they are clear violations of SCR 137.

33.     The Petitioner based upon alleged false pleadings and representations to the Court appeared to act in the stead of the Province of Ontario, Canada wherein her assignment of her rights to any recovery based on the defective Canadian Order would have rendered such an action impossible. The following opinion in *Welsh* is instructive in the present matter even though it was rendered in 1816.

> "The question upon these pleadings comes to this, whether a nominal plaintiff, suing for the benefit of his assignee, can, by a dismissal of the suit under a collusive agreement with the defendant, create a valid bar against any subsequent suit for the same cause of action. Courts of law, following in this respect the rules of equity, now take notice of assignments of choses in action, and exert themselves to afford them every support and protection not inconsistent with the established principles and modes of proceeding    which govern tribunals acting according to the course of the common law. They will not, therefore, give effect to a release procured by the defendant under a covenous combination with the assignor in fraud of his assignee, nor permit the assignor injuriously to interfere with the conduct of any suit commenced by his assignee to enforce the rights which passed under the assignment. The dismissal of the former suit, stated in the pleadings in the present case, was certainly not a retraxit; and if it had been, it would not have availed the parties, since it was procured by fraud. Admitting a dismissal of a suit, by agreement, to be a good bar to a subsequent suit, (on which we give no opinion,) it can be so only when it is bona fide, and not for the purpose of defeating the rights of third persons. It would be strange indeed, if parties could be allowed, under the protection of its forms, to defeat the whole objects and purposes of the law itself. It is the

unanimous opinion of the court, that the judgment of the circuit court, overruling the replication to the second plea of the defendant, is erroneous, and the same is reversed, and the cause remanded for farther proceedings." *Welsh v. Mandeville*, 14 U.S. 233, 4 L. Ed. 79, 1 Wheat. 233, 1816 U.S. LEXIS 326.

34.    The evidence of the ILDHFS is **beyond a reasonable doubt** that the Respondent does not have an enforceable child support obligation and demands that relief and attorney fees be afforded the Respondent on all matters, see "We reiterate that "[t]he purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes*, 195 Ill. 2d at 286. To hold that an attorney cannot recover reasonable attorney fees in defending himself against frivolous litigation would clearly frustrate the purpose of Rule 137 and unfairly reward those who persist in maintaining frivolous litigation. We hold that, under Rule 137, a court is authorized to impose sanctions in the form of attorney fees under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) against a plaintiff to compensate an attorney defending himself against a frivolous cause of action." *McCarthy v. Taylor* 2019 IL 123622.