**FILED**
**10/9/2019 2:28 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| SARINA ERVIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 04 D 1943 |
| | ) | |
| RAYMOND ERVIN, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR TURNOVER ORDER FROM SOCIAL SECURITY ADMINISTRATION

On August 12, 2019, Sarina caused to be issued a Citation to Discover Assets upon the Social Security Administration based upon information and belief that the debtor, Raymond Ervin receives SSDI payments on a monthly basis. While the Administration has yet to file an answer to that Citation, they have indicated, through counsel, that an answer will be forthcoming in light of the fact that the debt at issue is for child support. Accordingly, if and when this Court is provided with their answer, Sarina will be seeking a turnover of a portion of the monthly payments received by Raymond in satisfaction of the Judgment entered against Raymond.

While it would seem that the issue of whether there is an enforceable judgment is one that is behind us as that issue has already been extensively litigated and appealed in Sarina's favor in connection with the successful turnover of the cash value of Raymond's whole life insurance policies, given Gwendolyn Barlow's and her husband Raymond Ervin's penchant for attempting to re-litigate the already litigated and assert the same arguments time and again, for the convenience of this Court, Sarina will address that issue as well.

I.    **There is a judgment entered in this matter which can be enforced by supplemental proceedings in this court.**

Simply put, it is abundantly clear that the basis upon which Sarina issued her citation is the Canadian Judgment attached to her citation (dated July 5, 2000 and signed on August 31, 2000) and the order entered by this Court on June 21, 2007 (filed on June 22, 2007) registering said judgment. It should come as no surprise to this Court that that level of specifity was included in the citation to the Social Security Administration given the gamesmanship and nonsensical arguments made by Ms. Barlow and Mr. Ervin in their 19+ year campaign aimed at depriving Mr. Ervin's children of any semblance of child support.

If there were any confusion on Raymond's, Ms. Barlow's or the Administration's part as to which order was claimed by Sarina to be the underlying basis of her citations, that confusion is readily resolved by the attachment of the Canadian Judgment and registration order to each and every citation issued by Sarina. *McCormick v. McCormick*, 118 Ill.App.3d 455 (1983) ("*We acknowledge that exhibits which are attached to a pleading constitute a part of the pleading for all purposes and that where allegations in a complaint conflict with facts contained in an exhibit, the exhibit controls.*")

As Sarina has tirelessly argued, this case presents facts that are distinguishable from a run of the mill creditor-debtor collection action. The reason for this fundamental distinction is the nature of the suit – collection of child support. The law of child support in this State is distinguishable from virtually all other laws of the State. These distinctions highlight the State's clear public policy considerations of ensuring that children are supported by their parents. These distinctions are rampant throughout the laws of this state. By way of example: (i) unpaid child support is not dischargeable in bankruptcy nor are attorney's fees incurred in collection of child

support; (ii) parents cannot make enforceable out of court agreements regarding child support *IRMO Best*, 387 Ill.App.3d 948 (2009) and *IRMO Blisset*, 123 Ill.2d 161 (1988), (iii) personal property exemptions from judgment or attachment are inapplicable to unpaid child support, (iv) neither a post-trial motion nor an appeal stays the enforcement of child support obligations (v) and, as applicable in this case, unpaid support need not be reduced to a "money judgment" to be enforceable in the same manner as a money judgment.

Specifically, Section 505(d) of the Illinois Marriage and Dissolution of Marriage Act ("IMDMA") provides, in pertinent part, as follows:

> "Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date of the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced. Notwithstanding any other State or local law to the contrary, a lien arises by operation of law against the real and personal property of the supporting parent for each installment of overdue support owed by the supporting parent."

*750 ILCS 5/505(d).*

The Canadian Judgment established Raymond's child support obligation and thus constitutes a "support order" pursuant to Section 750 ILCS 22/102 (28). Therefore each and every month that Raymond refused to pay child support, a judgment was deemed entered as of that date in the amount of $5,418(ca). Each of those judgments in the series stems from the underlying Canadian Judgment which was registered in Lake County, i.e. the cited basis for the issuance of Sarina's citations.

At earlier proceedings in this matter, this Court posed two inquiries to Sarina's counsel. First, the Court inquired as to whether or not there is a distinction between orders entered by "this

court" or orders entered by the Canadian Court as it pertains to this Court's authority to rely upon Section 750 ILCS 5/505(d). First, failure to treat foreign judgments in the same manner as judgments entered by a court that has registered such judgments would render the Uniform Interstate Family Support Act (750 ILCS 22/) meaningless.

Specifically Section 750 ILCS 22/603(b) explicitly provides "*A registered support order issued in another state **or a foreign country** is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this State.*" Moreover, Section 750 ILCS 5/505(d) is required to be applied to the enforcement of the Canadian Judgment pursuant to Section 750 ILCS 22/604 which provides "*A responding tribunal of this State shall apply the procedures and remedies of this State to enforce current support and collect arrears and interest due on a support order of another state **or a foreign country** registered in this State.*" Similarly Section 750 ILCS 22/303 requires a responding tribunal of this State to "*apply the procedural and substantive law generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings.*"

This Court's second inquiry was whether there was a statutory basis for Sarina's suggestion that the funds owed pursuant to the Canadian Judgment should simply be converted to U.S. Dollars. The answer to this inquiry is in the affirmative. The statutory basis is Section 750 ILCS 750 ILCS 22/305(f). Said statute not only allows this Court to convert the amounts owed to Sarina to U.S. Dollars, it imposes an obligation upon the Court to do so.

At the outset of these post judgment collection proceedings, Raymond's unpaid child support obligation was $720,036.53. For the convenience of the Court, Sarina is providing this Court with an additional copy (previously attached as an exhibit to motions filed before this court) of the conversion of Canadian Dollars to US Dollars. Since the outset of these post judgment

collection proceedings, Sarina successfully recovered the sum of $124,873.39 from turnover of various life insurance policies. As such, at this point in time, and as reflected on the Citation served on the Administration, the balance due and owing for child support is $595,163.14.

II.     **If Raymond Ervin is receiving SSDI benefits from the Social Security Administration, those benefits are not exempt from turnover and a portion thereof should be assigned to Sarina in satisfaction of the unpaid child support owed by Raymond.**

While it seems that the Social Security Administration is aware that SSDI benefits are subject to garnishment for unpaid child support, in the event Mr. Ervin or Ms. Barlow or anyone acting in concert with them contends otherwise, Sarina has provided this Court with authority herein that reveal that any argument to the contrary is lacking in merit.

First, as this Court undoubtedly knows, assets and income belonging to a debtor are subject to turnover to a creditor possessed of a valid and enforceable judgment capable of collection. That right is ordinarily subject to the exemptions set forth in Section 735 ILCS 5/12-1001. As this Court will notice when it reviews that Statute, like the cash value of life insurance policies (which Sarina has previously successfully obtained turnover of), the statute exempts certain social security benefits. However, as noted above, the pursuit of child support is distinguishable from pursuit of other debts. In other words, pursuing unpaid child support constitutes an exception to the exemptions set forth in Section 735 ILCS 5/12-1001.

For this truism, this Court has previously relied upon *Thomas v. Illinois Dep't of Healthcare & Family Servs.,* 2016 IL App (1st) 143933 (2016) for an exception to the personal property exemption statute. Specifically, the Court in *Thomas* held as follows:

> *In any event, we view the prioritization of child support obligations as consistent with the fundamental purpose of the section 12–1001 exemptions: allowing a debtor like Thomas to support himself and his dependents. See, e.g., Black, 397 Ill.App.3d at 368, 336 Ill.Dec.*

> *333, 920 N.E.2d 542 (stating that "the purpose of income exemptions in general is to ensure creditors cannot deprive debtors of the means of supporting themselves and their dependents"). Discussing the policy underlying the statutory predecessor to section 12–1001, the Illinois Supreme Court in 1871 cited "the humane principle, that a creditor should not wholly deprive the husband and father of the means of supporting his family, usually helpless in themselves, and preventing them from becoming a public charge." Good v. Fogg, 61 Ill. 449, 451 (1871). More recently, our supreme court has noted "[m]uch the same purpose is attributed to exemption legislation today [citation], with the debtor, his family, and the community viewed as the intended beneficiaries of such statutes." (Emphasis added.) In re Marriage of Logston, 103 Ill.2d 266, 279–80, 82 Ill.Dec. 633, 469 N.E.2d 167 (1984). We agree with the circuit court's observation that "there is nothing to suggest that Section 12–1001(h)(4) may shield debtors from their own internal family obligations."*

> *Thomas v. Illinois Dep't of Healthcare & Family Servs.*, 2016 IL App (1st) 143933, ¶ 29, (Ill. 2016)

Specifically as it pertains to Social Security benefits, Sarina directs this Court to *In re Marriage of Pope-Clifton,* 355 Ill.App.3d 478 (2005) and *Knickerbocker v. Norman,* 938 F.2d 891 (1991). Based upon a review of these cases and the public policy of this state, it is clear the this Court can enter a turnover or garnishment order directing the Social Security Administration to turnover to Sarina a percentage of Raymond's monthly SSDI benefits in satisfaction of his unpaid child support obligation. Specifically, pursuant to GN 02410.215 circulated by the Social Security Administration, garnishment of SSDI benefits is limited to the lesser of the state maximum or the maximum under the Consumer Credit Protection Act (CCPA, 15 U.S.C. 1673(b) and is based on the law of the State where the beneficiary resides. Based thereon, garnishment is limited to (i) 50% if the beneficiary is supporting a spouse and/or child other than the spouse and/or child whose support has been ordered, (ii) 60% if the beneficiary is not supporting another spouse and/or child, or (iii) 55% and 65% respectively if the garnishment order or other evidence submitted indicates

that the original support ordered is 12 or more weeks in arrears. In this case, given that the support order at issue is 19+ years old, it greatly exceeds being 12+ weeks in arrears and therefore Raymond's benefits can be garnished by 65% notwithstanding any allegations that he supports a spouse or other children.

WHEREFORE, the Petitioner, Sarina Ervin, prays unto this Honorable Court to enter a turnover or garnishment order directing the Social Security Administration to garnish 65% of Raymond's SSDI benefits and make them payable to Sarina Ervin in satisfaction of the Judgment entered against Raymond Ervin for child support and grant such other and further relief as deemed equitable.

Respectfully submitted,

BEERMANN LLP

BEERMANN, LLP
Attorneys for Petitioner
161 North Clark Street, Suite 3000
Chicago, Illinois 60601
(312) 621-9700
ATTORNEY NO: 80095

## CANADIAN DOLLAR TO US DOLLAR MONHTLY CONVERSION CHART FOR $5,418.00
## FROM AUGUST 2000 to JULY 2013

| YEAR | MONTH | CANADIAN DOLLAR | US DOLLAR |
|---|---|---|---|
| 2000 | August | $5,418.00 | $3,767.65 |
| 2000 | September | $5,418.00 | $3,598.09 |
| 2000 | October | $5,418.00 | $3,603.51 |
| 2000 | November | $5,418.00 | $3,531.45 |
| 2000 | December | $5,418.00 | $3,612.72 |
| 2001 | January | $5,418.00 | $3,613.81 |
| 2001 | February | $5,418.00 | $3,587.80 |
| 2001 | March | $5,418.00 | $3,506.53 |
| 2001 | April | $5,418.00 | $3,464.27 |
| 2001 | May | $5,418.00 | $3,528.20 |
| 2001 | June | $5,418.00 | $3,563.42 |
| 2001 | July | $5,418.00 | $3,559.08 |
| 2001 | August | $5,418.00 | $3,494.07 |
| 2001 | September | $5,418.00 | $3,475.77 |
| 2001 | October | $5,418.00 | $3,467.52 |
| 2001 | November | $5,418.00 | $3,388.96 |
| 2001 | December | $5,418.00 | $3,443.68 |
| 2002 | January | $5,418.00 | $3,388.96 |
| 2002 | February | $5,418.00 | $3,401.42 |
| 2002 | March | $5,418.00 | $3,414.42 |
| 2002 | April | $5,418.00 | $3,472.40 |
| 2002 | May | $5,418.00 | $3,465.35 |
| 2002 | June | $5,418.00 | $3,536.33 |
| 2002 | July | $5,418.00 | $3,404.67 |
| 2002 | August | $5,418.00 | $3,474.56 |
| 2002 | September | $5,418.00 | $3,425.26 |
| 2002 | October | $5,418.00 | $3,475.65 |
| 2002 | November | $5,418.00 | $3,466.44 |
| 2002 | December | $5,418.00 | $3,431.76 |
| 2003 | January | $5,418.00 | $3,562.88 |
| 2003 | February | $5,418.00 | $3,649.56 |
| 2003 | March | $5,418.00 | $3,674.49 |
| 2003 | April | $5,418.00 | $3,815.90 |
| 2003 | May | $5,418.00 | $3,963.27 |
| 2003 | June | $5,418.00 | $4,004.99 |
| 2003 | July | $5,418.00 | $3,870.62 |
| 2003 | August | $5,418.00 | $3,855.99 |
| 2003 | September | $5,418.00 | $4,026.66 |
| 2003 | October | $5,418.00 | $4,028.28 |
| 2003 | November | $5,418.00 | $4,155.06 |

## CANADIAN DOLLAR TO US DOLLAR MONHTLY CONVERSION CHART FOR $5,418.00
### FROM AUGUST 2000 to JULY 2013

| YEAR | MONTH | CANADIAN DOLLAR | US DOLLAR |
|------|-------|-----------------|-----------|
| 2003 | December | $5,418.00 | $4,176.19 |
| 2004 | January | $5,418.00 | $4,072.17 |
| 2004 | February | $5,418.00 | $4,044.00 |
| 2004 | March | $5,418.00 | $4,144.23 |
| 2004 | April | $5,418.00 | $3,954.06 |
| 2004 | May | $5,418.00 | $3,913.96 |
| 2004 | June | $5,418.00 | $4,067.83 |
| 2004 | July | $5,418.00 | $4,075.42 |
| 2004 | August | $5,418.00 | $4,143.69 |
| 2004 | September | $5,418.00 | $4,289.97 |
| 2004 | October | $5,418.00 | $4,438.84 |
| 2004 | November | $5,418.00 | $4,537.03 |
| 2004 | December | $5,418.00 | $4,497.48 |
| 2005 | January | $5,418.00 | $4,396.71 |
| 2005 | February | $5,418.00 | $4,365.28 |
| 2005 | March | $5,418.00 | $4,457.93 |
| 2005 | April | $5,418.00 | $4,302.98 |
| 2005 | May | $5,418.00 | $4,349.57 |
| 2005 | June | $5,418.00 | $4,352.28 |
| 2005 | July | $5,418.00 | $4,470.39 |
| 2005 | August | $5,418.00 | $4,577.13 |
| 2005 | September | $5,418.00 | $4,654.60 |
| 2005 | October | $5,418.00 | $4,608.55 |
| 2005 | November | $5,418.00 | $4,636.72 |
| 2005 | December | $5,418.00 | $4,659.48 |
| 2006 | January | $5,418.00 | $4,679.97 |
| 2006 | February | $5,418.00 | $4,715.40 |
| 2006 | March | $5,418.00 | $4,683.21 |
| 2006 | April | $5,418.00 | $4,735.54 |
| 2006 | May | $5,418.00 | $4,880.65 |
| 2006 | June | $5,418.00 | $4,864.56 |
| 2006 | July | $5,418.00 | $4,805.64 |
| 2006 | August | $5,418.00 | $4,841.30 |
| 2006 | September | $5,418.00 | $4,856.52 |
| 2006 | October | $5,418.00 | $4,804.84 |
| 2006 | November | $5,418.00 | $4,769.14 |
| 2006 | December | $5,418.00 | $4,695.12 |
| 2007 | January | $5,418.00 | $4,610.81 |
| 2007 | February | $5,418.00 | $4,628.71 |
| 2007 | March | $5,418.00 | $4,636.35 |

2

## CANADIAN DOLLAR TO US DOLLAR MONHTLY CONVERSION CHART FOR $5,418.00
## FROM AUGUST 2000 to JULY 2013

| YEAR | MONTH | CANADIAN DOLLAR | US DOLLAR |
|------|-------|-----------------|-----------|
| 2007 | April | $5,418.00 | $4,774.10 |
| 2007 | May | $5,418.00 | $4,947.44 |
| 2007 | June | $5,418.00 | $5,087.12 |
| 2007 | July | $5,418.00 | $5,152.60 |
| 2007 | August | $5,418.00 | $5,122.78 |
| 2007 | September | $5,418.00 | $5,275.92 |
| 2007 | October | $5,418.00 | $5,560.26 |
| 2007 | November | $5,418.00 | $5,614.27 |
| 2007 | December | $5,418.00 | $5,415.27 |
| 2008 | January | $5,418.00 | $5,355.98 |
| 2008 | February | $5,418.00 | $5,418.22 |
| 2008 | March | $5,418.00 | $5,404.05 |
| 2008 | April | $5,418.00 | $5,346.14 |
| 2008 | May | $5,418.00 | $5,417.83 |
| 2008 | June | $5,418.00 | $5,329.39 |
| 2008 | July | $5,418.00 | $5,348.66 |
| 2008 | August | $5,418.00 | $5,143.24 |
| 2008 | September | $5,418.00 | $5,128.53 |
| 2008 | October | $5,418.00 | $4,481.77 |
| 2008 | November | $5,418.00 | $4,435.74 |
| 2008 | December | $5,418.00 | $4,388.49 |
| 2009 | January | $5,418.00 | $4,425.30 |
| 2009 | February | $5,418.00 | $4,357.33 |
| 2009 | March | $5,418.00 | $4,288.41 |
| 2009 | April | $5,418.00 | $4,429.28 |
| 2009 | May | $5,418.00 | $4,713.35 |
| 2009 | June | $5,418.00 | $4,803.40 |
| 2009 | July | $5,418.00 | $4,815.10 |
| 2009 | August | $5,418.00 | $4,985.60 |
| 2009 | September | $5,418.00 | $5,009.69 |
| 2009 | October | $5,418.00 | $5,136.72 |
| 2009 | November | $5,418.00 | $5,104.34 |
| 2009 | December | $5,418.00 | $5,134.95 |
| 2010 | January | $5,418.00 | $5,185.10 |
| 2010 | February | $5,418.00 | $5,131.94 |
| 2010 | March | $5,418.00 | $5,294.70 |
| 2010 | April | $5,418.00 | $5,387.36 |
| 2010 | May | $5,418.00 | $5,203.03 |
| 2010 | June | $5,418.00 | $5,219.33 |
| 2010 | July | $5,418.00 | $5,187.86 |

## CANADIAN DOLLAR TO US DOLLAR MONHTLY CONVERSION CHART FOR $5,418.00
### FROM AUGUST 2000 to JULY 2013

| YEAR | MONTH | CANADIAN DOLLAR | US DOLLAR |
|---|---|---|---|
| 2010 | August | $5,418.00 | $5,206.28 |
| 2010 | September | $5,418.00 | $5,243.69 |
| 2010 | October | $5,418.00 | $5,323.87 |
| 2010 | November | $5,418.00 | $5,350.51 |
| 2010 | December | $5,418.00 | $5,375.87 |
| 2011 | January | $5,418.00 | $5,449.43 |
| 2011 | February | $5,418.00 | $5,490.75 |
| 2011 | March | $5,418.00 | $5,546.72 |
| 2011 | April | $5,418.00 | $5,657.60 |
| 2011 | May | $5,418.00 | $5,594.32 |
| 2011 | June | $5,418.00 | $5,539.51 |
| 2011 | July | $5,418.00 | $5,670.20 |
| 2011 | August | $5,418.00 | $5,513.14 |
| 2011 | September | $5,418.00 | $5,413.81 |
| 2011 | October | $5,418.00 | $5,311.69 |
| 2011 | November | $5,418.00 | $5,282.18 |
| 2011 | December | $5,418.00 | $5,293.62 |
| 2012 | January | $5,418.00 | $5,339.76 |
| 2012 | February | $5,418.00 | $5,434.63 |
| 2012 | March | $5,418.00 | $5,452.37 |
| 2012 | April | $5,418.00 | $5,456.44 |
| 2012 | May | $5,418.00 | $5,359.76 |
| 2012 | June | $5,418.00 | $5,270.88 |
| 2012 | July | $5,418.00 | $5,344.31 |
| 2012 | August | $5,418.00 | $5,458.20 |
| 2012 | September | $5,418.00 | $5,534.69 |
| 2012 | October | $5,418.00 | $5,489.89 |
| 2012 | November | $5,418.00 | $5,452.41 |
| 2012 | December | $5,418.00 | $5,469.46 |
| 2013 | January | $5,418.00 | $5,459.03 |
| 2013 | February | $5,418.00 | $5,369.30 |
| 2013 | March | $5,418.00 | $5,290.92 |
| 2013 | April | $5,418.00 | $5,319.49 |
| 2013 | May | $5,418.00 | $5,311.35 |
| 2013 | June | $5,418.00 | $5,248.17 |
| 2013 | July | $5,418.00 | $5,205.99 |
| | | | |
| TOTAL: | | $845,208.00 | $720,036.53 |
| | | | *Exchange Rate Information Provided by: |

4

## CANADIAN DOLLAR TO US DOLLAR MONHTLY CONVERSION CHART FOR $5,418.00
### FROM AUGUST 2000 to JULY 2013

| | | | http://www.x-rates.com/average/?from=CAD&to=USD&amount=1&year=2006 |
| --- | --- | --- | --- |
| | | | https://www.oanda.com/solutions-for-business/historical-rates/main.html |

Case: 1:20-cv-06006 Document #: 1-3 Filed: 10/08/20 Page 13 of 28 PageID #:65

Thomas v. Illinois Dept. of Healthcare and Family Services, 2016 IL App (1st) 143933,...
48 N.E.3d 721, 400 Ill.Dec. 434

2016 IL App (1st) 143933
Appellate Court of Illinois,
First District, Fifth Division.

Larry THOMAS, Plaintiff–Appellant,

v.

The ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY SERVICES
and Julie Hamos, Director of Healthcare
and Family Services, Defendants–Appellees.

No. 1–14–3933.
|
Jan. 15, 2016.

## Synopsis

**Background:** Father filed complaint for administrative review, challenging decision of Illinois Department of Healthcare and Family Services (DHFS) that $12,000 which father received in settlement of personal injury lawsuit was subject to administrative lien for past-due child support. The Circuit Court, Cook County, Franklin U. Valderrama, J., affirmed. Father appealed.

**[Holding:]** The Appellate Court, Reyes, P.J., held that provision of Public Aid Code, stating that "[n]otwithstanding any other State or local law to the contrary, the State shall have a lien on all legal and equitable interests of responsible relatives in their personal property ... in the amount of past-due child support," rendered a statutory exemption for payment on account of personal bodily injury inapplicable.

Judgment of circuit court affirmed.

West Headnotes (9)

**[1]**     **Child Support**
　⇨ Trial de novo

Whether $12,000 that father received as his share of personal-injury settlement was exempt from administrative lien for past-due child support, or whether statutory exemption for a payment on account of personal bodily injury of debtor was unavailable based on a provision in Public Aid

Code that by its terms applied "[n]otwithstanding any other State or local law to the contrary," was question of law subject to de novo standard of review. S.H.A. 305 ILCS 5/10–25.5(a); 735 ILCS 5/12–1001(h)(4).

Cases that cite this headnote

**[2]**     **Administrative Law and Procedure**
　⇨ Decision reviewed

In administrative law cases, Appellate Court reviews the decision of the administrative agency, not the trial court.

Cases that cite this headnote

**[3]**     **Statutes**
　⇨ Intent

Cardinal rule of statutory interpretation is to ascertain and give effect to the true intent of the legislature.

Cases that cite this headnote

**[4]**     **Statutes**
　⇨ Language and intent, will, purpose, or policy

The best evidence of legislative intent is the language used in the statute itself.

Cases that cite this headnote

**[5]**     **Statutes**
　⇨ Plain Language; Plain, Ordinary, or Common Meaning

Statutory language must be given its plain, ordinary and popularly understood meaning.

Cases that cite this headnote

**[6]**     **Child Support**
　⇨ Liens

Provision of Public Aid Code, stating that "[n]otwithstanding any other State or local law to the contrary, the State shall have a lien on all legal and equitable interests of responsible relatives in their personal property ... in the amount of

Thomas v. Illinois Dept. of Healthcare and Family Services, 2016 IL App (1st) 143933...

48 N.E.3d 721, 400 Ill.Dec. 434

past-due child support," rendered inapplicable another statutory provision that would otherwise have exempted father's $12,000 share of personal-injury settlement from attachment. S.H.A. 305 ILCS 5/10–25.5(a); 735 ILCS 5/12–1001(h)(4).

Cases that cite this headnote

[7] **Statutes**
    Dictionaries

In determining the plain meaning of a statutory term, it is entirely appropriate to look to the dictionary for a definition.

Cases that cite this headnote

[8] **Child Support**
    Liens

There is no inconsistency between provision of Public Aid Code that imposes a lien for past-due child support "[n]otwithstanding any other State or local law to the contrary" and another provision of Public Aid Code stating that Department of Healthcare and Family Services shall enforce its lien and levy upon such personal property in the manner provided for enforcement of judgments contained in Article XII of Code of Civil Procedure; reference to Article XII in second provision does not affect validity or enforceability of lien that state "shall have" according to first provision, but merely prescribes the manner of enforcement. S.H.A. 305 ILCS 5/10–25.5(a, d).

1 Cases that cite this headnote

[9] **Statutes**
    Giving effect to statute or language; construction as written

If the statutory language is clear, it will be given effect without resort to other aids for construction.

Cases that cite this headnote

**Attorneys and Law Firms**

*722 Joel A. Flaxman and Kenneth N. Flaxman, both of Law Offices of Kenneth N. Flaxman, PC, Chicago, for appellant.

Lisa Madigan, Attorney General, Chicago (Carolyn E. Shapiro, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of counsel), for appellees.

**OPINION**

Presiding Justice REYES delivered the judgment of the court, with opinion.

**435** ¶ 1 Larry Thomas (Thomas) received $12,000 as his share of the settlement of a personal injury lawsuit. The Illinois Department of Healthcare and Family Services (Department) sent Thomas a notice of lien against these settlement proceeds, based on his past-due child support obligation. Thomas objected, claiming a personal injury payment exemption of up to $15,000 pursuant to section 12–1001(h)(4) of the Illinois Code of Civil Procedure (735 ILCS 5/12–1001(h)(4) (West 2012)). The Department adopted the findings of the administrative law judge (ALJ) and upheld the Department's administrative lien; the circuit court of Cook County affirmed. On appeal, Thomas continues to contend that his personal injury settlement was exempt based on section 12–1001(h)(4). The Department and its Director (Director)[1] respond that the lien was valid pursuant to section 10–25.5(a) of the Illinois Public Aid Code, which provides, in part, for an administrative lien on personal property for past-due child support "[n]otwithstanding any other State or local law to the contrary." 305 ILCS 5/10–25.5(a) (West 2012). For the reasons that follow, we conclude that the lien was valid and enforceable and thus affirm the judgment of the circuit court.

¶ 2 BACKGROUND

¶ 3 Pursuant to a settlement of a lawsuit he filed against the City of Chicago, Thomas received $12,000; he deposited this amount into his account at JP Morgan Chase Bank, NA (Chase). In a notice of **436 *723 lien dated July 25, 2013, the Department notified Thomas and the bank that it was "seeking to lien and levy funds of the non-custodial parent," *i.e.*, Thomas, in accordance with "Article X of the Illinois Public Aid Code and 89 Illinois Administrative Code

160.70." Thomas filed a written request for a hearing; he asserted that the "entirety of [his] share of the settlement of his personal bodily injury lawsuit is exempt from judgment or attachment."

¶ 4 On November 14, 2013, the ALJ conducted a hearing. Thomas's counsel stipulated that, as of August 31, 2013, Thomas owed $17,490.85 in child support in case number 1985 D 0058624 and another $16,182.25 in case number 1985 D 0058625. Thomas testified that his share of the settlement of his "lawsuit for bodily personal injury against the City of Chicago" was $12,000. His counsel then argued that the "statute as I read it, 735 ILCS 5/12–1001 exempts $15,000.00 of the proceeds of a lawsuit for bodily personal injury from collection or debts."

¶ 5 On December 31, 2013, the Department sent Thomas a letter stating that it had reviewed his petition, considered and adopted the findings of fact of the hearing officer, and issued its final administrative decision. The document attached to the letter included: (a) findings of fact and a discussion of the evidence, signed by the ALJ; and (b) the final administrative decision and conclusion, signed by the Director. The ALJ found, among other things, that: "Petitioner and the Custodial Parent are the parents of two emancipated children"; "[o]n July 25, 2013, DCSS [2] sent Petitioner a Notice of Lien (Notice) against proceeds contained in his JP Morgan Chase Bank Account"; and "[a]s of August 31, 2013, Petitioner's collective past due child support balance was $33,673.10." The ALJ's discussion summarized the evidence presented and the arguments made by the parties.[3] The conclusion of the Director provided, in part:

"Petitioner's reliance upon 735 [4] ILCS 5/12–1001 is misguided. Petitioner has failed to prove that the subject funds are exempt even under the quoted Illinois Compiled Statutes. Petitioner testified that he received an $18,000.00 personal injury settlement of which $15,000.00 [[5]] was deposited in his Chase Bank account. Petitioner failed to present any proof to corroborate his testimony. Moreover, Petitioner presented a copy of a Release of Settlement Agreement (Exhibit P2) wherein he is named as a plaintiff in a civil law suit. However, nothing in that document indicates that the purpose of the settlement payout was for personal injury to the Petitioner. It is well established under both federal and state law, [c]hild support obligations cannot be discharged in bankruptcy. Under the Illinois Administrative Code, Petitioner bears the burden of

establishing a defense to the administrative lien. Petitioner has not asserted a valid defense to the administrative lien under the Illinois Administrative Code. Petitioner has failed to present any credible evidence that the funds in the Chase Bank account are exempt from the administrative lien. The ALJ finds * * * DCSS's administrative lien to be valid and enforceable."

*724 **437 The Department denied Thomas's appeal and upheld the administrative lien.

¶ 6 Thomas timely filed a complaint for administrative review in the circuit court against the Department and the Director, contending that "Defendants' final administrative decision does not have a substantial foundation in evidence, is against the manifest weight of the evidence, and is arbitrary and unreasonable." Citing *Brinegar v. Reeves*, 289 Ill.App.3d 405, 224 Ill.Dec. 459, 681 N.E.2d 1080 (1997) and *People ex rel. Director of Corrections v. Booth*, 215 Ill.2d 416, 294 Ill.Dec. 157, 830 N.E.2d 569 (2005), Thomas argued that "Illinois case law leaves no doubt that 735 ILCS 5/12–1001(h)(4) applies to the collection of past due child support." Thomas also asserted that the Department neither cross-examined him nor responded to his argument that "the lien on Plaintiff's Chase Bank account consisted of Plaintiff's $12,000 settlement share and that 735 ILCS 5/2–1001 exempted those funds from collection."

¶ 7 In its response brief, the Department contended that "[t]he section of the Illinois Code of Civil Procedure that Plaintiff's [*sic* ] relies upon, providing for a $15,000 exemption from collection for monies traceable to a personal injury award, has been overridden by an amendment to the Illinois Public Aid Code." According to the Department, the Illinois General Assembly in 2011 "passed Public Act 97–186, which amended the Public Aid Code, the Illinois Marriage and Dissolution of Marriage Act, the Non–Support Punishment Act, and the Illinois Parentage Act to, *inter alia*, add the phrase 'notwithstanding any other State or local law to the contrary,' to sections of these laws dealing with the State's right to place liens on the real and personal property of non-custodial parents owing overdue child support."

¶ 8 In his reply brief, Thomas argued, in part, that the 2011 amendment "did not make any change to subsection (d) of 5/10–25.5(d), which continues to provide as follows: (d) The Illinois Department shall enforce its lien against the responsible relative's personal property, other than accounts as defined in Section 10–24 in financial institutions, and levy upon such personal property *in the manner provided for*

*enforcement of judgments contained in Article XII of the Code of Civil Procedure.* (emphasis added)." Thomas asserted that "[t]he plain language of 305 ILCS 5/10–25.5, even after the 2011 amendment to 5/10–25.5(a), thus includes the fifteen thousand dollars statutory exemption for the proceeds of personal injury lawsuits."

¶ 9 After oral argument, the circuit court entered a memorandum opinion and order affirming the final administrative decision of the Department. "When read in isolation," the court stated, "Section 12–1001 provides an exemption to any personal injury settlement that does not exceed $15,000.00." The court continued, however, that it "must reconcile Section 12–1001 with Section 10–25.5(a) which allows the [Department] to have a lien on all legal or equitable interest, 'notwithstanding any other state or local law to the contrary.' " The court found that "the personal injury exemption in Section 12–1001(h)(4) does not apply to past-due child support," reasoning, in part, that "if the legislature had specifically intended to exempt personal injury settlements from collection of past-due child support, it could have made that explicit in Section 12–1001." Noting that the purpose of income exemptions " 'is to ensure creditors cannot deprive debtors of the means of supporting themselves and their dependents' [citations]," the court further opined that "there is nothing to suggest that Section 12–1001(h)(4) may shield debtors from their own internal family obligations." Thomas timely appealed **438 *725 the circuit court's order affirming the Department's final administrative decision.

¶ 10 ANALYSIS

¶ 11 Citing *Brinegar* and *Booth,* Thomas argues on appeal that "Illinois case law makes plain that the $15,000 exemption of 735 ILCS 5/12–1001(h)(4) applies to the collection of past due child support." The Department[6] contends that "[b]ased on its plain language, section 10–25.5(a) of the [Public Aid] Code applies '[n]otwithstanding any other State or local law to the contrary,' including section 12–1001(h)(4) of the [Civil Procedure] Code." The exemption set forth in section 12–1001(h)(4) is thus unavailable to Thomas. The Department further asserts that *Brinegar* and *Booth* are inapposite "[f]or many reasons," including the fact that both cases were decided before the 2011 amendment to section 10–25.5(a).

[1]  [2]  ¶ 12 The parties assert, and we agree, that the standard of review regarding this question of law is *de novo. E.g., CBS Outdoor, Inc. v. Department of Transportation,* 2012 IL App (1st) 111387, ¶ 26, 361 Ill.Dec. 143, 970 N.E.2d 509 ("Where the facts are undisputed and there is a dispute as to whether the governing legal provisions were interpreted correctly by an administrative agency, the case presents a purely legal question for which our review is *de novo.*").[7]

¶ 13 Section 12–1001 of the Code of Civil Procedure provides, in pertinent part, as follows:

"Personal property exempt. The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:

* * *

(h) The debtor's right to receive, or property that is traceable to:

* * *

(4) a payment, not to exceed $15,000 in value, on account of personal bodily injury of the debtor * * *[.]" 735 ILCS 5/12–1001(h)(4) (West 2012).

¶ 14 Section 10–25.5 of the Public Aid Code, entitled "Administrative liens and levies on personal property for past-due child support," provides, in pertinent part, as follows:

"(a) Notwithstanding any other State or local law to the contrary, the State shall have a lien on all legal and equitable interests of responsible relatives in their personal property, including any account in a financial institution as defined in Section 10–24, or in the case of an insurance company or benefit association **439 *726 only in accounts as defined in Section 10–24, in the amount of past-due child support owing pursuant to an order for child support entered under Sections 10–10 and 10–11 of this Code, or under the Illinois Marriage and Dissolution of Marriage Act, the Non–Support of Spouse and Children Act, the Non–Support Punishment Act, the Uniform Interstate Family Support Act, or the Illinois Parentage Act of 1984.

* * *

(d) The Illinois Department shall enforce its lien against the responsible relative's personal property, other than accounts as defined in Section 10–24 in financial institutions, and levy upon such personal property in the manner provided for enforcement of judgments contained in Article XII of the Code of Civil Procedure." 305 ILCS 5/10–25.5(a), (d) (West 2012).

Section 10–25.5(a) of the Public Aid Code was amended in 2011 to add the language: "Notwithstanding any other State or local law to the contrary * * *." Pub. Act 97–186, § 5 (eff. July 22, 2011) (amending 305 ILCS 5/10–25.5(a) (West 2010)).

[3] [4] [5] ¶ 15 The cardinal rule of statutory interpretation is "to ascertain and give effect to the true intent of the legislature." *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20, 391 Ill.Dec. 18, 30 N.E.3d 288. "[I]t is well established that the best evidence of legislative intent is the language used in the statute itself." *Id.* ¶ 21. The statutory language "must be given its plain, ordinary and popularly understood meaning." *Id.*

[6] [7] ¶ 16 Section 10–25.5 expressly provides that "*[n]otwithstanding any other State or local law to the contrary,* the State shall have a lien on all legal and equitable interests of responsible relatives in their personal property * * * in the amount of past-due child support." (Emphasis added.) 305 ILCS 5/10–25.5(a) (West 2012). In determining the plain meaning of a statutory term, "it is entirely appropriate to look to the dictionary for a definition." *People v. Perry,* 224 Ill.2d 312, 330, 309 Ill.Dec. 330, 864 N.E.2d 196 (2007). Black's Law Dictionary defines "notwithstanding" as "[d]espite; in spite of." Black's Law Dictionary 1168 (9th ed. 2009). See also *Waliczek v. Retirement Board of the Firemen's Annuity & Benefit Fund,* 318 Ill.App.3d 32, 36, 251 Ill.Dec. 678, 741 N.E.2d 272 (2000) (discussing meaning of "notwithstanding" and concluding that the statute in question was "an exception to" and "controlled over" other statutory provisions). We view the language of section 10–25.5 as clear: despite any contrary statute, the State has a "lien on all legal and equitable interests of responsible relatives in their personal property * * * in the amount of past-due child support." 305 ILCS 5/10–25.5(a) (West 2012). Section 12–1001(h)(4), which exempts personal injury settlements up to $15,000 from judgment or attachment, constitutes a "State or local law to the contrary." *Id.* When "read in a vacuum," section 12–1001(h)(4) of the Code of Civil Procedure shields Thomas's personal injury settlement from attachment or judgment; however, it is clear that the legislature intended section 10–25.5(a) of the Public

Aid Code to "impact upon other provisions of law" such as section 12–1001(h)(4) to permit the imposition of a lien for past-due child support. *Paulson v. County of De Kalb,* 268 Ill.App.3d 78, 82–83, 205 Ill.Dec. 821, 644 N.E.2d 37 (1994) (discussing "notwithstanding" language in a section of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2–102 (West 1992)) and the treble damages provision in the Nursing Home Care Act ( **440 *727 210 ILCS 45/3–602 (West 1992)); court concluded that the statutes "can be construed harmoniously" and that the plaintiff's "interpretation of the provisions at issue would render meaningless the phrase 'notwithstanding any other provision of law' ").

¶ 17 Thomas contends that "[t]he plain language of 305 ILCS 5/10–25.5, even after the 2011 amendment to 5/10–25.5(a), * * * includes the fifteen thousand dollars [*sic* ] statutory exemption for the proceeds of personal injury lawsuits" because the 2011 amendment "did not make any change to subsection (d)" of section 10–25.5. Section 10–25.5(d) of the Public Aid Code provides that the Department "shall enforce its lien against the responsible relative's personal property, other than accounts as defined in Section 10–24 in financial institutions, and levy upon such personal property in the manner provided for enforcement of judgments contained in Article XII of the Code of Civil Procedure." 305 ILCS 5/10–25.5(d) (West 2012). "Had the legislature intended that the exemption of 735 ILCS 5/12–1001(h)(4) be unavailable in proceedings for past due child support," Thomas posits, "it would not have referred to Article XII of the Code of Civil Procedure, which contains the exemption."

¶ 18 Although not discussed by the parties on appeal, we view section 10–25.5(d) as inapplicable in the instant case. The statute provides that the Department "shall enforce its lien against the responsible relative's personal property, *other than accounts as defined in Section 10–24 in financial institutions,* and levy upon such property in the manner provided for enforcement of judgments contained in Article XII of the Code of Civil Procedure." (Emphasis added.) *Id.* "[A]ccounts as defined in Section 10–24 in financial institutions" are expressly excluded from the scope of this subsection. *Id.* Section 10–24 of the Public Aid Code defines "account" as "a demand deposit account, checking or negotiable withdrawal order account, savings account, time deposit account, or money market mutual fund account." 305 ILCS 5/10–24 (West 2012). "Financial institution" is defined to include "any bank or saving association." *Id.* Thomas's "bank account" at Chase almost certainly would qualify as an "account[ ] as

defined in Section 10–24 in [a] financial institution[ ].” 305 ILCS 5/10–25.5(d) (West 2012).

¶ 19 The Department filed the notice of lien against Thomas and Chase. The notice directs Chase, among other things, to “freeze each account of $300.00 or greater that you are currently holding for the non-custodial parent and either remit said funds within five business days of receiving a Surrender Notice by Healthcare and Family Services or lift the freeze on said account(s) if a Discharge Notice is received or if 120 days have elapsed since the date of the freeze on the account(s).” Such notice complies with requirements set forth in various subsections of section 10–25.5. For example, subsection (c) provides, in part, that the “Department may serve the notice of lien or levy upon any financial institution where the accounts as defined in Section 10–24 of the responsible relative may be held, for encumbrance or surrender of the accounts as defined in Section 10–24 by the financial institution.” 305 ILCS 5/10–25.5(c) (West 2012). Subsection (g) provides, in part:

“A lien on personal property under this Section shall be released in the manner provided under Article XII of the Code of Civil Procedure. Notwithstanding the foregoing, a lien under this Section on accounts as defined in Section 10–24 shall expire upon the passage of 120 days from the date of issuance of the Notice of Lien or Levy by the Illinois **441 *728 Department.” 305 ILCS 5/10–25.5(g) (West 2012).

Given that the Department imposed a lien against an account in a financial institution, the reference to article XII in subsection (d) of section 10–25.5 of the Public Aid Code is, by its very terms, not applicable.

[8] ¶ 20 However, even assuming *arguendo* that personal property subject to a lien in the instant case was *not* an account in a financial institution, we nevertheless reject Thomas's interpretation of subsection (d). “The general statutory provisions on enforcement of judgments are found in Article XII of the Code of Civil Procedure.” 5 Jack K. Levin & Robert J. Steigmann, Nichols Illinois Civil Practice § 78:1, at 7 (rev. ed. 2013). The Department asserts, and we agree: “Section 10–25.5(d) merely incorporates those enforcement methods into the [Public Aid] Code. It does nothing to change the meaning of section 10–25.5(a).” We view no inconsistency between section 10–25.5(a)— which imposes a lien “[n]otwithstanding any other State or local law to the contrary” (305 ILCS 5/10–25.5(a) (West 2012))—and section 10–25.5(d), which provides that the Department “shall enforce its lien * * * and levy upon such

personal property in the manner provided for enforcement of judgments contained in Article XII [ (305 ILCS 5/10–25.5(d) (West 2012)) ].” The reference in section 10–25.5(d) to article XII does not affect the validity or enforceability of a lien that the State “shall have” pursuant to section 10–25.5(a); it merely prescribes the *manner* of enforcement. We further note that subsection (g) of section 1025.5 provides that “[a] lien on personal property under this Section shall be released in the manner provided under Article XII of the Code of Civil Procedure.” 305 ILCS 5/10–25.5(g) (West 2012). As with subsection (d), we view the reference to Article XII in subsection (g) as incorporating the mechanics of Article XII. In sum, we conclude that section 10–25.5(d) is consistent with section 10–25.5(a), and that the “notwithstanding” language of section 10–25.5(a) precludes application of the exemption set forth in section 12–1001(h)(4) of the Code of Civil Procedure.

[9] ¶ 21 “If the statutory language is clear, it will be given effect without resort to other aids for construction.” *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n,* 2015 IL 117418, ¶ 21, 391 Ill.Dec. 18, 30 N.E.3d 288; *contra Ultsch v. Illinois Municipal Retirement Fund,* 226 Ill.2d 169, 181, 314 Ill.Dec. 91, 874 N.E.2d 1 (2007) (“Where the meaning of a statute is unclear from a reading of its language, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute.”). Therefore, we need not examine herein the legislative history of the 2011 amendment to section 10–25.5, as urged by Thomas. Similarly, we need not analyze the cases cited by the Department regarding statutes in conflict, where we do not view the statutes at issue as conflicting. See, *e.g., Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.,* 2014 IL App (1st) 133575, ¶ 30, 387 Ill.Dec. 243, 22 N.E.3d 125 (discussing conflicting statutes; noting that “the more specific statute controls over the general statute, and the more recently enacted statute prevails over the older statute”).

¶ 22 Furthermore, the cases cited by Thomas are inapposite. In *Brinegar v. Reeves,* Del Allen Reeves (Reeves) was involved in a motor vehicle accident with Jerry L. Brinegar, Jr. (Brinegar). *Brinegar v. Reeves,* 289 Ill.App.3d 405, 405–06, 224 Ill.Dec. 459, 681 N.E.2d 1080 (1997). Because he was a state employee acting within the scope of his employment at the **442 *729 time of the accident, Reeves was entitled to indemnification for any judgment. *Id.* at 406, 224 Ill.Dec. 459, 681 N.E.2d 1080. After a bench trial, the court found Reeves liable for Brinegar's medical expenses and other amounts.

*Id.* While processing a citation to discover Reeves' assets, the Department of Public Aid advised the Comptroller that Brinegar owed money for delinquent child support. *Id.* The Comptroller withheld payment of the judgment, asserting a statutory lien pursuant to the State Comptroller Act (15 ILCS 405/10.05, 10.05a (West 1994)). *Brinegar,* 289 Ill.App.3d at 406, 224 Ill.Dec. 459, 681 N.E.2d 1080. On appeal, the court concluded that Brinegar was "not entitled to a payment from the state" and "[a]ccordingly, the state is not entitled to set off the payment pursuant to" the State Comptroller Act. *Id.* at 409, 224 Ill.Dec. 459, 681 N.E.2d 1080. The court noted,

> "Even if the Department were to attempt to enforce its judgment against Brinegar from the amount Reeves owed Brinegar by way of a garnishment proceeding, section 12–1001 of the Code of Civil Procedure exempts several types of personal property from judgment, attachment, or distress for rent, including the debtor's rights to receive, or property traceable to, a payment, not to exceed $7,500 [ 8 ] in value, on account of personal bodily injury of the debtor or an individual of whom the debtor was a dependent." *Id.*

Thomas contends that "as the Court made plain in *Brinegar,* the $12,000 proceeds of Plaintiff's settlement agreement is exempt from collection for past due child support." We disagree. Even if we were to consider the *Brinegar* court's *obiter dictum* regarding section 12–1001,[9] the case does not address section 10–25.5 of the Public Aid Code and, in any event, was decided prior to the 2011 amendment thereto.

¶ 23 Thomas also relies upon *People ex rel. Director of Corrections v. Booth,* 215 Ill.2d 416, 294 Ill.Dec. 157, 830 N.E.2d 569 (2005). The issue in *Booth* was "whether section 12–1001(h)(4) of the Code of Civil Procedure (735 ILCS 5/12–1001(h)(4) (West 2002)), which exempts from judgment, attachment or distress for rent payments of up to $7,500 made on account of personal bodily injury of the debtor, applies to actions brought by the state under section 3–7–6 of the Unified Code of Corrections (730 ILCS 5/3–7–6 (West 2002)) against persons committed to the Illinois Department of Corrections * * * to obtain reimbursement for the costs of their incarceration." *Id.* at 418, 294 Ill.Dec. 157, 830 N.E.2d 569. After analyzing the respective statutes, the Illinois Supreme Court held that the circuit court did not err in applying the $7,500 exemption set forth in section 12–1001(h)(4). *Id.* at 426, 294 Ill.Dec. 157, 830 N.E.2d 569.

¶ 24 According to Thomas, "[t]he Supreme Court's reasoning in *Booth* resolved the supposed conflict in this case between the notwithstanding clause of 305 ILCS 5/10–25.5(a) and the exemption of 735 ILCS 5/12–1001." We again disagree. *Booth* does not involve child support obligations and was decided prior to the 2011 amendment to section 10–25.5(a) of the Public Aid Code. Furthermore, the statute at issue in *Booth* regarding reimbursement for the costs of incarceration provided, in part, that "[n]o provision of this Section **443 *730 shall be construed in violation of any State or federal limitation on the collection of money judgments." 730 ILCS 5/3–7–6(c)(3) (West 2002); *Booth,* 215 Ill.Dec. 157, at 420, 294 Ill.Dec. 157, 830 N.E.2d 569. Based upon such language, our supreme court concluded that there was "no doubt as to the legislature's intent": "[a]ctions by the state to obtain reimbursement of incarceration expenses do not override the normal legal restrictions that otherwise govern civil damage claims." *Id.* at 425, 294 Ill.Dec. 157, 830 N.E.2d 569. Conversely, the "notwithstanding" language of section 10–25.5(a) of the Public Aid Code has the opposite effect: it reflects the legislature's intent to override such "normal legal restrictions," *e.g.,* the exemption in section 12–1001(h)(4) of the Code of Civil Procedure.

¶ 25 Contrary to Thomas's contention, we find *Department of Healthcare & Family Services ex rel. Black v. Bartholomew,* 397 Ill.App.3d 363, 336 Ill.Dec. 333, 920 N.E.2d 542 (2009), to be instructive. In *Black,* the circuit court ordered a portion of a father's workers' compensation settlement to be applied toward child support arrearage and interest due to the Department under an administrative support order. *Id.* at 364, 336 Ill.Dec. 333, 920 N.E.2d 542. The father appealed, "arguing workers' compensation benefits are exempt from judgment by Illinois law, including those for child-support arrearages." *Id.* He cited section 21 of the Illinois Workers' Compensation Act (820 ILCS 305/21 (West 2008)), which provided, in part: " 'No payment, claim, award[,] or decision under this Act shall be assignable or subject to any lien, attachment[,] or garnishment, or be held in any way for any lien, debt, penalty[,] or damages.' 820 ILCS 305/21 (West 2008)." *Bartholomew,* 397 Ill.App.3d at 366, 336 Ill.Dec. 333, 920 N.E.2d 542. The Department responded that the trial court's order was proper based on the statutory exception to income exemptions for the collection of child support in the Income Withholding for Support Act (Withholding Act) (750 ILCS 28/15(d) (West 2008)), which defined "[i]ncome" and also provided that "[a]ny other [s]tate or local laws which limit or exempt income or the amount or percentage of income that can be withheld shall not apply." (Internal

quotation marks omitted.) *Black,* 397 Ill.App.3d at 367, 336 Ill.Dec. 333, 920 N.E.2d 542. The appellate court affirmed, characterizing the language of the Withholding Act as "clear and straightforward": "Any other state or local law purporting to exempt statutorily defined income, which includes workers' compensation benefits, does not apply to proceedings involving the collection of child support." *Id.* Although the statutes involved in *Black* are not the same as those at issue in the instant appeal, the court's reasoning regarding an "exception to [the] exemption for the collection of child support" is persuasive.

¶ 26 Thomas correctly observes that "Article XII contains numerous exemptions in addition to the one relied on by the plaintiff." According to Thomas, "[a]ccepting defendants-appellees' argument about the 'notwithstanding clause' would eliminate all of these exemptions." Even assuming *arguendo* that his statement is correct, such a result would be consistent with the Illinois policy of prioritizing child support payments. See *In re Support of Matt,* 105 Ill.2d 330, 335, 85 Ill.Dec. 505, 473 N.E.2d 1310 (1985) (referring to the "clearly expressed intent of the legislature that support judgments be enforced in Illinois by all available means"). As noted in the Department's appellate brief, the Illinois legislature has enacted statutes providing that a parent with a past-due child support obligation may have his or her: driver's license suspended ( **\*\*444 \*731** 625 ILCS 5/7–702 (West 2014)); federal and state tax refunds intercepted (305 ILCS 5/10–17.3, 10–17.5 (West 2014)); passport denied (305 ILCS 5/10–17.14 (West 2014)); and vehicle impounded (305 ILCS 5/10–17.13 (West 2014)). Section 10–25.5 of the Public Aid Code is one of a number of tools for collection of past-due child support.

¶ 27 Despite its stated position in the instant appeal, we note that the Department apparently applies *de facto* exemptions in its enforcement practices regarding past-due child support obligations. The appellee brief indicates that "[a]fter the Director upheld the lien, and with no stay of its enforcement in place, the Department took $8,286.47 of the $12,000." During oral argument, counsel for the Department confirmed that "the Department didn't take the full $12,000," although she argued that the Department was "entitled to under the amendment to the Public Aid Code." Counsel explained that "[t]he Department has a policy that it takes that into account and usually reduces the amount that it seeks by a third just to make sure that it's not leaving someone unable to pay their medical bills thus unable to go to work thus unable to make money to pay their child support."

¶ 28 The Department's policy of pursuing less than its asserted entitlement may, at first glance, seem at odds with the result it implicitly advocates in this case, *i.e.,* the effective elimination of the section 12–1001 personal property exemptions. However, as discussed above, the "notwithstanding" language in section 10–25.5 of the Public Aid Code is broad and clear. Furthermore, as the United States Supreme Court observed in *Massachusetts v. Environmental Protection Agency,* 549 U.S. 497, 527, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007), "an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." To the extent that the Department seeks less than the full amount owed by a debtor-parent—whether motivated by practical and/or moral concerns—we do not view such policy decision as inconsistent with the statutory scheme described herein.

¶ 29 In any event, we view the prioritization of child support obligations as consistent with the fundamental purpose of the section 12–1001 exemptions: allowing a debtor like Thomas to support himself *and his dependents.* See, *e.g., Black,* 397 Ill.App.3d at 368, 336 Ill.Dec. 333, 920 N.E.2d 542 (stating that "the purpose of income exemptions in general is to ensure creditors cannot deprive debtors of the means of supporting themselves and their dependents"). Discussing the policy underlying the statutory predecessor to section 12–1001, the Illinois Supreme Court in 1871 cited "the humane principle, that a creditor should not wholly deprive the husband and father of the means of supporting his family, usually helpless in themselves, and preventing them from becoming a public charge." *Good v. Fogg,* 61 Ill. 449, 451 (1871). More recently, our supreme court has noted "[m]uch the same purpose is attributed to exemption legislation today [citation], with the debtor, *his family,* and the community viewed as the intended beneficiaries of such statutes." (Emphasis added.) *In re Marriage of Logston,* 103 Ill.2d 266, 279–80, 82 Ill.Dec. 633, 469 N.E.2d 167 (1984). We agree with the circuit court's observation that "there is nothing to suggest that Section 12–1001(h)(4) may shield debtors from their own internal family obligations."

## ¶ 30 CONCLUSION

¶ 31 For the reasons stated above, we affirm the judgment of the circuit court of Cook County affirming the final administrative decision upholding the administrative **\*\*445**

Thomas v. Illinois Dept. of Healthcare and Family Services, 2016 IL App (1st) 143933...
48 N.E.3d 721, 400 Ill.Dec. 434

**\*732** lien of Illinois Department of Healthcare and Family Services.

¶ 32 Affirmed.

Justices LAMPKIN and PALMER concurred in the judgment and opinion.

**All Citations**

2016 IL App (1st) 143933, 48 N.E.3d 721, 400 Ill.Dec. 434

Footnotes

1    The appellees' brief states that "Felicia F. Norwood should replace Julie Hamos in this case's caption, by operation of law."

2    DCSS is the Division of Child Support Services, a division of the Department.

3    The ALJ's findings of fact and discussion of the evidence are not in dispute in this appeal.

4    The reference to "750" appears to be incorrect; we assume "735" was intended.

5    Based on our review of the record, the correct amount appears to be $12,000, not $15,000.

6    The appellees are both the Department and the Director; for ease of reference, unless otherwise noted, we refer solely to the "Department."

7    We observe that the Department's final administrative decision did not expressly address the interplay of section 12–1001 of the Code of Civil Procedure and section 10–25.5 of the Public Aid Code. Rather, the Director concluded, in part, that Thomas "failed to present any credible evidence that the funds in his Chase Bank account are exempt from the administrative lien." We recognize that "[i]n administrative law cases, we review the decision of the administrative agency, not the trial court." *CBS Outdoor, Inc.,* 2012 IL App (1st) 111387, ¶ 26, 361 Ill.Dec. 143, 970 N.E.2d 509. Although the final administrative decision discussed certain factual questions or mixed questions of law and fact—*e.g.,* whether Thomas received the funds pursuant to a "personal injury settlement"—the core of the decision was a legal issue: the validity and enforceability of the administrative lien. Furthermore, the facts appear to be undisputed on appeal; the Department's appellee brief concedes that "Thomas received $12,000.00 as his share of a [*sic* ] $18,000 settlement in a personal injury lawsuit he had filed." We review the legal issues before us *de novo. Id.*

8    This amount has been changed to $15,000. 735 ILCS 5/12–1001(h)(4) (West 2012).

9    See, *e.g., Lebron v. Gottlieb Memorial Hospital,* 237 Ill.2d 217, 236, 341 Ill.Dec. 381, 930 N.E.2d 895 (2010) ("*Obiter dictum* is not essential to the outcome of the case, is not an integral part of the opinion, and is generally not binding authority or precedent within the *stare decisis* rule.").

---

End of Document            © 2019 Thomson Reuters. No claim to original U.S. Government Works.

In re Marriage of Pope-Clifton, 355 Ill.App.3d 478 (2005)

823 N.E.2d 607, 291 Ill.Dec. 315

KeyCite Yellow Flag - Negative Treatment

Distinguished by Kauffman v. Wrenn, Ill.App. 2 Dist., December 10, 2015

355 Ill.App.3d 478

Appellate Court of Illinois,

Fourth District.

In re the MARRIAGE OF Dora A. POPE–CLIFTON,
n/k/a Dora A. Pope–Grubb, Petitioner–Appellee,
and
Decatur Earthmover Credit Union, an
Illinois Credit Union, Respondent (Walter
S. Clifton, Respondent–Appellant).

No. 4–04–0307.
|
Feb. 7, 2005.

**Synopsis**

**Background:** Following civil contempt finding against husband, for failure to pay child support, divorced wife filed citation to discover assets. The Circuit Court, Macon County, John K. Greanias, J., froze husband's assets held at credit union. Husband appealed.

**[Holding:]** The Appellate Court, Cook, P.J., held that husband's credit union account, containing only funds received as veterans' administration disability benefits, was not exempt from collection to pay a judgment for child support, maintenance, and attorney fees and court costs.

Affirmed.

West Headnotes (4)

**[1]     Child Support**
          ⟠ Discovery

Divorced wife was not required to have leave of court to bring supplementary proceeding against former husband's credit union to discover assets to satisfy child support judgment; leave of court was only required if there had been prior supplementary proceedings filed against the credit union. Sup.Ct.Rules, Rule 277(a).

1 Cases that cite this headnote

**[2]     Exemptions**
          ⟠ Specific exemptions in general

Divorced husband's credit union account, containing only funds received as veterans' administration disability benefits, was not exempt under state law from collection to pay a judgment for child support, maintenance, and attorney fees and court costs arising from a domestic relations action brought by former wife. S.H.A. 735 ILCS 5/12-1001(g).

8 Cases that cite this headnote

**[3]     Statutes**
          ⟠ Express mention and implied exclusion;
          expressio unius est exclusio alterius

An expression of certain exceptions in a statute is construed as an exclusion of all others.

1 Cases that cite this headnote

**[4]     Exemptions**
          ⟠ Specific exemptions in general

Divorced husband's credit union account, containing only funds received as veterans' administration disability benefits, was not exempt under federal law from collection to pay a judgment for child support, maintenance, and attorney fees and court costs arising from a domestic relations action brought by former wife; veterans' benefits were not for the sole benefit of disabled veterans, but were intended to provide reasonable and adequate compensation for disabled veterans and their families. 38 U.S.C.A. § 5301(a)(1).

7 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*607  \*\*\*315  \*479** Ruth A. Warden Waller, Johnson, Waller & Chiligiris, Decatur, for Walter S. Clifton.

In re Marriage of Pope-Clifton, 355 Ill.App.3d 478 (2005)
823 N.E.2d 607, 291 Ill.Dec. 315

Andrew W.B. Bequette, Beckett & Webber, P.C., Urbana, for Dora A. Pope–Clifton.

James E. Peckert, Kehart, Robinson & Booth, Decatur, for Decatur Earthmover Credit Union.

**Opinion**

Presiding Justice COOK delivered the opinion of the court:

Respondent, Walter S. Clifton, appeals from the trial court's judgment that a bank account containing only funds received as Veterans' Administration disability benefits was not exempt from collection to pay **608 ***316 a judgment for child support, maintenance, and attorney fees and court costs arising from a domestic relations cause of action. We affirm.

Respondent and petitioner, Dora A. Pope–Clifton, now known as Dora A. Pope–Grubb, were divorced in Champaign County in 1989. Respondent was ordered to pay child support, which was modified in 1991, requiring respondent to pay $935 per month in child support. On February 26, 1992, respondent was found to be in indirect civil contempt for failure to comply with the support order, and all other previous orders were reaffirmed.

In August 2000, after eight years of inactivity in the case, petitioner filed petitions for review of child support and for rule to show cause. At the hearing on August 16, 2000, respondent appeared by counsel, who stated respondent was unable to attend because he was undergoing treatment at the Veterans' Administration Hospital in Danville. On November 2, 2000, the trial court found respondent's failure to pay child support was willful and without any legal justification and held respondent in indirect civil contempt. The court entered judgment in the amount of $31,665.50 representing unpaid child support and maintenance owed by respondent to petitioner and additionally awarded $2,955.51 in attorney fees and court costs to be paid by respondent.

*480 On August 16, 2002, petitioner filed in the circuit court of Macon County a certified copy of the docket sheet of the Champaign County proceedings and a citation to discover assets against Earthmover Credit Union (Earthmover), which is located in Decatur. Earthmover subsequently notified petitioner that it was holding $26,711.01 for respondent in an account at its bank. The Macon County court froze the assets held at Earthmover. On March 17, 2004, the court found the citation was a supplemental proceeding to collect a judgment

for child support, maintenance, and attorney fees and court costs arising from a domestic relations cause of action. The court further found that the funds in the Earthmover account were not exempt under section 12–1001(g) of the Code of Civil Procedure (Civil Procedure Code) (735 ILCS 5/12–1001(g) (West 2002)) and ordered Earthmover to turn over the account to petitioner. This appeal followed.

On appeal, respondent argues that (1) the Macon County court did not have subject-matter jurisdiction, (2) the Earthmover account was exempt under the Civil Procedure Code, and (3) the Earthmover account was exempt under federal law. We affirm.

We first examine respondent's argument that the circuit court of Macon County did not have subject-matter jurisdiction in the present case. Respondent argues that the procedures of Supreme Court Rule 277 (134 Ill.2d R. 277) were not followed in bringing supplemental proceedings against Earthmover in Macon County. Specifically, respondent alleges that petitioner did not have leave of the court to bring multiple citations in this matter, no transcript of the original judgment was filed, and the citation ignored amounts already paid by respondent in satisfaction of the judgment. We find no merit in respondent's arguments.

[1] Nothing in the record suggests that petitioner had filed a previous supplementary proceeding against Earthmover. Rule 277(a) only requires leave of the court if there have been prior supplementary proceedings filed against a party. 134 Ill.2d R. 277(a). Although petitioner only filed the docket sheet in Macon County, it is apparently because there was no written transcript of the judgment to file. The docket sheet clearly shows the entry of judgment against respondent and is adequate to meet the requirements of **609 ***317 Rule 277. See Bentley v. Glenn Shipley Enterprises, Inc., 248 Ill.App.3d 647, 651, 189 Ill.Dec. 115, 619 N.E.2d 816, 819 (1993) (provisions of Rule 277 are to be liberally construed). Finally, even with the money from the Earthmover account and all amounts previously recovered by petitioner, the judgment against respondent has not been satisfied, so it is moot that petitioner sought to recover the entire amount of the judgment in her proceedings against Earthmover. The circuit court of Macon County had jurisdiction to enter a judgment on the supplementary proceedings.

*481 Respondent next argues that because the funds in the Earthmover account were directly traceable to Veterans' Administration disability benefits, they are exempt from

garnishment under Illinois law. Section 12–1001 of the Civil Procedure Code provides in relevant part as follows:

> "The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
>                    * * *
>
> (g) The debtor's right to receive:
>
>       (1) a social security benefit, unemployment compensation, or public assistance benefit;
>
>       (2) a veteran's benefit;
>
>       (3) a disability, illness, or unemployment benefit; and
>
>       (4) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
>
> (h) The debtor's right to receive, or property that is traceable to:
>
>       (1)* * *[.]" 735 ILCS 5/12–1001 (West 2002).

Respondent relies upon the court's reasoning in *Internal Medicine Associates of Decatur, S.C. v. Patterson,* 244 Ill.App.3d 704, 184 Ill.Dec. 231, 613 N.E.2d 1 (1993), where the court held that funds traceable to reimbursement for foster-parenting services were exempt from garnishment. The reimbursement for foster-parenting services was not included as an exemption in section 12–1001, but after comparing the language in the Children and Family Services Act (Ill.Rev.Stat.1989, ch. 23, par. 5005) exempting the reimbursement to the exemptions found in the Social Security Act (42 U.S.C. § 407 (Supp. I 1983)), we found them to be similar and granted the reimbursement for foster-parenting services the same exemption that social security receives under federal law. *Patterson,* 244 Ill.App.3d at 707–08, 184 Ill.Dec. 231, 613 N.E.2d at 3. However, because veterans' benefits are explicitly included in section 12–1001(g), the reasoning respondent relies upon in *Patterson* is inapposite.

**[2]  [3]**  In *Fayette County Hospital v. Reavis,* 169 Ill.App.3d 246, 250, 119 Ill.Dec. 937, 523 N.E.2d 693, 695 (1988), which we discussed in *Patterson,* the court held that because 12–1001(g) exempted only a debtor's "right to receive" while 12–1001(h) exempted a debtor's " 'right to receive, or property that is traceable to' certain awards and

payments (Ill.Rev.Stat.1985, ch. 110, par. 12–1001(h))," the legislature clearly did not intend to exempt property that is traceable to funds listed in section 12–1001(g). "It is well established that an expression of certain exceptions in a statute is construed as an exclusion of all others." **\*482** *Fayette County Hospital,* 169 Ill.App.3d at 250, 119 Ill.Dec. 937, 523 N.E.2d at 695, citing *People ex rel. Difanis v. Barr,* 83 Ill.2d 191, 199, 46 Ill.Dec. 678, 414 N.E.2d 731, 734 (1980). Therefore, funds traceable to either social security benefits or veterans' benefits are not exempt under section 12–1001. *Fayette County Hospital,* 169 Ill.App.3d at 250, 119 Ill.Dec. 937, 523 N.E.2d at 695.

Respondent next argues that even if the funds are not exempt under state law, funds traceable to veterans' benefits are **\*\*610  \*\*\*318** exempt under federal law. Section 5301(a)(1) of Title 38 of the United States Code (38 U.S.C. § 5301(a)(1) (2000)) provides in relevant part as follows:

> "Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1) (2000).

Respondent notes that courts have recognized two purposes for the general exemption of veterans' benefits: (1) to " 'avoid the possibility of the Veterans' Administration ... being placed in the position of a collection agency' " and (2) to " 'prevent the deprivation and depletion of the means of subsistence of veterans dependant upon these benefits as the main source of their income.' " *Rose v. Rose,* 481 U.S. 619, 630, 107 S.Ct. 2029, 2036, 95 L.Ed.2d 599, 610 (1987), quoting S.Rep. No. 94–1243, at 147–48 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5241, 5369–70.

**[4]**  Respondent argues that by allowing the court to seize his bank account, he can be deprived of his means of subsistence. However, as the Supreme Court stated in *Rose,* veterans' benefits are not for the sole benefit of disabled veterans, but are intended to " 'provide reasonable and adequate compensation for disabled veterans *and their families.*' " (Emphasis in original.) *Rose,* 481 U.S. at 630, 107 S.Ct. at 2036, 95 L.Ed.2d at 610, quoting S.Rep. No. 98–604, at 24 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4479, 4488. Because the benefits were intended to benefit both veterans

In re Marriage of Pope-Clifton, 355 Ill.App.3d 478 (2005)

823 N.E.2d 607, 291 Ill.Dec. 315

and their families, the *Rose* Court explicitly held that section 5301 (formerly 38 U.S.C. § 3101 (1988)) "does not extend to protect a veteran's disability benefits from seizure where the veteran invokes that provision to avoid an otherwise valid order of child support." *Rose,* 481 U.S. at 634, 107 S.Ct. at 2038, 95 L.Ed.2d at 613. Respondent's funds are clearly not exempt from seizure under federal law.

**\*483** For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.

**All Citations**

355 Ill.App.3d 478, 823 N.E.2d 607, 291 Ill.Dec. 315

---

End of Document   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Knickerbocker v. Norman, 938 F.2d 891 (1991)

34 Soc.Sec.Rep.Serv. 228, Unempl.Ins.Rep. (CCH) P 16150A

938 F.2d 891
United States Court of Appeals,
Eighth Circuit.

Leo KNICKERBOCKER, Individually and on
behalf of all others similarly situated, Appellant,

v.

Nancy NORMAN, Individually and in her
capacity as Commissioner of the Department
of Human Services; Chris Ill, Individually and
in her capacity as Bureau Chief of the Iowa
Child Support Recovery Units, Appellees.

No. 90–2908SI.
|
Submitted May 14, 1991.
|
Decided July 11, 1991.

### Synopsis

Father brought action against state, challenging withholding of his federal disability benefits. The United States District Court for the Southern District of Iowa, Donald E. O'Brien, Chief Judge, denied relief, and appeal was taken. The Court of Appeals, Floyd R. Gibson, Senior Circuit Judge, held that right to collect child support payments that had been assigned to state agency continued to be "child support," within meaning of federal law allowing such right to be enforced against federal disability benefits.

Affirmed.

West Headnotes (1)

[1]     **Child Support**
        Administrative enforcement; orders and proceedings
        **Social Security**
        Execution, levy, attachment, garnishment, or other legal process
        Right to collect child support payments that had been assigned to state agency continued to be "child support," within meaning of federal law allowing such right to be enforced against federal disability benefits. Social Security Act,

§§ 207(a), 459(a), 462(b), as amended, 42 U.S.C.A. §§ 407(a), 659(a), 662(b).

2 Cases that cite this headnote

### Attorneys and Law Firms

*892 Richard R. Gleason, Dubuque, Iowa, argued; Christine M. Luzzie, Iowa City, Iowa, on brief.

Julie F. Pottorff, argued; Gordon E. Allen, on brief, Des Moines, Iowa, for appellee.

Before ARNOLD and LOKEN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

### Opinion

FLOYD R. GIBSON, Senior Circuit Judge.

This case presents the question whether a right to collect child support payments that has been assigned to a state agency continues to be "child support" under federal law in order that such a right may be enforced against federal disability benefits. Appellant Knickerbocker appeals the district court's [1] affirmative answer to this question. We affirm the district court.

### 1. BACKGROUND [2]

Knickerbocker was obligated to pay monthly child support of $150.00 pursuant to a divorce decree entered in 1983. Knickerbocker's support obligations ended sometime in 1984 or 1985 when he became eligible for Social Security Disability Insurance Benefits, and at the same time his dependent children became eligible for dependents' benefits of $25.00 per month. The record reflects that Knickerbocker's child support payments are in arrears and that he has paid only approximately $900.00, and this was an offset to a federal tax refund. Unemployed, Knickerbocker's income amounts to less than $450.00 per month in public assistance.

In July 1983, Knickerbocker's ex-wife assigned her rights to collect the child support from Knickerbocker to the State of Iowa so that she could meet the requirements necessary to receive monies from Aid to Families with Dependent Children (AFDC). The party responsible for collecting assigned child support for Iowa is the Child Support Recovery Unit (CSRU), and any amounts collected are paid to a state

account for dependent children. Despite several notices to Knickerbocker (before and after he qualified for disability insurance benefits) that his child support was in arrears, the CSRU collected nothing from Knickerbocker until it began garnishing his disability benefits in 1987.[3] Since early 1987, under an order for mandatory income withholding, the Social Security Administration has been keeping $25.00 from Knickerbocker's benefits each month for the Iowa CSRU. *See* Iowa Code Ann. §§ 252D.1–.6 (West 1985). This withholding has been suspended by agreement of the parties pending the resolution of this case.

In 1988, Knickerbocker came to federal district court and sued the Iowa officials responsible for the withholding. His complaint **\*893** sought class certification and relief for alleged constitutional and statutory violations. In a thorough memorandum, the district court took each of Knickerbocker's allegations and, in turn, dismissed each. The only issue appealed by Knickerbocker is that which we initially posited above and which we answer below.

## II. DISCUSSION

The United States cannot be sued without its consent, therefore federal monies paid as wages or other obligations are beyond the reach of various forms of process. So it is true for Knickerbocker's disability insurance benefits. 42 U.S.C. § 407(a) (1988). However, an express exception to section 407 is made for the payment of child support. 42 U.S.C. § 659(a) (1988).

> Notwithstanding any other provision of law (including section 407 of this title) ... moneys ... due from, or payable by, the United States ... to any individual ... shall be subject to ... legal process brought for the enforcement, against such individual of his legal obligations to provide child support....

*Id.* Child support is later defined:

> [t]he term "child support", when used in reference to the legal obligations of an individual to provide such support, means periodic payments of funds for

> the support and maintenance of a child or children with respect to which such individual has such an obligation....

42 U.S.C. § 662(b) (1988).

Despite the clear exception for child support provided as above, Knickerbocker claims that Iowa's withholding from his disability insurance benefits violates section 407. The sum of Knickerbocker's position is that he does not owe the State of Iowa child support as defined; rather, he now owes only a general debt which at one time was, but no longer is, child support. Further, the withholding which Iowa makes goes into a general account and not specifically to Knickerbocker's children, thus he is not repaying Iowa for direct support of his children.

The Supreme Court of Iowa recently rejected this identical argument in *Shepherd v. Shepherd,* 467 N.W.2d 237 (Iowa 1991). The Iowa Court put the query this way: "[d]oes the state's claim for reimbursements of AFDC payments retain its nature as a claim for child support, or is it merely a claim for money due the state?" *Id.* at 239. The Court relied on Iowa Code § 252C.2(2), *id.,* and concluded that under federal or state law "the nature of the debt remains one for child support." *Id.* at 240.

While we agree with the Supreme Court of Iowa, we reach our result regardless of *Shepherd* because it is our particular duty to determine the meaning of federal laws. We believe a uniform reading of 42 U.S.C. §§ 659(a) and 662(b) (1988) should obtain, without resort to potentially variant views on the character of child support debts under state laws. *But see Salazar v. United States Air Force,* 849 F.2d 1542, 1547 (5th Cir.1988) ("By the plain language of § 662(b) itself, Congress must have intended that the state court[s] have [the] power [to say what 'child support' means].").

We agree with Knickerbocker that he does not actually owe Iowa child support, inasmuch as the State of Iowa is not a child for whose support Knickerbocker is responsible; however, we believe that he does owe Iowa *for* the support of his children. The plainest reading of sections 659(a) and 662(b) disproves Knickerbocker's position that an assignment of child support transforms the support obligation into a general debt beyond the reach of process. Section 659(a) allows for federal monies to be subject to "legal process

Knickerbocker v. Norman, 938 F.2d 891 (1991)

34 Soc.Sec.Rep.Serv. 228, Unempl.Ins.Rep. (CCH) P 16150A

brought for the enforcement ... of ... legal obligations to provide child support...." 42 U.S.C. § 659(a) (1988).

Whatever contrary characterization one might try to make of the debt Knickerbocker owes to Iowa, the withholding in this case was simply legal process effected to enforce Knickerbocker's legal obligation to provide child support. Knickerbocker's obligation to provide child support now belongs to Iowa by virtue of an assignment of the right to collect the support, and it remains an obligation for child support. The assignment did not change the character **894** or nature of the debt, only its obligee. Iowa may collect that obligation as child support against Knickerbocker's federal benefits pursuant to section 659(a). [4]

III. CONCLUSION

Our holding rests firmly on our plain reading of the applicable law, yet we note that we cannot conceive that Congress' express effort to subject federal entitlements to process for child support debts in section 659 could ever admit of the labored reading Knickerbocker suggests. After all, Congress has also passed into law 42 U.S.C. § 666, requiring states that receive federal AFDC funds to implement measures to satisfy child support arrearages by income withholdings, thereby further evidencing the importance of satisfaction of child support debts to the national legislative agenda. We have concluded that Knickerbocker's position fails the letter of the law; we carefully add that it fails the spirit as well.

**All Citations**

938 F.2d 891, 34 Soc.Sec.Rep.Serv. 228, Unempl.Ins.Rep. (CCH) P 16150A

Footnotes

1    The Honorable Donald E. O'Brien, Chief Judge of the United States District Court for the Southern District of Iowa.

2    The facts we outline are taken from the district court's findings of facts and the stipulation of the parties.

3    In order to continue receiving federal funds for its AFDC program, Iowa had to comply with 42 U.S.C. § 666(b) which requires that a state establish procedures for "[w]ithholding from income of amounts payable as [child] support." *Id.*

4    This case does not present the questions what size sums may be appropriately withheld and whether some sums may be too large a share of a disability claimant's benefits. We leave those concerns for an appropriate case.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.