STATE OF ILLINOIS )                                            (21509)
                  ) SS.
COUNTY OF COOK    )

### IN THE CIRCUIT COURT FOR THE NINETEENTH
### JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

SARINA ERVIN,                          )
                                       )
                Petitioner,            )
                                       )
        vs.                            )   NO. 04 D 1943
                                       )
RAYMOND ERVIN,                         )
                Respondent.            )

### TRIAL BRIEF

### FAILURE OF NOTICE

UIFSA, at 750 ILCS 22-607(a)(5) expressly provides that one of the defenses to the

registration, validity or enforcement is: "There is a defense under the law of this State to the remedy

sought." RAYMOND ERVIN testified that he never received notice of the July 5, 2000, hearing at

which time he was unrepresented by counsel. Under examination by her own attorney, SARINA

ERVIN testified as follows:

> "Q.  At the time that the July 2000 Order was entered do you know whether or
>      not Mr. Ervin had notice of that court date?"
>
> A.  No."

The unrefuted testimony is that RAYMOND ERVIN did not have notice of the July 5, 2000,

proceeding. This is a defense under the law of the State of Illinois it being axiomatic that lack of

notice of a hearing or a petition renders void any order entered by a court pursuant to such hearing

or petition. The court *In Re: Adoption of A.W.*, 343 Ill.App.3rd 396 (2nd Dist. 2003), held:

> "The effect of lack of notice was to render the order dismissing the Petition void
> (citation omitted.)" Prior to the entry of a new order, a party must give notice that a
> motion will be presented to the court (citation omitted). An order entered without
> notice is void (citation omitted). 'At a minimum, procedural due process requires

notice, an opportunity to respond, and a meaningful opportunity to be heard (citation omitted). . . A void order or judgment may be attacked at any time or in any court either directly or collaterally without any showing of diligence or meritorious defense (citation omitted).'"

Similarly, the court held in *In Re: Custody of Ayala*, 344 Ill.App.3rd 574 (1st Dist. 2003):

"Due process of law requires that a party be accorded procedural fairness, i.e., given notice and an opportunity to be heard. . . The record contains no evidence, however, that Wanda was notified that custody, let alone shared custody with third parties, relief which had not been requested by any party, would be considered and/or decided that same day. It would be 'unjust, unfair, and inequitable' to allow the custody order awarding co-custody to Luis' wife and parents to stand where it is clear that Wanda had no notice that such an award was contemplated . . . Accordingly, the custody order must be deemed null and void as a denial of constitutional rights to procedural due process and must be reversed."

The record here also contains no evidence that RAYMOND ERVIN was notified that the hearing on

July 5, 2000, was taking place.

The evidence deposition of Earl Atnikov was presented to this court. Mr. Atnikov testified

that he was a barrister and solicitor licensed to practice law in the Province of Ontario, Canada.

Mr. Atnikov testified that he had requested the subject file in Ontario, Canada, from the Clerk of the

Court and thereupon when advised that the same was available he testified:

"Q.  Okay, did you then have occasion to actually see that file?

A.  I did see that file on Tuesday, the 17th of April.

Q.  And did you have an occasion to look through the contents of that file?

A.  I did, sir.

Q.  Could you please tell the court exactly what you did in looking through that file?

A.  Well, frankly it was a box, a banker's box full of documents and I went from start to finish through all of the documents, essentially page by page.

Q.  Okay, and going page by page were you looking for anything in specific?

-2-

A. I was asked to determine as to whether there was any evidence in the file that showed that Mr. Raymond Ervin had been served with notice of a court hearing scheduled for July 5, 2000.

Q. Did you find any such evidence, Sir?

A. I did not. . .

Q. And would be it be fair to say Sir that there is nothing in that file that would indicate that he was given notice of any hearing on July 5 of 2000?

A. I am more than satisfied that Mr. Ervin, according to the Circuit file, was not served with any notice of that hearing."

Here, like in *Ayala, Id.,* where the court said: "The record contains no evidence, however, that Wanda was notified that custody, let alone shared custody with third parties, relief which had not been requested by any party, would be considered and/or decided that same day." The ERVIN record similarly contains no evidence of notification of the July 5, 2000, hearing.

As in *Ayala, Id.,* there is no question that SARINA ERVIN was seeking additional relief. This court, in undertaking to clarify a question, posed the following question:

"The Court: Did the Order of 7/5/2000 give additional relief from your Order of 11/2/98, I believe was your question or something close to that.

A. Yes it did."

Further, SARINA ERVIN testified:

"Q. And that is certainly something you wanted; is it not? You wanted more? You wanted additional relief?

A. Yes sir.
. . .
Q. Now the difference in these two Orders was the previous Order of November 2, '98 resulted in child support of $1,613.00 and the Order of July 5 of 2000 resulted in child support of $5,418.00; is that correct?

A. Yes sir."

By way of calculation, this was a 340% increase. Similarly, MR. ERVIN'S visitation was substantially decreased. He went from extended visitation on every other weekend, alternative

C000708

Saturdays and Wednesday nights, alternate holidays and the entire month of July to literally no

visitation, and any visitation accorded would have to have been supervised in the presence of another

party. The substantial change in visitation was demonstrated by the testimony of SARINA ERVIN:

> "Q.  Now, the Order of July 5, 2000, substantially decreased Mr. Ervin's visitation
> rights; did it not?
>
> A.  Yes, sir, it did.
>
> Q.  Did he still have visitation every weekend?
>
> A.  No, sir.
>
> Q.  Did he have a month during the summer?
>
> A.  No, sir.
>
> Q.  Did he have holiday visitation:
>
> A.  No, sir.
>
> Q.  So that was a substantial change; was it not?
>
> A.  Yes, sir.  It was."

*Ayala, Id.,* certainly would require that MR. ERVIN should have been given notice of this hearing.

This is consistent with Supreme Court Rule 105, which provides in pertinent part:

> "If new or additional relief, whether by amendment, counterclaim or otherwise, is
> sought against a party not entitled to notice under Rule 104, notice shall be given him
> as herein provided."

Supreme Court Rule 105 then goes on to provide in (b) that the service must either be:  (1) The same

as service by Summons; (2) By prepaid certified or registered mail and (3) By publication.  Thus,

Supreme Court Rule 105 specifically required that MR. ERVIN be given notice of that hearing.  If

for any reason MR. ERVIN was not otherwise required to be given notice, Supreme Court Rule 105

certainly required that he be given notice as a consequence of the additional relief being sought.  In

the absence of such notice he was denied due process and this order was void as a consequence of

-4-

the denial of this basic due process right. This thus constitutes a defense under the law of this State and thus constitutes a defense pursuant to 750 ILCS 22/607(5), and the registration should not be confirmed.

Respectfully submitted,

RAYMOND ERVIN

By: _____

His Attorney,
JAMES H. WOLF

**JAMES H. WOLF, ESQ.**
James M. Wolf, Esq.
Wolf & Tennant
Suite 800
33 North Dearborn Street
Chicago, Illinois 60602
(312) 739-0300
Attorney Code No. 21509

C:\WP51\Work\Ervin-2-brf.docx

C000710