1   STATE OF ILLINOIS   )

2                       )  SS:

3   COUNTY OF L A K E   )

4       IN THE CIRCUIT COURT FOR THE NINETEENTH
        JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS
5

6
    IN RE: THE MARRIAGE OF          )
7                                   )
    SARINA ERVIN,                   )
8                                   )
                    Petitioner,     )
9           and                     ) 04 D 1943
                                    )
10  RAYMOND ERVIN,                  )
                    Respondent.     )
11  _____)

12

13          REPORT OF PROCEEDINGS had in the hearing

14  of the above-entitled matter before the HONORABLE

15  DANIEL JASICA, Judge of said Court, at 18 North

16  County Street, C-307, Waukegan, Illinois on the 2nd

17  day of June 2017 at 1:30 PM.

18

19

20

21

22

23

24

25

```
 1
                    BEERMANN PRITIKIN MIRABELLI SWERDLOVE LLP
 2                  161 North Clark Street, Suite 2600
                    Chicago, IL  60601
 3                  BY:  ENRICO J. MIRABELLI, ESQ.
                         JONATHAN D. STEELE, ESQ.
 4

 5                  on behalf of Petitioner

 6

 7                  RAYMOND A. BOLDT
                    Attorney at Law
 8                  209 East Park Street
                    Mundelein, IL  60060
 9

10                  on behalf of Respondent

11

12                  OFFICE OF LAKE COUNTY STATE'S ATTORNEY
                    18 North County Street
13                  Waukegan, IL  60085
                    BY:  LISLE A. STALTER, ESQ.
14                       SUZANNE SALZWEDEL, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

1              THE COURT:  So now comes up on Ervin
2    versus Ervin 04 D 1943.  I think there's two, well,
3    there's two motions that are fully briefed that are
4    prepared for hearing today.
5              I did get a third motion that was just up
6    for presentment I think today.  But in order I will
7    take them as the petition to intervene by the
8    Illinois Department of Health Care and Family
9    Services.  I have read the petition.  I have read
10   the response and the petition.
11             Any additional argument, Ms. Stalter or
12   Ms. Salzwedel, that you wish to make?
13             MS. STALTER:  I would just in looking at
14   the Illinois Public Aid Code and the other relevant
15   things that talk about when a Petitioner, an
16   individual receives services from the State that
17   individual does assign their rights to the State for
18   purposes of collecting child support.  So there is a
19   statutory basis for the department to intervene as
20   of right.
21             And it's actually been an issue that's
22   never been questioned before that we know of but the
23   Illinois Statutes do provide that.  And I don't
24   think Mr. Boldt provided any legal basis as to why.
25   He just said that it's, that the, why the, sorry.

1   What?

2          MS. SALZWEDEL: Paragraph four.

3          MS. STALTER: I am sorry. Thank you. Why

4   the department shouldn't be able to intervene. It

5   just should not be allowed to intervene other than

6   that it's not timely. But at this point in time the

7   department is seeking and this is indicated in the

8   petition to make sure that the monies due to the

9   Crown are preserved. Throughout these continuing

10   proceedings that there was monies in arrearages that

11   are due.

12         They are simply seeking to have those

13   preserved. So there is not, that is not an interest

14   that would be protected by either of the parties and

15   it should give the department the right to

16   intervene.

17         THE COURT: Thank you. It's my

18       understanding that Ms. Ervin is not objecting

19       to the petition; correct?

20       MR. STEELE: Judge, my understanding from

21       speaking with the State's Attorney's office is

22       that the order they are seeking is an order

23       that recites the arrearage and that they are

24       entitled to notice and that any, that the

25       parties basically can't enter an agreed order

1          that would extinguish the arrearage without

2          notice to the State or without consent from the

3          State.  To the extent that's the relief that

4          they are seeking today we don't have an

5          objection.

6              My understanding is that they are not

7          attempting to seek any of the specific funds

8          that have been turned over to our firm.  So

9          based on that we are not objecting.

10             THE COURT:  All right.  Mr. Boldt.

11             MR. BOLDT:  Yes, Judge.  At least now I

12         know it's under subparagraph A they are seeking

13         because their motion didn't state that they

14         wished to intervene as a matter of right,

15         Judge.  I did raise the right issue of

16         timeliness because timeliness is involved in

17         subparagraph A which is by right, and

18         subparagraph B which is by permission, Judge.

19             The issue that I am raising to the Court

20         about whether they are able to intervene by

21         right under number one, two or three as stated

22         in 408 which is either a statute confers an

23         unconditional right.  There is no statute cited

24         that confers them an unconditional right.

25             Whether the representation of their

1       interest by existing parties is or may be
2       inadequate and the Applicant may be bound by an
3       order of judgment in the action, Judge, they
4       are not seeking anything in this action other
5       than a statement that the Crown is owed some
6       money; and the money that's sitting out there
7       they don't care anything about.
8              So my question is, how can it possibly be
9       under two inadequate representation because
10      they are not seeking anything other than some
11      sort of preserving an arrearage.
12             And quite frankly I looked at that motion,
13      Judge, and cites no local rule or statute or
14      Supreme Court Rule or case that allows them to
15      even bring that motion.  We have not briefed
16      that yet, but I just point that out to the
17      Court.
18             And the last one is that the Applicant is
19      so situated as to be adversely affected by a
20      distribution or disposition of property in the
21      custody or subject control or disposition of
22      the Court or a Court officer.
23             Again, they are not seeking any money of
24      what the Court has control of at this time.  So
25      to be blunt I don't see why they even filed a

1    petition to intervene.  Now in their motion as

2    to determining the arrearage they make an

3    allegation that the assignment from Ms. or by

4    Ms. Sarina Ervin to the Crown ended in 2006.

5         Now if it ended in 2006 why are they

6    seeking to intervene 11 years later.  More

7    importantly why are they seeking to intervene

8    11 years later when in 2006 the State's

9    Attorney's Office of Lake County filed an

10    action under 06 F 425.  And then as you pointed

11    out to me when the State was not here they

12    either abandoned or that action was dismissed.

13         Now if in fact the assignment is over one

14    question, A, whether it's timely and, B,

15    whether they have any interest at all.  So I

16    don't understand why the State is seeking to

17    intervene.

18         Now something came up, Judge, and my

19    client faxed it to me yesterday.  I have got a

20    copy for the Court to look at and I brought a

21    copy for Ms. Stalter also.  Since they were not

22    objecting, they being Ms. Evans, was not

23    objecting to the intervention I did make a copy

24    for them.  But HFS has sent to my client as a,

25    well, it's dated May 17, 2017 an income

1    withholding notice for support from HFS.

2         Now it seeks to have current support

3    withheld only, doesn't cite an arrearage.  And

4    in fact when it asked if there is an arrearage

5    greater than 12 weeks they state no.  Here,

6    Judge.  I brought one.

7         THE COURT:  I didn't want to look at it

8    until opposing Counsel has had a chance to look

9    at it and see whether she objects to me even

10   looking at it.

11        MR. BOLDT:  Well, I am raising this,

12   Judge, for two purposes.  If in fact the

13   assignment is over with why are they filing

14   this notice as of this year?

15        And if in fact the assignment isn't over

16   with then the State's position is and would

17   have to be if the assignment hasn't been ended

18   is that Ms. Ervin is entitled to nothing.

19        The assignment is still in full force and

20   effect.  We are attempting to collect it.  So

21   we want to stand in the shoes of Ms. Ervin and

22   her Counsel and turnover the money to us.  They

23   can not have it both ways.

24        So on the outside looking in after June

25   1st and this being faxed to me from my client

1  because I think he got it on Monday or Tuesday.

2  Excuse me.  This is a short week.  The 30th

3  that the State is now through HFS seeking to

4  enforce some sort of current child support

5  amount.  That's what the document says to me.

6  I don't know what it says to Ms. Stalter.

7    The question now brings into, up to the

8  Court, well, why are they doing this if they

9  have no assignment.  More importantly, if they

10  have no assignment why are they seeking to

11  intervene; and if the assignment still exists

12  then they shouldn't be filing a motion.

13    Well, I shouldn't tell them what they

14  should do.  But it would seem that their claim

15  for the Crown would be superior to Ms. Ervin's

16  claim because in '99 she assigned all of her

17  interest.  And that doesn't even come to

18  explain why the State started the 06 F case and

19  then had it dismissed or abandoned it, Judge.

20    So I don't think they have a right to

21  intervene.  I think if the Court determines

22  they have a right to intervene I think the

23  Court then has to presume because they didn't

24  attach the release of the assignment to their

25  pleadings which was the motion to preserve

1        arrearage that the Court has a right to presume
2        that the 1999 I believe assignment which can
3        only be revoked by the Crown is still in full
4        force and effect.  Because if this is valid
5        that assignment must be still in full force and
6        effect.
7              THE COURT:  Any response; reply I should
8        say.
9              MS. STALTER:  Yes.  First of all, with
10       respect to whether or not citing the legal
11       authority to intervene our petition to
12       intervene does cite with respect to starting on
13       the petition to intervene the petition to
14       intervene does cite section, I am sorry,
15       Illinois Public Aid Code 305 ILCS 5-10-1.
16              That gives the department through our
17       office the right to intervene in to cases where
18       there is child support enforcement.  And also
19       it ties into Title 4(d) of the Social Security
20       Act which is at 42 USC 651.  That's in our
21       petition to intervene.  That's our legal basis
22       to intervene.  Mr. Boldt said we didn't cite
23       anything.  It's right there on the petition.
24              Under 2-408 we are required to attach a
25       document that we are seeking to intervene on.

1 And that's what we did.  We attached the

2 petition to preserve the arrearage and

3 essentially have a Court order in this matter

4 recognizing that the Crown is owed arrearages

5 for Ms. Ervin.

6  The fact that she is no longer in the

7 program and withdrew in 2006 is not relevant

8 with respect to whether or not those monies are

9 still due and owing to the Crown.

10  And so that and the interest of the two

11 individuals, Petitioner and the Respondent

12 Sarina and Raymond, are not protecting the

13 interest of the Crown.  And so that's why there

14 is a basis and a request to intervene.

15  And the order we are asking is that when

16 intervention is allowed that that arrearage

17 amount be protected and that we have the

18 authority or that the Crown has the authority

19 to collect and enforce the payment due as

20 permitted by law.

21  So each one of those elements and 2-408

22 are there and present so we do establish the

23 legal authority.  We establish that the right

24 of the Crown are not protected by the parties

25 currently in the proceeding.  And the fact that

1     she withdrew in 2006 does not necessarily mean

2     that those rights are no longer valid or there.

3          With respect to the document that Mr.

4     Boldt was attempting to provide to you it is

5     simply an administrative process that the

6     department has for collecting on child support.

7     And so it's not relevant to this proceeding.

8          MS. SALZWEDEL:  It is not a Court order,

9     Judge.  It's a simple withhold notice.

10         And typically what the department will do

11    is once there is something called a payment

12    path change they will issue this legal notice.

13    The payment path change is something.  PPC.

14         MS. STALTER:  Thank you for letting

15    Suzanne speak.  She is much more.

16         THE COURT:  So help me understand what you

17    believe the document that Mr. Boldt has handed

18    you and me is.

19         MS. SALZWEDEL:  It is a withhold notice,

20    Your Honor.

21         THE COURT:  What is the effect of that

22    withhold notice under Illinois law as you

23    understand it?

24         MS. SALZWEDEL:  If sent to an employer the

25    employer is required to go ahead and withhold

```
 1     the amount cited.
 2           THE COURT:  In this case who was it sent
 3     to?
 4           MR. BOLDT:  If I may, Judge.  I know.  I
 5     just know.
 6           MS. SALZWEDEL:  To him.  Looks like it was
 7     sent to him.
 8           MR. BOLDT:  Illinois Department.  It was
 9     sent to him but I believe it's seeking to
10     withhold money from the Illinois Department of
11     Employment Security.
12           MS. SALZWEDEL:  Oh.  I see it.  IDES.
13           THE COURT:  Their role in all of this is
14     what as you understand it?
15           MS. SALZWEDEL:  IDES, Your Honor?
16           THE COURT:  Yes.
17           MS. SALZWEDEL:  Apparently Mr. Ervin is
18     getting unemployment insurance benefits.
19           THE COURT:  Okay.  And there was, you have
20     cited I know in your motion or your petition
21     you cited the Illinois Public Aid Code
22     generally.  You didn't cite a particular
23     statute.  Is there a particular statutory
24     citation that I should be looking at for this
25     right to intervene?
```

1            MS. STALTER:  It's actually 10-10, 305

2       ILCS 5/10-10.  If you look in the middle of

3       that first paragraph it says, child and spousal

4       support unit established by 10-3.1 may

5       institute on behalf of the State of the

6       Illinois Department any action under this

7       section for judicial enforcement of the support

8       liability when the dependents are applicants or

9       recipients under Articles 3, 4, 5 and 7 and the

10      TANF Program, the Temporary Assistance For

11      Needy Families is under Article 4.

12            So this is an Article 4 case.

13            THE COURT:  All right.  Anything else you

14      want to tell me?

15            MS. SALZWEDEL:  I don't know if it's

16      relevant, Your Honor, the issue of abandonment

17      of the 06 F 425 case.  Really what happened was

18      the two cases were consolidated.  And there is

19      a Court order that consolidates 06 F 425 in to

20      04 D 1943.

21            THE COURT:  One being the child

22      enforcement case; one being the divorce case.

23            MS. SALZWEDEL:  Correct.

24            MR. BOLDT:  Judge, if I may.  That's

25      incorrect.  It was consolidated into 00 D 2067

1       which is also closed.  The printout I obtained

2       from the clerk indicates that 06 F 425 was

3       consolidate into 00 D —

4            MS. SALZWEDEL:  Oh.  You are correct.

5            MR. BOLDT:  — 2067 which is also a closed

6       case at this time to my understanding, Judge.

7            And that's hence why I made the argument

8       it's never been consolidated into the 04 case.

9            THE COURT:  All right.  Well, it does

10      appear to me that there is a potential claim

11      that could be asserted by either the State of

12      Illinois or the Crown of Canada to collect the

13      child support.  So I am looking at Section

14      2-408 either A(1) or A(3).

15           It strikes me that they certainly could be

16      adversely affected by distribution of the money

17      that was ordered to be turned over and is

18      currently being held by Counsel for Ms. Ervin.

19           So I am granting the petition to intervene

20      that has been filed by the Illinois Department

21      of Health and Family Services.

22           That being the case the other motion that

23      is pending is the motion to vacate and

24      reconsider that's been filed by Mr. Ervin which

25      has been fully briefed.  I have read the

1     motion, the response and the reply but I do

2     invite Counsel to make any further argument if

3     they wish to make with respect to that.

4          MR. BOLDT:  If I may, Judge.

5          THE COURT:  Yes, sir.

6          MR. BOLDT:  The first matter I will

7     address is the fact that Counsel for Ms. Ervin

8     has raised the issue of whether or not the

9     motion is timely.

10         I cited to this Court PNC Bank versus

11    Hoffmann, 36 Northeastern Second 971, a Second

12    Appellate District case 2015.  The parallel

13    cite is 394 Illinois Decision 680.

14         In that case, Judge, the Court was called

15    upon to determine when in fact the 1402 or the

16    turnover of funds when that occurs as to the

17    finality of the order.

18         And on page 976 under notes one and two

19    the Court goes through the exercise of saying

20    that few cases discuss when an order in

21    supplementary proceedings are final orders.

22    Generally a final order is one that disposes of

23    the parties rights with respect to either the

24    entire controversy or some definite and

25    separate portion of the controversy.

1     And then citing another case Inland
2  Commercial Property Management versus HOB1
3  Holding Corp, said an order under Section
4  2-1402, proceeding is said to be final when the
5  citation Petitioner is in a position to collect
6  against the judgment debtor or Third-Party or
7  the citation Petitioner has been ultimately
8  foreclosed from doing so.
9     The Court order of April 12th was the
10  first Court order that allowed the money to be
11  turned over to Sarina Evan's, Ervin's, excuse
12  me, attorneys. Prior to that the order had
13  been stayed. In fact it stayed until this day.
14     It was stayed after the, it was ordered to
15  be turned over and it was stayed until the 19th
16  of May to allow the State to make any claim.
17     So first of all, Judge, we could state
18  that the money to be turned over to the
19  judgment creditor in this case did not and
20  could not take effect until May 19th under the
21  Court's order of April 12th.
22     In fact it wasn't until after April 12th
23  that the judgment creditor Sarina Ervin's
24  attorneys began to receive checks from the
25  three individuals — not individuals —

```
 1      insurance companies concerning the turnover
 2      order, Judge.
 3          So I hope by the idea of the stay of the
 4      Court prior to that date on the 12th and then
 5      the lifting of the stay as no monies were
 6      turned over before that that we put to bed once
 7      and for all whether it is timely or not.
 8          Somewhat tied to that issue is the case of
 9      Schak versus Blom but I will discuss that
10      later.
11          Now my count one, Judge, motion to vacate,
12      rehear and reconsider brings up the fact that
13      the citations in this case, and I have not seen
14      the original citations.  They are not in the
15      Court file.  I looked at it before preparing my
16      reply.  There also is no return of service on
17      any of those citations, Judge.  But I attached
18      to my original motion copies that were sent to
19      my client of those three citations.
20          None of them were signed by Counsel for
21      the judgment creditor or alleged judgment
22      creditor is what I should say.  Because my
23      position takes or my motion takes and reply
24      takes the position there is no judgment.
25          So if it's not signed or certified, Judge,
```

```
1     the statute is clear.  It says it shall be

2     certified, and it's not.  And it's not signed

3     in the location where the line says witness and

4     you sign it.  To further indicate that

5     Petitioner's Counsel who's alleged judgment

6     creditor in here knew or should have known that

7     it should be signed is my exhibit, I think it's

8     C, may be A or B to my reply, Judge.

9          Because in that exhibit the previous

10    citation which this Court quashed because it

11    cited a judgment that had been vacated is

12    signed under the witness line or on the witness

13    line by Kyle Cooper, the attorney who

14    represented the Petitioner previously herein.

15         He signed that citation certifying under

16    109 of the Illinois Code of Civil Procedure

17    that that judgment was valid.  It turned out

18    not to be but at least it was executed.

19         The language is mandatory in A it shall be

20    certified.  None of these are certified that I

21    can tell.  It's their responsibility to have

22    them certified Judge.  Now.

23         THE COURT:  But let me assume and I just

24    want to know what your position is.  Okay.

25    Assume I agree with you.
```

1                MR. BOLDT:  Okay.

2                THE COURT:  That the order that was

3        entered I think it was what, March 15th was the

4        first order that directed the funds to be

5        remitted to I believe.

6                MR. BOLDT:  The March 15th order.

7                THE COURT:  Do you have a copy of the

8        March 15th order?

9                MR. BOLDT:  Yes.  I do.

10               THE COURT:  If you have it handy I would

11       like to see it.

12               MR. BOLDT:  I think I do.  I may be don't,

13       Judge, because.

14               MR. MIRABELLI:  I am sure Mr. Steele would

15       have a copy.

16               MR. BOLDT:  I don't believe I do, Judge.

17               THE COURT:  I know I have it here, too.  I

18       will find it.

19               MR. BOLDT:  But that order required a

20       turnover and then that order was stayed until

21       April 12th because at the time the order was

22       entered I had the pending motion to quash.

23               THE COURT:  March 17.

24               MR. BOLDT:  Right.  And so it was stayed.

25       And that's why I took the position as in PNC

1    Bank versus Hoffmann case.  Now as I said,

2    Judge, the previous citation was signed

3    appropriately according to the statute.  There

4    is no, there is no wiggle room in the statute.

5        I see Mr. Steele's motion for sanctions as

6    a thinly veiled sur reply to my reply, Judge.

7    There is no other way to describe it.  I don't

8    see, Mr. Steele raises in that motion for

9    sanctions that, oh, geez, it's a pleading; we

10   should just be able to sign it, Judge.

11       From the beginning this Court has known as

12   the case law is clear you cannot amend a

13   citation.  A citation is not a pleading.  It

14   doesn't come under the Illinois Code of Civil

15   Procedure so signing it afterwards is not

16   sufficient.

17       As to count two, Judge, it's rather

18   direct.  505 allows a judgment to accrue every

19   month but you got to go to Court and obtain a

20   judgment.  We know that because that's what the

21   State is trying to do.  They are trying to

22   preserve the arrearage and have put together

23   their calculations, their amount.  They have an

24   affidavit.  They are seeking a judgment and

25   they know and so should Petitioner's Counsel

1       know that they need a judgment because they

2       have been through this before, Judge, when they

3       alleged that a judgment was valid when it isn't

4       valid.

5           There's no mechanism under 505(d) to

6       automatically turn it into a judgment.  There

7       is nothing other than stating it is a judgment

8       for the purposes of I presume retroactivity.

9       Because I don't know if the Court is aware — I

10      am sure all Counsel standing up here is

11      aware — you cannot go back retro actively and

12      change an amount of child support at any time.

13          You can only change child support

14      prospectively after the motion to modify has

15      been filed, Your Honor.

16          I will now turn to count three which,

17      Judge, is the count that alleges that there is

18      no authority under 2-1402 of 735 ILCS 5/2-1402,

19      to order the surrender of the insurance

20      policies.  These are Third-Party contracts; a

21      contract between my client Raymond Ervin and

22      Monarch Life, Penn Mutual and Lincoln

23      Financial.  There is no provision under 1402

24      that allows the Court to reach that asset.

25          The actions by the insurance company is to

1     turnover the funds without a signed document, a

2     signed Third Party citation without a specific

3     judgment and then turning it over just boggles

4     my mind, Judge.

5          But in any event, I have cited the Itasca

6     Bank versus Thorlief Larsen and Son, 352 Il App

7     Third 262, a 2004 case to the Court.

8          Now the Court goes through quite an

9     exercise for lack of a better term, Judge,

10    quite an explanation as to the attempts in that

11    case to have a judgment debtor turnover his

12    Medina Country Club membership for a rather

13    large judgment.  In that case they tried to

14    have him turnover the membership.  The trial

15    Court refused.

16         They tried to have the trial Court order

17    the sale of the club membership.  The trial

18    Court refused.  And the trial Court refused to

19    order the resignation of the membership by the

20    individual to satisfy the debt also.  And it

21    was all upheld on appeal.

22         In this case, Judge, which I presume the

23    other party is contending similarly that

24    because it's not exempt or would be argued not

25    exempt under the exemption statute that somehow

1    Section 2-1401 must provide a mechanism for the

2    Court to receive something that may not be

3    exempt under the Illinois Statutes.  And as the

4    Court stated in the Itasca Bank case, while the

5    motion of perfect interrelationship between the

6    exemption provisions in Section 2-1402 is

7    attractive they find nothing in Section 2-1402

8    that requires it.

9        Judge, the Court goes on to state that in

10   that case the Plaintiff does not point to any

11   provision in the section that explicitly

12   authorizes an order requiring the resignation

13   of the membership.  They didn't find one.

14       The Court goes on to state that under

15   Section 2-1402 and the argument that that

16   statute should be liberally construed to give

17   Courts broad powers to compel application of

18   discovered assets to the satisfaction that

19   judgments; the Court responds with we must find

20   that any power needed to reach a non exempt

21   asset is implicit in the section.  The Court

22   rejects that.

23       The Court says, such an interpretation

24   comports neither with the rules of statutory

25   construction nor historical interpretation of

1    provisions.  Rules regarding strict or liberal

2    constructions are meant to decide in whose

3    favor a Court should resolve uncertainties not

4    a means to restrict or expand the statute

5    beyond what it clearly says.

6        It goes on to state, that a Court over

7    reaches if it goes beyond construing the

8    statute as it is written under the guise of

9    construction reads a new provision in to it to

10   remedy omissions the Court may perceive.

11       Now the Court in that case cites two cases

12   In Re the Marriage of Pick which is 167 Il App

13   Third 294, a 1988 case.  It also cites a case

14   entitled Kennedy.  And I am trying to look for

15   that cite, Judge.  Kennedy versus Four Brothers

16   Labor Service, Inc. 79 Il App Third 361, a 1966

17   case.

18       In approving grabbing or obtaining money

19   from a corporate officer who sold corporate

20   assets to avoid a judgment the Court said you

21   could do that because obviously the proceeds

22   were part of those assets.  But the Court also

23   contrasted the Pick matter which was a

24   dissolution of marriage, Judge, because in that

25   case the Court ordered that the stock I believe

1    it was, Judge, be placed in the hands of a

2    sequester and sold in a private sale and not

3    pursuant to the statutes requirement that all

4    of it be delivered to the sheriff and be sold

5    that way.  The Court reversed and said, no, you

6    cannot do that.

7        The Second District went on to cite a case

8    called Business Service Bureau out of the

9    Fourth District, Judge, called Business Service

10   Bureau, Inc. versus Martin, 306 Il App Third

11   907, a 1999 case.  Where it states that the

12   Fourth District panel agreed with the creditor

13   that it should construe liberally the language

14   of the provisions creating supplementary

15   proceedings.  It disagreed that the failure to

16   allow orders in that case to have somebody

17   search or employment would frustrate Section

18   2-1402 scheme for assisting creditors and

19   satisfying their judgments and that such orders

20   were essential to satisfy the statute's

21   purpose.

22       What is most interesting to me and I think

23   to the Court is the last full paragraph where

24   it talks about the Court's conclusion is

25   supported by the resolution of a most similar

1          case they have located in any jurisdiction

2          which is SafeCo Insurance Company of America

3          versus Skeen, S-K-E-E-N, 47 Washington

4          Appellate 196, a 1987 case.  In that case they

5          sought, the judgment creditor sought to have

6          the judgment debtor sell, who was a Boeing

7          executive, sell his stock appreciation rights

8          to satify a judgment, Your Honor.

9                  And the Court approved of the statement

10         that it held that the Washington Execution Law

11         despite providing for commanding enforcement of

12         obedience to any special order of the Court did

13         not give the trial Court authority to direct

14         the management of the judgment debtor's assets

15         or contract rights for the benefit of the

16         judgment creditor.

17                 And that's the point I am putting forth,

18         Judge.  The Court cited approvingly that a

19         trial Court can not affect contract rights for

20         the benefit of a judgment creditor because the

21         Court says we reached the same conclusion under

22         Section 2-1402.

23                 Now, Judge, that's important because I

24         cited the Gonzalez case to the Court.  And I am

25         not going to go in to that case.  That is a

1      2002 case.  333 Il App Third 680, a 2002 case
2      from the First District Fifth Division.
3          But I think both of those cases are very
4      instructive when you look at the new statute,
5      Your Honor, involving 1402.
6          And when you look at 1402 you can see if
7      you do the history, and I think everybody would
8      have, that the Illinois Legislature in Section
9      C(5) added language as to resign memberships
10     and exchanges and clubs or other entities in
11     the same manner and to the same extent as a
12     Court could do in any proceeding by a judgment
13     creditor to enforce payment of a judgment or
14     aid in enforcement of a judgment.
15         So the Illinois Legislature after the
16     decision in the Itasca versus Thorlief Larsen
17     case decided to go another path, Judge, and
18     allow the surrendering of a membership or a
19     seat on an exchange, Judge.
20         Similarly, when you look under paragraph,
21     subparagraph E which was the paragraph
22     previously that allowed it only to be sold by
23     the sheriff as in the Pick case which they
24     reversed and said, no, you cannot have it, take
25     that property and sell it through a sequester,

1      they added the language that the judgment

2      debtor's property is of such a nature that it

3      is not readily delivered up to the sheriff for

4      public sale or if another method of sale is

5      more appropriate to liquidate the property or

6      enhance its value at sale the Court may order

7      the sale of such property by the debtor,

8      Third-Party Respondent or selling agent other

9      than the sheriff upon such terms are just and

10     equitable.

11         So the Court reacted to both of those or

12     the Legislature reacted to both of those.  The

13     Legislature could have reacted to the Itasca

14     Bank versus Thorlief Larsen case by saying, oh,

15     yeah, you could have had contractual rights.

16     The Court in.

17         THE COURT:  Let me interrupt you.  Because

18     isn't your position kind of overly broad?

19         I mean if your position as I understand it

20     is that the county, excuse me, that the Court

21     can not override, rewrite, if you will

22     contractual rights, but as a practical matter

23     if you had a contractual relationship or

24     judgment debtor and judgment debtor has a

25     contractual relationship with someone else and

1    monies are owed to the judgment debtor by that

2    Third-Party the Court routinely would enter

3    orders that would impact the contractual rights

4    of those two parties to get the money to

5    satisfy the judgment.

6        MR. BOLDT:  But, Judge, that's a different

7    situation.  When you are postulating that there

8    is a contractual situation that has the

9    judgment debtor receiving funds pursuant to the

10    contract and I presume that's receiving funds

11    whether it's employment, whether it's 1099

12    consulting or whether it's for sale proceeds of

13    materials or whatever, that's regularly

14    happening.

15        THE COURT:  It's a contractual

16    relationship.

17        MR. BOLDT:  There is a contractual

18    relationship.  However, the statute allows for

19    that.  Under the Thorlief Larsen case, Itasca

20    Bank case the Court is clear in the Second

21    District it's an exclusive statute.  If it

22    doesn't give you the right to grab it you

23    can't.  Under B1 through six you can grab those

24    contractual rights for payment whether it's

25    employment, whether it's 1099, whether you are

```
 1          selling something to them.  But what you are

 2          doing here, Judge, my client doesn't have a

 3          regular consistent right to receive money from

 4          the insurance company.  He must surrender the

 5          policy under the terms and conditions of the

 6          policy.  And what the Court has done is

 7          effectively surrender that policy outside my

 8          client's rights and outside the insurance

 9          company's rights.

10              My client has an obligation to pay the

11          premiums if they are due and receive the

12          insurance coverage.  May he take a loan from

13          that?  Yeah, presuming the policy allows it.

14              But there is no specific payments due on a

15          regular basis like an annuity or like anything

16          else or like a retirement fund or a pension

17          that come to my client.  They are not coming

18          regularly.  That's not the way it is.  And

19          that's what the Court I believe is postulating

20          and that's what the statute allows.

21              What the Court has done is stepped in and

22          said I am terminating that contract.

23              MR. MIRABELLI:  Objection.  The Court did

24          not say that.

25              MR. BOLDT:  Well, that's what I said.
```

```
 1              THE COURT:  Objection is overruled.  I
 2      understand the argument.
 3              MR. BOLDT:  You know and the second part
 4      of that argument which I believe is the
 5      strongest part of the argument, Judge, is that
 6      these cases that I have cited to the Court.
 7              THE COURT:  Which I have read.
 8              MR. BOLDT:  Okay.  Indicate that if it's
 9      not permitted under 1402 the Court can not grab
10      it.  And that's what it says at the end of the
11      Itasca case versus Thorlief Larsen.
12              It cites approvingly the Washington case
13      that says that contract between Boeing and its
14      employee that gives him the right to exercise
15      the payment by turning in the stock for payment
16      the Court can not order him to do that.
17              That's a contract right between the Boeing
18      executive and the Boeing Company.  He is not
19      receiving regular money just like my client
20      isn't.
21              The Court said you can't do that; you are
22      altering the contract.  And the Court also says
23      in that case because it's the Medina Club
24      membership and that's why I put those three
25      things to the Court because the Itasca Bank in
```

1        that case tried to order the turnover to club

2        membership and the Court said, no, you have no

3        authority.  Now they do.  It says we want you

4        to order the sale of the club membership; no,

5        we have no authority.  Now you do.  We want you

6        to order him to resign or sell his membership;

7        no, we can't do that.  Now they can because the

8        statute has been changed.

9            And just like the Washington case, Judge,

10       that is an independent contract that until that

11       gentleman who's a Boeing executive exercises

12       his right he is not entitled to a dime.

13           Upon my client's death his beneficiaries

14       are entitled to a dime.  My client does not

15       regularly receive money from a whole life

16       policy.  It's not being paid.

17           And that's why I am saying the Court

18       effectively by allowing the turnover of funds

19       aggregated that contract between my client and

20       a Third-Party.  And what the Thorlief Larsen

21       case as I call it says is the Court in the

22       Second Appellate District citing approvingly

23       the Washington case which was that same

24       contract that says you can't do it.

25           And I think the logical portion of the

1    argument after that is that since the
2    Legislature I presume based on the Thorlief
3    Larsen case changed B1 through five to allow
4    the surrender of club memberships and seats on
5    exchanges and everything else that, yeah, we
6    are now going to reach these; we are now going
7    to reach these.
8          And like I said, Judge, I don't want to
9    keep repeating myself but at the end when
10   talking about the case to receive stock
11   appreciation rights that are non
12   transferable -- my client's life insurance
13   policy isn't transferable that we are made
14   aware of -- and Boeing pay him the difference
15   between the value on the date of the issue and
16   the value on the date of the exercise subject
17   to certain rules the Court says, no, you can't
18   do that.
19         The statute did not give the trial Court
20   authority to direct the management of a
21   judgment debtor's assets.  That's what you are
22   doing.  You are directing that my client's
23   assets which are his insurance policies be
24   surrendered and turned over, and/or contractual
25   rights for the benefit of the judgment

```
1       creditor.  You are affecting my client's
2       contractual rights with the insurance company.
3           That's what you are doing.  You are
4       terminating his life insurance outside the
5       terms and conditions agreed to by the two
6       parties who signed it; the insurance company
7       and my client.  Boeing and the Boeing executive
8       signed that agreement.
9           Further, Judge, and I will get to, this is
10      where I am going to get to the Schak versus
11      Blom case.
12          THE COURT:  Although the life insurance
13      policy has cash surrender value.
14          MR. BOLDT:  But my client has to surrender
15      it.  The Court has stepped in and surrendered
16      it; not my client.  He has specific obligations
17      to surrender it.  That's what the Court in
18      Washington was asked to do; determine his
19      appreciation rights now compared to the date of
20      issue and give us the money.
21          And this Appellate Court said we are not
22      going to do that with their assets or affect
23      their contractual rights.  The Court was clear.
24          In my estimation, I am sorry I don't want
25      to get overly passionate about the argument.
```

1         But in the Schak versus Blom case which was

2     decided in 2002 a couple years before the

3     Thorlief Larsen case, Judge.  I don't know.

4         It looks like on the second or third page

5     of the copy I gave to you there was an indented

6     quote near the top of the page that the Court

7     has the ability under C3 to compel any person

8     cited other than the judgment debtor to deliver

9     up any assets so discovered to be applied in

10     satisfaction of judgment in whole or in part

11     when those assets are held under circumstances

12     that in an action by the judgment debtor he or

13     she could recover them in specie — specie is a

14     fancy word for coin or money — or obtain a

15     judgment for the proceeds or value thereof for

16     conversion or embezzlement.

17         And Schak versus Blom is cited as 334 Il

18     App Third 129, 777 Northeastern Second 635,

19     2002.  That is an Appellate Court First

20     District Third Division case.

21         Judge, my client can not ask the insurance

22     company to turnover the proceeds of that policy

23     as if for conversion or embezzlement.

24         THE COURT:  He could cash it in any time

25     he wanted to.

1        MR. BOLDT:  He could cash it in any time

2    he wanted to but again he would have to follow

3    the surrender provisions.

4        This statute talks about a Third-Party.

5    And my client or Sarina Ervin, the Petitioner's

6    client or Petitioner's Counsel client could

7    stand in my client's shoes and maintain an

8    action for conversion or embezzlement.

9        Conversion is theft.  Embezzlement,

10   larceny, whatever you want to call it.  But my

11   client can't maintain an action against the

12   insurance policy for conversion or

13   embezzlement.  He has to, they would say to

14   him, you want your money follow the terms of

15   the policy, submit your documentation and

16   surrender.

17       It's not as if somebody took the policy

18   from him or took the money from him or

19   embezzled it from his business.  None of that

20   occurred.

21       We have a contract where the insurance

22   company says, you pay the premiums or if they

23   are fully paid I will insure your life.  And

24   under certain conditions you can obtain a loan

25   for part of that value.

1          It doesn't say that we are going to pay
2     you a monthly amount.  It doesn't.  It is not
3     an annuity.  It's not something with regular
4     amounts being paid.  As the Court says, my
5     client can surrender it.
6          THE COURT:  All right.  So how is that
7     different than I go out and purchase a $10,000
8     certificate of deposit and judgment creditor
9     wants to get to that certificate of deposit.
10    It's a contract I have.  It's got to be there
11    for six months but at any time I can cash it
12    in.  How is that different than the life
13    insurance policy?
14         MR. BOLDT:  It's different than if in that
15    situation as in my situation the bank can not
16    refuse to give you the money.  It can't.  If
17    you cash it in early they are going to take a
18    penalty.  My client can't walk up to the
19    insurance company and say, give me the money,
20    say you have to surrender it.  Here is the
21    procedure.  It's set forth in the contract.
22    You need to surrender the policy under the
23    terms and conditions of the policy.
24         Putting the money in a CD, Judge, just
25    changes its form.  Is the easiest way for me to

1    describe it.  The money is still there.  It's
2    there in specie meaning dollars and cents.
3          As I said the most similar description is
4    contained in the Thorlief Larsen case where
5    Boeing and that executive have a contractual
6    relationship.  We are issuing it to you at this
7    price; when you choose to redeem it cash it in
8    the difference we will give to you.
9          That's different.  He could hold on to it
10   for a year; he could hold on to it for ten
11   years.  There is no obligation.  Same with my
12   client and the insurance policy.  He could cash
13   it in this year; he could never cash it in and
14   die and receive the benefits.
15         So standing there and saying I want you
16   because that's what the judgment creditor did
17   and the Court said, no, we support Washington's
18   ruling I want you to order that person because
19   I know there's money there to cash in that —
20   not cash in that policy — to invoke the terms
21   of that contract give you money so I can get to
22   your assets the Court said, no, there's no
23   power to do that.
24         And as I told the Court on more than one
25   occasion the statute has been altered since

```
 1          that case to permit the cashing in of club
 2          memberships and seats on exchanges and other
 3          things.  The Legislature was mindful of that.
 4              The Legislature could have said you have
 5          the power to cash in a whole life or variable
 6          life or any sort of life insurance policy that
 7          has cash value.  Real simple.  Amend the
 8          statute.
 9              THE COURT:  Well, the judgment exemptions
10          statute does exempt certain life insurance
11          policies from judgment creditors.
12              But the fact that it exempts certain, only
13          certain policies but not others would seem to
14          support the theory that in other instances
15          where that exemption doesn't apply the Court
16          could probably order the surrender of a cash
17          value for life insurance policy.
18              MR. BOLDT:  That flies right in the face
19          of Thorlief Larsen because as I quoted to the
20          Court there is no requirement.
21              MR. MIRABELLI:  I have read it six times.
22          He has been talking for the last half hour.
23              THE COURT:  You will have your chance.
24              MR. MIRABELLI:  Okay.  I don't know what
25          he is talking; what section?
```

```
1                    MR. BOLDT:  Judge.
2                    THE COURT:  So I have the case in front of
3         me, too.
4                    MR. BOLDT:  Okay.  Thorlief Larsen, 265.
5         Note two.
6                    THE COURT:  No.  I understand your point
7         that the holding of the case is that it's not
8         to be liberally construed beyond the terms that
9         are set forth in 2-1402.
10                   MR. BOLDT:  No, Judge.  The point on the
11        bottom of that page halfway through the
12        paragraph was your statement to me about the
13        insurance policy, some exempt, some not.
14                   The Court says while the notion of a
15        perfect interrelationship between the exemption
16        provisions and Section 2-1402 is attractive we
17        find nothing in Section 2-1402 that requires
18        it.  Meaning that if you want to compare
19        because that's the argument they put forward
20        here is that the country club membership is not
21        exempt.
22                   Therefore, the Court in order to
23        effectuate 1402 must determine that the Court
24        can in fact reach that club membership and cash
25        it in and give us the money.  And the Court
```

1     after that went through on page 266 the lengthy

2     discussion all the way through talking about

3     the Court doesn't have the power to expand or

4     restrict a statute and it goes on to state a

5     Court over reaches if it goes beyond construing

6     the statute as it is written under the guise of

7     construction, reads new provisions in to it to

8     remedy omissions the Court may perceive.

9         And this was the argument exactly of the

10     bank.  It's not exempt under the exemption

11     statute, therefore, 1402 must be read liberally

12     and construed liberally that I can grab the

13     money, I being the bank.  And the Appellate

14     Court said here absolutely not.  We read that

15     1402 as an exclusive statute meaning that if

16     it's not in here you don't get to grab it.

17         And that argument was made and turned down

18     by the Appellate Court.  And that lead to the

19     end of it where it says, that the Court doesn't

20     have the power in the State of Illinois.  It

21     says we reach the same conclusion under 2-1401

22     that the trial Court does not have authority to

23     direct the management of a judgment debtor's

24     assets or to contract rights for the benefit of

25     of a judgment creditor.

1          My position is quite simple.  You are

2     directing the management of my client's assets,

3     those life insurance policy and his contractual

4     rights by entering and if the Court decides to

5     uphold the turnover order.  And since this

6     Court the Appellate Court Second District says

7     that the Court over reaches if it does so.

8          And the Schak versus Blom case which

9     clearly indicates that a Court must if it finds

10    out it did not have the power to enter a

11    particular order must find it void.  It's void

12    from its inception.  It has no legal effect.

13    It can be directly or colaterally attacked at

14    any time.

15         And it even goes on to state, Judge, in

16    the Schak verses Blom case Courts have a duty

17    to vacate and expunge void Court orders from

18    the Court records and thus may sua sponte,

19    S-U-A S-P-O-N-T-E, declare an order void.

20         The Appellate Court says you over reach.

21    That's their determination when you affect a

22    contractual rights or manage my client's

23    assets.  And that's my position as to count

24    three, Judge.  And that's exactly what this

25    Court is doing.  And that this Court under 1402

```
 1        doesn't have the power to do it, and the
 2        argument that the exemption statute doesn't
 3        exempt this particular policy and, therefore,
 4        it must be enforced under 1402 has been
 5        rejected by the Appellate Court of the Second
 6        District since 2004.
 7             THE COURT:  Thank you.  Mr. Mirabelli.
 8             MR. MIRABELLI:  Without conceding the
 9        first point which I think is dispositive I
10        listened to Counsel carefully repeat the same
11        thing over and over and perhaps the Court
12        didn't get it the first five times.
13             And it dawned on me as I was listening to
14        him he put so much emphasis on the Thorlief
15        Larsen case only to tell us all that the
16        statute has overruled it.  So the case has no
17        force and effect.  Instead he wants to argue by
18        example.
19             And as the Court was talking, with all due
20        respect to the Court, I was thinking along the
21        same lines although I didn't think of a CD.
22             If I put, quote, $10,000 in a bank I have
23        a contractual relationship with the bank.  They
24        give the money to me.  I'm the signatory.  You
25        don't give that money to anybody else unless
```

1    you're a judgment debtor.  And here I have a
2    judgment.
3         Now Counsel argues briefly incredibly that
4    I don't have a judgment.  Yes.  I have a
5    judgment for over $700,000.  That horse has
6    left the barn.  We have a judgment.  And so we
7    went after the cash.  We have a right to go
8    find cash and discover assets.  And the Court
9    has a right to say turnover the assets.
10        Counsel has talked and I admit I am
11   absolutely clueless.  Perhaps you know, perhaps
12   you, Your Honor, have read the contract with
13   the three different insurance companies.  I
14   have not.  Nobody has sent those to me.  I
15   don't know what those contracts say.
16        What Counsel is saying here, in the nicest
17   way possible because he is so eloquent, how
18   dare you affect my client's contractual rights.
19   Yet he never put before the Court what are
20   those contractual rights.  All you said was you
21   are holding the cash in an account.  It's this
22   man's cash.  It doesn't belong to anybody else.
23        We have a judgment for $700,000.  We have
24   a right to collect against this man's cash.
25   You didn't order him to terminate the policy.

1    You didn't order him to surrender anything.

2    You didn't order him to resign from his

3    membership with the three different life

4    insurance companies.  You didn't order that.

5        You said are you holding cash.  They

6    answered yes; this is the amounts of cash we

7    are holding.  You said they are entitled to a

8    turnover.  We are entitled to a turnover.

9        I don't care how long my esteemed opposing

10   Counsel talks.  He cannot change the simple

11   fact there is a $700,000 judgment.  We have a

12   right to enforce it.  He has raised every

13   defense.

14       In this case it's like millions for

15   defense, not a penny for child support.  And he

16   wants to convince you to reverse yourself.  And

17   again I think it's all time barred, and I think

18   half of his arguments have been waived or you

19   have heard them at least four times.  But we

20   didn't do anything wrong, Judge.  With all due

21   respect, you didn't do anything wrong.

22       The cash is in the account.  We hit them

23   with the citation.  They came in.  Only one of

24   them made some argument.  I think it was the

25   Lincoln Company made some argument about what

1    was the timing of the amount and how much was

2    to be turned over because there is a set dollar

3    amount.  They said what if the policy has a

4    little bit less.  So we said whatever you have

5    you will turn it over at that time.  And you

6    ordered the turnover.  You have heard most of

7    these arguments before.  The case law hasn't

8    changed since the last time we were here.  The

9    statute hasn't changed.

10        He keeps citing to the Washington case.

11    And I am having a hard time trying to keep up

12    with him because I think it was somewhat a

13    dicta.  But you didn't enter a void order.  You

14    didn't over reach.  Wherever there is money and

15    you have a judgment you can grab on to that

16    money unless it's exempt.

17        Counsel wants you to equate the order of

18    turnover with an order to modify his

19    contractual rights, but you didn't do that.

20        Now it would be so much more helpful if

21    Counsel supported his arguments with something

22    other than argument.  If he attached a copy of

23    the policy, if he said, look, if a person has

24    to turnover the money then we have to cancel

25    the policy.  Well, let's assume hypothetically

1       that's true.  If I found 130,000 in each bank
2       account and he had to turnover the 130 guess
3       what, he wouldn't have that $130,000 anymore.
4       It's gone.  That unfortunately is the intended
5       consequence of when you don't pay a debtor or
6       you don't pay your creditor and you are a
7       debtor then you have to lose the benefit of
8       what you have.
9            So when he turns over the money
10      hypothetically he then loses the policy.
11      That's not our fault.  That's not your fault.
12      That makes him a victim of his own actions and
13      not paying.  Just the same as if he did, he
14      said, Judge, if you make me turnover this
15      130,000 I will not have 130,000 in the bank any
16      more.  Well, yeah.  That's precisely the point
17      because you owe the money to somebody else.
18           So if you order the company who's holding
19      the assets who readily said, Judge, we are
20      complying, we are turning over the money what
21      happens after they turnover the money I don't
22      think is of consequence to this Court.
23           To the extent Counsel keep pounding the
24      issue and pounding the issue about how you
25      affect his contractual right did you tell the

1      man don't pay your premiums any more; did you
2      tell the insurance company I'm ordering you not
3      to make another premium payment.

4          Mr. Lincoln Financial or Lincoln Insurance
5      Company I am ordering you to terminate.  You
6      said nothing about any contractual rights.  All
7      you said was are you holding money; yes.  Here
8      is our citation to answer; we are holding this
9      money.  You said it's cash.  They came in on
10     this whole issue of exemption.

11         Mr. Steele found a case on point which we
12     argued last time you found the money wasn't
13     exempt.  Therefore, you ordered to be turned
14     over.  And that's as far as I am going on his
15     argument.  The Thorlief Larsen case is
16     inconsequential.

17         Counsel argued we had no judgment.  I
18     think that's manifestly wrong.  But the first
19     issue is his motion even timely.  And Counsel
20     said it's timely but we cited you a case called
21     the Levacari (phonetic) case that a citation is
22     final and appealable the day it's enforceable.

23         Forget how many times he has come in on
24     different motions.  The fact of the matter is
25     on March 15th you entered three turnover

1    orders.  Those three turnover orders are final

2    and appealable.  What he did was he came in two

3    days later and said I want to have a stay

4    because I had this motion to reconsider that he

5    had not served upon us.

6    You said okay, during the pendency of the

7    motion to reconsider I am going to say this.

8    You then denied the motion for reconsideration

9    on — is this the correct date, John?

10    MR. STEELE:  April 12th.

11    MR. MIRABELLI:  April 12th.  That motion

12    was denied.  So now he is coming in on a

13    1203(b) motion to do what?  He wants you to

14    reconsider the initial turnover from March.

15    The Court well knows, and I don't have a

16    case to cite to, but the Court has always

17    impressed me with your knowledge of the law and

18    the statute, you cannot have successive post

19    trial motions.  You can't keep extending the

20    time for appeal by filing post trial motions.

21    You can't have successive 1203(b) motions.

22    One 1203(b) motion does not beget another 1203

23    (b) motion.  This 1203(b) motion that is

24    pending before was filed 53 days after the

25    order for the turnover of the funds.  And he is

1       attacking the order for the turnover saying, A,

2       and I will get to the signature last.  I think

3       that's the least of it.  I am attacking

4       something that happened 53 days earlier and the

5       reason I can do that is because there was

6       another motion to reconsider and then you had a

7       stay order.

8            And for whatever reasons he eloquently

9       states to you and I don't mean to make light of

10      these arguments.  I know Counsel is arguing to

11      the best of his ability on behalf of his

12      client.

13           But it's frustrating to be on this side of

14      the case.  And it's almost and I don't want to

15      say form over substance but it's almost as if

16      we have kicked the dog out of the room.

17           The man hasn't paid child support in 17 or

18      18 years and he wants us to gloss over that.

19      And I don't think that those facts in and of

20      itself should change the way the Court rules as

21      a matter of law.

22           But the overriding public policy of this

23      State which has come in time and time again on

24      all the case law is that people have to pay

25      child support, children have to be supported.

1    He wants to throw that out and say, look, I

2    have got more technicalities than Carter's got

3    pills.  But he is late.

4        If he wanted the motion to reconsider the

5    order of the turnover he should have filed it

6    within 30 days.  It was final and appealable on

7    March 15th when entered.  His motion to say

8    that you granted three days later during those

9    two or three days this is an order we can

10   execute upon; we can go forward on.

11       And in real life even though technically

12   it's final and appealable and we can go out

13   there and grab the checks nobody going to, by

14   the time we mail it to the insurance companies

15   and try to get it back he got to the courthouse

16   first and you stayed it, saying let me deal

17   with the motion to reconsider.  You don't get

18   30 days after the denial of the motion to

19   reconsider to go back and argue the initial

20   motion.

21       You have 30 days perhaps to file an appeal

22   of the denial of the motion reconsider and the

23   underlying order.  But you don't get to go back

24   and now raise the defenses that you have

25   already raised and have your third or fourth

1      bite at the apple.  Finally, and I think that's

2      simple math.  I think he is 53 days way too

3      late.  So all the other things that he wants

4      to, you know, misdirect the Court's attention

5      to I think are wrong.

6           And finally as to the signing I keep

7      looking at the form.  And I know Mr. Steele, in

8      fact for the record I am withdrawing that

9      motion for sanctions.  I appreciate what Mr.

10     Steele is doing.  He is very frustrated.  He is

11     a young lawyer.  I appreciate his enthusiasm

12     but I am going to withdraw the motion for

13     sanctions because I believe that Mr. Boldt is

14     arguing in good faith although I respectfully

15     disagree with him.

16          If Mr. Steele is correct Mr. Boldt asked

17     the clerk in your courtroom during the last

18     hearing who signed these.  And the clerk said

19     the clerk does.  There is no signature line.

20     It says prepared by attorney's name.  Beermann

21     Mirabelli.

22          If typing our name could in fact be deemed

23     in my opinion the equivalent of our signature.

24     Once we put our name on it whether it's in

25     handwriting or we type it I think we are pretty

1      much vouching for this.  But it's to be signed

2      by the clerk of the Court.  And it's signed by

3      the clerk of the Court.

4          So I respectfully disagree with Counsel

5      that this defense is available.  But as Mr.

6      Steele noted under Rule 137 any pleading or

7      other papers which shall be signed or it shall

8      be necessary for a lawyer to sign if that

9      omission is brought to their attention they

10     have a reasonable period of time in which to

11     sign it.  But I don't think we have to go back

12     in time and sign these to validate them.  I

13     think they were valid.

14         And we had so many arguments, Your Honor

15     and I and opposing Counsel over did we have the

16     right judgment, where did these numbers come

17     from, was it the right date.  As Your Honor

18     noted in an argument I didn't even make you

19     said it's not like these dates came from

20     nowhere.  The dates were actually all within

21     these pleadings.  They were attached.  These

22     were valid citations.

23         He has already tried that.  So to now come

24     back and try and argue now the signature is

25     wrong.  First it was the numbers.  Now I think

1   he has waived that.  If nothing else that

2   argument was one he could have made; he didn't

3   make it.  You found the citations to be valid.

4   You issued the turnover order.

5        For all those reasons, one, it's not

6   timely; two, we don't have to have to the

7   signature other than the clerk's and; three,

8   you didn't order this man to do anything to

9   affect his contract rights.

10       You ordered the company to turnover the

11  funds which you have every right to do.  There

12  is no order for this man to sign a document to

13  turnover the funds or sign a document to

14  release the funds.  You didn't order him to

15  cancel the policies.  You didn't order the

16  insurance company to cancel.  You said,

17  gentlemen, you are holding money, there is a

18  valid judgment, turn it over.  They did that.

19       And I think we are finally, I hope we are

20  finally at the end of this case at least in the

21  trial Court level.

22       I have asked the Court to for any one or

23  all of the reasons I have suggested to deny the

24  most recent motion to reconsider, allow us to

25  disperse the funds unless of course, Counsel

```
1        files a notice of appeal and posts a bond.  I
2        suppose that will be a whole other issue.
3              THE COURT:  Thank you.  Mr. Boldt, you do
4        get the last word.  It is your motion.
5              MR. BOLDT:  Thank you, Your Honor.
6              Judge, first of all I will address the
7        last matter, signature.  I didn't know
8        attorneys took legal advice from clerks of the
9        Court.  Matter of fact, Judge, and I don't mean
10       to be flippant to Counsel.  He has been nothing
11       but kind to.
12             Me.  But to make the argument in the
13       courtroom on the record that somehow a clerk
14       knows more about a form and who's to sign what
15       and what the statute requires seems to be
16       insulting to me, Judge, and disrespectful to
17       the Court.
18             As I pointed out to the Court in my
19       Exhibit C to my reply Kyle Cooper who's of the
20       same firm that's arguing in front of you today
21       knew that on the witness line after the
22       certification statement under 735 ILCS 5/109 he
23       had to sign the document.
24             THE COURT:  So this is a motion to
25       reconsider.  Why wasn't that issue raised
```

1      sooner?

2           MR. BOLDT:  As to the?

3           THE COURT:  Not a new fact.

4           MR. BOLDT:  Judge, because until I checked

5      the Court file and found absolutely no

6      citations original in it and only had mine did

7      I make the argument to presume that they didn't

8      sign those citations.

9           And as Schak versus Blom says you can

10     attack if the Court determines that is

11     necessary and I think the Court has to under

12     the statute the shall language then the Court

13     can take that into account at any time it can

14     be attacked in any manner collaterally or

15     otherwise under the Schak versus Blom case.

16     Number one.

17          Number two, Judge, 30 days.  You stayed

18     the judgment for 30 days.  PNC says when they

19     are entitled to get the money that's when it is

20     a final order.  They didn't get the money until

21     after April 12th.  They can say whatever they

22     want.  But the PNC case is a 2015 case.

23          And it says until you can put your hands

24     on the money -- excuse me, I shouldn't be

25     pointing -- until you can put your hands on the

1       money it's not a final turnover order.  They

2       can stomp their feet.  They can say whatever

3       they want.  It's not a final turnover order.

4           I am not going to beat the horse about the

5       judgment.  There is no valid Court order

6       judgment as required by the statute, Judge.

7           We keep arguing about contracts and they

8       keep and you keep bringing up CD's and bank

9       accounts and I signed something with the bank.

10      But, Judge, it goes back to the Schak versus

11      Blom case.  If you went to the bank and said

12      give me the money from my CD or in my savings

13      account or in any account, in my money market

14      and they said no you file an action in Court

15      for conversion.  And according to the Schak

16      versus Blom case that's the type of asset that

17      can be grabbed.

18          THE COURT:  But if I have a life insurance

19      policy cash surrender value and I go to them as

20      the policy holder and I say give me my money I

21      now want to cash out they refuse to.

22          MR. BOLDT:  They have every right to

23      refuse to unless you submit the appropriate

24      documentation to request for the surrender,

25      Judge.  You don't have a right to the money

1       immediately.

2               THE COURT:  Well, how is that different

3       than the bank would say, well, you need to

4       submit the form 5(d); it needs to be notarized

5       and witnesses.

6               MR. BOLDT:  Because, Judge, I am buying

7       life insurance.  With the bank you are buying

8       an investment.  You are buying the account.

9       You are buying the interest rate to return on

10      it.  I am buying life insurance.

11              As a benefit of that life insurance I get

12      to take a loan out against it.  I don't get,

13      that's what I get.  I get to take out a loan

14      against the money or I get to terminate the

15      policy.  And that's just like I said, the Court

16      knowingly and approved in the Washington case

17      because that's the same thing.

18              They wanted, they being the judgment

19      creditor to him to cash in those stocks.  And

20      the Court said you can't, you can't manage the

21      judgment creditor's assets.  You can't order

22      him to go out and get a job because the statute

23      doesn't say you can do that.

24              And that was the exact argument

25      Mr. Mirabelli made.  He said because it's not

1       exempt under the exemption statute this Court

2       under 1402 has the power to order it to be

3       turned over.  That's exactly what the Itasca

4       versus Thorlief Larsen case says you cannot do.

5           It says they are not in concert and they

6       are not perfect.  Those arguments were made in

7       the Itasca Bank versus Thorlief Larsen.  And to

8       read the 1402 in any other way than saying we

9       can reach all non exempt assets was disavowed

10      by the Court.

11          And Mr. Mirabelli misses my argument.  He

12      said, well, Thorlief Larsen doesn't matter

13      anymore because that's been overruled or

14      changed by the statute.  That's not what

15      happened, Judge.  What the Legislature did and

16      what I thought I argued eloquently, both

17      written and orally, was that the Legislature

18      pulled out of the Thorlief Larsen case, geez,

19      we are going to let you grab a seat on the

20      exchange, a club membership.

21          The Legislature could have pulled out of

22      the Thorlief Larsen case because again it was

23      cited approvingly that you can order somebody

24      to get a job.  Oh.  Let's add to that section

25      of 1402 that the Court can make somebody go out

1     and keep a job long.  We didn't do that.

2           And the Court when saying the most similar

3     case is this case out of Washington which is a

4     contract between Boeing and its executive that

5     requires somebody to take an affirmative act to

6     terminate that contract not for a bank deposit

7     or anything like that.  You look at the

8     statute.  You can reach it.

9           We approvingly cite that case and say the

10    Court can not manage the debtor's assets nor

11    affect that contractual right.  The Court or

12    the Legislature, excuse me, could have come out

13    and say, well, we don't like what they said in

14    Thorlief Larsen.

15          You can order the grabbing of anything

16    that is not exempt.  They could have changed

17    the statute right then and there and say if

18    it's not under the exemption statute the Court

19    has the power under 1402 to grab it.

20          MR. MIRABELLI:  He is not rebutting.  He

21    is re arguing it.

22          MR. BOLDT:  No.  That's exactly what.

23          THE COURT:  Okay.  I do expect the reply

24    to be brief.

25          MR. BOLDT:  I just said that, Judge.

1    That's exactly what Counsel argued.  And last
2    but not least, Judge, and I don't know how to
3    say it but I will just said it out.

4        I understand the public policy of this
5    thing.  I understand the need for children to
6    be supported.  But Counsel before and this time
7    keeps saying, well, geez, the public policy
8    says we need child support, give us the money;
9    ignore the fact we didn't sign the citation;
10   ignore the fact that we didn't get a judgment;
11   ignore the fact that the Itasca versus Thorlief
12   Larsen case says that if it's not included in
13   1402 you can't grab it; ignore the fact that
14   the Thorlief Larsen case says if it's not
15   exempt you still can't grab it.  Ignore all of
16   that because we need money for child support.
17   Don't worry about what the statute says, just
18   make sure we get our child support, Judge.

19       And I find that to be a very weak
20   argument.  I just do, Judge.  And the Schak
21   versus Blom case has powerful language that I
22   have never seen anywhere else about a Court
23   finding whether it's timely or not, whether you
24   can attack a judgment collaterally if the Court
25   finds as the Court did in that case that the

1     turnover order never should have been entered;
2     you can attack it at any time collaterally.
3            And the Court has an obligation on its own
4     to eliminate that void order without the
5     signature, without a Court order judgment and
6     without 1402 permitting this.  It doesn't seem
7     to permit it.  Legislature could have changed
8     it.
9            I respectfully request that the motion to
10    vacate be granted, Judge.
11           THE COURT:  Thank you.  All right.
12           I have considered your arguments.  I have
13    also read the brief.  I have read the cases you
14    cited.  I have tried to do some of my own
15    research.  There are some interesting issues in
16    this case in my opinion.
17           But the first question I think that I have
18    to answer is whether I think the motion to
19    reconsider was timely or not.
20           The judgment debtor's Counsel has cited
21    PNC Bank.  And as he noted in that case it said
22    there are few cases discussing which orders in
23    supplemental proceedings are final orders.
24           But then it goes on in that case to hold
25    that the order entered in the supplemental

1      proceeding was not a final order because it

2      does not put the Plaintiff in a position to

3      collect the judgment amounts or direct

4      Third-Parties to turnover funds.  So in that

5      case there had been no turnover order.

6           I don't know how to read that case other

7      than to suggest that the holding of that case

8      would have been different had there been a

9      turnover order entered such as in this case.

10     So in this case on March 15th the Court

11     did enter three turnover orders.  Two days

12     later those were stayed based on the pendency

13     of a motion to reconsider filed with respect to

14     some prior citations.

15     So ultimately the motion to reconsider was

16     filed more than 30 days after.  And again I

17     understand it's not entirely clear but based on

18     the Second District case I am left to conclude

19     that the motion to vacate was filed more than

20     30 days after the turnover order became final

21     and appealable.  Yes.  It was stayed for

22     various reasons but the turn over order had

23     been entered at that point in time.

24     I also note, so I do think that's

25     dispositive of the motion to reconsider.  Just

```
1           commenting further I do think that it's
2           appropriate for me to note that the issue
3           concerning the signature or non signature by an
4           attorney of the citations form that is being
5           used is not the most clear form.  I would say
6           that.  There was information as to who issued
7           it, at least what firm issued it but that issue
8           was not a new fact.
9               The purpose of a motion to reconsider is
10          to bring to the Court's attention facts that
11          weren't available, new facts or errors of law.
12          To me that was an issue that could have and
13          should have been raised initially in response
14          to the motion for the turnover order.
15              The last thing I will comment is the
16          argument, I think again it's an interesting
17          argument that the Court didn't have the
18          authority to force the life insurance companies
19          to turnover the cash value of the policies that
20          they held.  I do think that this falls; that
21          this sort of order falls under Section 2-1402
22          sub part three in that it's an asset held by a
23          Third-Party that the judgment debtor could
24          recover for conversion or embezzlement.
25              That is if the policy holder decided for
```

1    whatever reason he wanted to cash in and
2    collect the cash value of the policy he could
3    have done that.  And if the life insurance
4    company refused to tender it he would have had
5    a cause of action for conversion or
6    embezzlement against the life insurance
7    companies.
8         So I do think it falls squarely within
9    2-1402(c)(3) as the type of asset that can be
10   attached and collected upon in a post judgment
11   proceeding.
12        I also think it's noteworthy again under
13   Section 12-1001 there are specific exemptions
14   for specific types of life insurance policies
15   and the cash, net cash surrender value of
16   certain life insurance policies which again
17   presume that unless it falls within that
18   exemption net cash values of life insurance
19   policies are not exempt and can be collected
20   upon in the post judgment proceedings.
21        So for those reasons I am denying the
22   motion to reconsider.
23        So I need to go back and look at what the
24   last order said with respect to the monies that
25   are being held.

1          MR. MIRABELLI:  Your Honor, do you have a

2     copy?

3          THE COURT:  I do.  All right.  The last

4     order provided that the funds that were turned

5     over by.

6          MR. STEELE:  Lincoln, Monarch and Penn.

7          THE COURT:  Lincoln Financial Group,

8     Monarch Life Insurance Company and Penn Mutual

9     Life Insurance Company that are currently being

10     held by the Beermann Pritikin Law Firm.

11          Since the motion to reconsider has been

12     denied since the Illinois Department of Health

13     and Family Services is not seeking to collect

14     any of those monies at this point it would be

15     appropriate for those monies to be released

16     from the escrow that are being held that the

17     law firm is holding them in and released to the

18     judgment creditor.

19          Is there anything else that we need to

20     address this afternoon?

21          MR. MIRABELLI:  I would only add to that

22     the Court only makes one judgment creditor

23     and/or her attorneys.

24          THE COURT:  Correct.  Sure.

25          MR. MIRABELLI:  And perhaps now would be a

1     time to get if there is no just reason to delay

2     the enforcement of appeal of this order so we

3     know we have a final and appealable order.

4          THE COURT:  I am not opposed to that

5     language.  I don't think it's necessary.

6          But anything else we need to add or

7     consider from Mr. Boldt?

8          MR. BOLDT:  No, Your Honor.

9          THE COURT:  Ms. Stalter, anything else we

10    need to consider in this order?

11         MS. STALTER:  You granted our petition to

12    intervene but we have the other petition for

13    the determination of the arrearage and the

14    lawful collection of those arrearage.  That's a

15    petition so I didn't know if the other one.

16         THE COURT:  There is no response filed to

17    that?

18         MR. BOLDT:  None were required, Judge.

19         You indicated on the last occasion that

20    the petition to intervene had to be determined

21    first.

22         THE COURT:  All right.

23         MR. STEELE:  One statement, Judge.

24         THE COURT:  Well, let me first follow-up

25    on this.  So what relief, if anything, are you

69

1   asking for in this order?  You are not asking

2   for money.

3       MS. STALTER:  Correct.  This was attached

4   to the petition to intervene and the

5   determination of the monies owed to the Crown

6   and that the department had the authority to

7   collect and enforce the payment due on that

8   arrearage amount.

9       MR. BOLDT:  I would think my client should

10  be given leave to respond, Judge, because the

11  Court did not require it previously.

12      THE COURT:  That only seems fair.  All

13  right.  So you are not objecting to anything in

14  this order that I have just laid out?

15      MS. STALTER:  No.  You granted our

16  petition to intervene so I am good with that.

17      MR. MIRABELLI:  Can we do two orders,

18  Judge?  One order allowing intervention and

19  then.

20      THE COURT:  Yes.  You have to get a

21  separate order for that but what is it.

22      I mean I am just trying to think since the

23  citations are terminated the money has been

24  turned over you are asking for some sort of

25  declaratory judgment by this Court as to?  I

1     mean the reason that I wanted notice to be

2     given to you and you allowed to participate is

3     if you had any claim as to this money speak now

4     or forever hold your peace.

5          MS. STALTER:  You are limiting it to this

6     pot of money?

7          THE COURT:  I am.

8          MS. STALTER:  And my understanding from

9     our client is they are not interested in this

10    pot of money specifically.

11         But what if Mr. Boldt's client wins the

12    lottery they want to be able to attach that or

13    if there are other monies that he receives and

14    they want to be able to as through regular

15    child support enforcement proceedings be able

16    to collect monies that are due the Crown

17    through that regular statutory process.

18         THE COURT:  Sounds to me like it's a

19    declare.

20         MR. BOLDT:  Sounds that way to me, too,

21    Judge.

22         THE COURT:  Sounds like you are seeking

23    declaratory relief from me which I would

24    certainly give you a chance to respond to.

25         I am not sure if the impact on that as to

```
 1          whether this is final and appealable or not.
 2               MR. BOLDT:  It may affect whether the
 3          entire matter has been determined, Judge.
 4               You are correct at least in my view.
 5          Obviously Counsel for Petitioner would say
 6          something else.  And quite frankly, Judge, I
 7          think this Court and all the Counsel standing
 8          in front of it are well aware that if you write
 9          it is a final and appealable order the
10          Appellate Court is going to decide whether it
11          is or not.
12               THE COURT:  Right.  Whether I say it.
13               MR. BOLDT:  Whether we say it.
14               THE COURT:  Is not determinative.
15               MR. MIRABELLI:  That's why he stepped up
16          to tell me I made a mistake.
17               THE COURT:  Go ahead, sir.
18               MR. STEELE:  And normally I'm not in the
19          business of correcting the boss.
20               THE COURT:  You got to do that sometimes.
21               MR. STEELE:  He requested that the order
22          recite that it was final and appealable.  It's
23          actually, at least the order pertaining to the.
24               THE COURT:  Motion to reconsider.
25               MR. STEELE:  Is not final and appealable
```

```
1    because it was time barred so he would have had
2    to file an appeal within 30 days of the entry
3    of the turnover orders.  So to try to bootstrap
4    it into an appeal the Appellate Court is going
5    to give him the boot anyway because he is more
6    than 30 days outside of judgment orders.
7         MR. BOLDT:  And I would disagree with
8    that, Judge.  As the PNC Bank case clearly
9    indicated there is not a lot of law on that.
10   And my argument was clear that until you
11   receive the money it is not a final order.  And
12   I could file within 30 days of that so I know
13   what the Court ruled.
14        I respectfully disagree with the Court and
15   I respectfully disagree with the Court under
16   the Schak versus Blom case as to whether the
17   Court.
18        MR. MIRABELLI:  I won't put in the
19   language final and appealable.
20        THE COURT:  So here is what I am doing.
21        I am denying the motion to reconsider.  I
22   am directing that the funds that are being held
23   can be released from whatever, they were prior
24   Court orders they are now released to be
25   distributed to the judgment creditor and their
```

1        Counsel.  I will give, certainly give Mr. Boldt

2        an opportunity to respond to the petition to

3        determine arrearages.  And we can set a

4        briefing schedule and a hearing on that.

5           And as to whether any of these are final

6        and appealable is an issue you will have to

7        sort through along with the Appellate Court I

8        guess.

9           MR. BOLDT:  I guess, Judge.  Are you going

10       to keep the case as to the motion to intervene?

11           Because Counsel indicated that once the

12       intervention is granted the case normally goes

13       down to Judge Waites.  Is that correct, Ladies?

14           MS. SALZWEDEL:  For issues of child

15       support.

16           MS. STALTER:  Well, that is true.

17           MS. SALZWEDEL:  All of the 4 D cases are

18       assigned to Judge Waites for issues of child

19       support.  Only they are assigned to other

20       Judges on the first floor for non support

21       related issues.

22           MR. BOLDT:  And since you granted the

23       petition to intervene under 4 D and it would

24       seem that the case would have to be that

25       portion at least of the case according to what

1    the State's Attorneys are telling me should be

2    transferred to Judge Waites because you were

3    granted leave to intervene under 4 D.  Is that

4    correct?

5    MR. MIRABELLI:  That is correct.

6    MR. BOLDT:  So the order should reflect

7    that it is granted under 4 D.

8    THE COURT:  Well, I am going to keep the

9    case for now.  And Judge Waites can, you can

10    ask me to transfer it down there or she can ask

11    me to transfer it down there.  I am not sure

12    what there is left to tag on to.  You have

13    intervened in to an action that.

14    MS. STALTER:  Right.

15    THE COURT:  That is resolved.  So how much

16    time would you like to file a response to their

17    petition?

18    MR. BOLDT:  21 days, Judge.

19    THE COURT:  That's fine.  How much time

20    would you like for a reply?

21    MS. STALTER:  I have to see where that

22    puts us.  See our schedules.

23    MR. BOLDT:  23rd of June.

24    THE COURT:  Three weeks is 23rd.  One week

25    would be the 30th of June.

```
 1                MR. BOLDT:  Would be July 7th.

 2                THE COURT:  July 7th.

 3                MR. BOLDT:  They can have 14 days to

 4       reply, Judge.

 5                THE COURT:  July 7th for a reply.

 6                MS. STALTER:  Yes.  July 7th for a reply

 7       will be fine.

 8                THE COURT:  Hearing any day of the week of

 9       the 17th.

10                MR. BOLDT:  Let me grab my book, Your

11       Honor.

12                MS. SALZWEDEL:  Standard intervention

13       order.

14                MR. BOLDT:  What are we looking at did you

15       say?

16                THE COURT:  The week of July 17th.

17                MR. BOLDT:  Okay.  Tell me which day,

18       Counsel.  I know Thursday is your busy day.

19                MS. STALTER:  I apologize.

20                MR. BOLDT:  Judge, I would like the other

21       order that Counsel is preparing to reflect that

22       the findings of the Court and rulings of the

23       Court are contained in the transcript.

24                THE COURT:  That's fine.

25                MS. STALTER:  Would Friday be an option,
```

1      the 21st?

2            THE COURT:  Sure.

3            MS. STALTER:  It is the end of our week.

4      There is going to be a co-op Monday and

5      Thursday of that week.  I can double-check and

6      just so I think Friday would probably be the

7      easiest and I'm available any time.

8            What is your schedule like?

9            MS. SALZWEDEL:  I should be fine on a

10     Friday afternoon.

11           MR. BOLDT:  Okay.

12           THE COURT:  1:30 is fine.  Okay.  Make

13     sure that you recite that the motion for

14     sanctions is being withdrawn.  Thank you.  It

15     should say for the reasons stated on the record

16     as transcribed by.

17           MR. BOLDT:  Okay.  Thank you.

18           THE COURT:  Thank you.

19           MS. STALTER:  You said 1:30 on the 21st?

20           THE COURT:  Sure.

21           (Proceedings concluded at 3:15 PM)

22

23

24

25

1   STATE OF ILLINOIS   )

2                       ) SS:
    COUNTY OF L A K E   )
3

4           I, Debra L. Zeit, do hereby certify that I

5   am a Court Reporter doing business in the County of

6   Lake and State of Illinois; that I reported by means

7   of machine shorthand the testimony given at the

8   foregoing Report of Proceedings, and that the

9   foregoing is a true and correct transcript of my

10  shorthand notes so taken as aforesaid.

11

12

13
                        _____
14                      DEBRA L. ZEIT, CSR
                        Lake County, IL
15                      CSR License No. 084-003456

16

17

18

19

20

21

22

23

24

25

**$**

$10,000 [2]  38/7 44/22
$130,000 [1]  48/3
$700,000 [3]  45/5 45/23 46/11

**'**

'99 [1]  9/16

**0**

00 [2]  14/25 15/3
003456 [1]  77/15
04 [4]  1/9 3/2 14/20 15/8
06 [5]  7/10 9/18 14/17 14/19 15/2
084-003456 [1]  77/15

**1**

10 [2]  14/1 14/2
10-10 [1]  14/1
10-3.1 [1]  14/4
1001 [1]  66/13
109 [2]  19/16 56/22
1099 [2]  30/11 30/25
11 [2]  7/6 7/8
12 [1]  8/5
12-1001 [1]  66/13
1203 [5]  50/13 50/21 50/22 50/22 50/23
129 [1]  36/18
12th [8]  17/9 17/21 17/22 18/4 20/21 50/10
 50/11 57/21
130 [1]  48/2
130,000 [3]  48/1 48/15 48/15
137 [1]  54/6
14 [1]  75/3
1401 [2]  24/1 42/21
1402 [29]  16/15 17/4 22/18 22/18 22/23 24/6
 24/7 24/15 26/18 27/22 28/5 28/6 32/9 41/9
 41/16 41/17 41/23 42/11 42/15 43/25 44/4
 60/2 60/8 60/25 61/19 62/13 63/6 65/21 66/9
15th [6]  20/3 20/6 20/8 49/25 52/7 64/10
161 [1]  2/2
167 [1]  25/12
17 [3]  7/25 20/3 51/17
17th [2]  75/9 75/16
18 [3]  1/15 2/12 51/18
1943 [3]  1/9 3/2 14/20
196 [1]  27/4
1966 [1]  25/13
1987 [1]  27/4
1988 [1]  25/13
1999 [2]  10/2 26/11
19th [2]  17/15 17/20
1:30 [3]  1/17 76/12 76/19
1st [1]  8/25

**2**

2-1401 [2]  24/1 42/21
2-1402 [12]  17/4 22/18 24/6 24/7 24/15 26/18
 27/22 41/9 41/16 41/17 65/21 66/9
2-408 [3]  10/24 11/21 15/14
2002 [4]  28/1 28/1 36/2 36/19
2004 [2]  23/7 44/6
2006 [5]  7/4 7/5 7/8 11/7 12/1
2015 [2]  16/12 57/22
2017 [2]  1/17 7/25
2067 [1]  14/25 15/5
209 [1]  2/8
21 [1]  74/18
21st [2]  76/1 76/19
23rd [2]  74/23 74/24
2600 [1]  2/2
262 [1]  23/7
265 [1]  41/4
266 [1]  42/1

**2**

2nd [1]  1/16

**3**

3.1 [1]  14/4
30 [10]  52/6 52/18 52/21 57/17 57/18 64/16
 64/20 72/22 72/6 72/12
305 [2]  10/15 14/1
306 [1]  26/10
307 [1]  1/16
30th [2]  9/2 74/25
333 [1]  28/1
334 [1]  36/17
352 [1]  23/6
36 [1]  16/11
361 [1]  25/16
394 [1]  16/13
3:15 [1]  76/21

**4**

408 [4]  5/22 10/24 11/21 15/14
42 [1]  10/20
425 [4]  7/10 14/17 14/19 15/2
47 [1]  27/3

**5**

5-10-1 [1]  10/15
5/10-10 [1]  14/2
5/109 [1]  56/22
5/2-1402 [1]  22/18
505 [2]  21/18 22/5
53 [3]  50/24 51/4 53/2

**6**

60060 [1]  2/8
60085 [1]  2/13
60601 [1]  2/2
635 [1]  36/18
651 [1]  10/20
680 [2]  16/13 28/1

**7**

735 [2]  22/18 56/22
777 [1]  36/18
79 [1]  25/16
7th [4]  75/1 75/2 75/5 75/6

**9**

907 [1]  26/11
971 [1]  16/11
976 [1]  16/18

**A**

abandoned [2]  7/12 9/19
abandonment [1]  14/16
ability [2]  36/7 51/11
able [6]  4/4 5/20 21/10 70/12 70/14 70/15
about [17]  3/15 5/20 6/7 26/24 34/10 35/25
 37/4 41/12 42/2 46/25 48/24 49/6 56/14 58/4
 58/7 62/17 62/22
above [1]  1/14
above-entitled [1]  1/14
absolutely [3]  42/14 45/11 57/5
according [3]  21/3 58/15 73/25
account [7]  45/21 46/22 48/2 57/13 58/13
 58/13 59/8
accounts [1]  58/9
accrue [1]  21/18
act [2]  10/20 61/5
action [11]  6/3 6/4 7/10 7/12 14/6 36/12 37/8
 37/11 58/14 66/5 74/13
actions [2]  22/25 48/12
actively [1]  22/11
actually [4]  3/21 14/1 54/20 71/23

**A**

added [2]  28/9 29/1
additional [1]  3/11
address [3]  16/7 56/6 67/20
administrative [1]  12/5
admit [1]  45/10
adversely [2]  6/19 15/16
advice [1]  56/8
affect [8]  27/19 35/22 43/21 45/18 48/25 55/9
 61/11 71/2
affected [2]  6/19 15/16
affecting [1]  35/1
affidavit [1]  21/24
affirmative [1]  61/5
aforesaid [1]  77/10
after [15]  8/24 17/14 17/22 22/14 28/15 34/1
 42/1 45/7 48/21 50/24 52/18 56/21 57/21
 64/16 64/20
afternoon [2]  67/20 76/10
afterwards [1]  21/15
again [9]  6/23 37/2 46/17 51/23 60/22 64/16
 65/16 66/12 66/16
against [6]  17/6 37/11 45/24 59/12 59/14
 66/6
agent [1]  29/8
aggregated [1]  33/19
agree [1]  19/25
agreed [3]  4/25 26/12 35/5
agreement [1]  35/8
ahead [2]  12/25 71/17
aid [3]  3/14 10/15 13/21 28/14
all [34]  5/10 7/15 9/16 10/9 13/13 14/13 15/9
 17/17 18/7 22/10 23/21 26/3 38/6 42/2 44/15
 44/19 45/20 46/17 46/20 49/6 51/24 53/3
 54/20 55/5 55/23 56/6 60/9 62/15 63/11 67/3
 68/22 69/12 71/7 73/17
allegation [1]  7/3
alleged [3]  18/21 19/5 22/3
alleges [1]  22/17
allow [5]  17/16 26/16 28/18 34/3 55/24
allowed [5]  4/5 11/16 17/10 28/22 70/2
allowing [2]  33/18 69/18
allows [6]  6/14 21/18 22/24 30/18 31/13
 31/20
almost [2]  51/14 51/15
along [2]  44/20 73/7
already [2]  52/25 54/23
also [12]  7/21 10/18 15/1 15/5 18/16 23/20
 25/13 25/22 32/22 63/13 64/24 66/12
altered [1]  39/25
altering [1]  32/22
although [3]  35/12 44/21 53/14
always [1]  50/16
am [39]  4/3 5/19 8/11 10/14 15/13 15/19
 20/14 22/10 25/14 27/17 27/24 31/22 33/17
 35/10 35/24 45/10 47/11 49/5 49/14 50/7
 51/3 53/8 53/12 58/4 59/6 59/10 64/18 66/21
 68/4 69/16 69/22 70/7 70/25 72/20 72/21
 72/22 74/8 74/11 77/5
amend [2]  21/12 40/7
America [1]  27/2
amount [9]  9/5 11/17 13/1 21/23 22/12 38/2
 47/1 47/3 69/8
amounts [2]  38/4 46/6 64/3
and/or [2]  34/24 67/23
annuity [2]  31/15 38/3
another [6]  17/1 28/17 29/4 49/3 50/22 51/6
answer [2]  49/8 63/18
answered [1]  46/6
any [40]  3/11 3/24 4/24 5/7 6/23 7/15 10/7
 14/6 16/2 17/16 18/17 22/12 23/5 24/10
 24/20 27/1 27/12 28/12 36/7 36/9 36/24 37/1
 38/11 40/6 43/14 48/15 49/1 49/6 54/6 55/22

**A**

any... [10]  57/13 57/14 58/13 60/8 63/2 67/14
  70/3 73/5 75/8 76/7
anybody [2]  44/25 45/22
anymore [2]  48/3 60/13
anything [17]  4/4 6/7 6/10 10/23 14/13 31/15
  46/1 46/20 46/21 55/8 61/7 61/15 67/19 68/6
  68/9 68/25 69/13
anyway [1]  72/5
anywhere [1]  62/22
apologize [1]  75/19
App [6]  23/6 25/12 25/16 26/10 28/1 36/18
Apparently [1]  13/17
appeal [7]  23/21 50/20 52/21 56/1 68/2 72/2
  72/4
appealable [12]  49/22 50/2 52/6 52/12 64/21
  68/3 71/1 71/9 71/22 71/25 72/19 73/6
appear [1]  15/10
Appellate [13]  16/12 27/4 33/22 35/21 36/19
  42/13 42/18 43/6 43/20 44/5 71/10 72/4 73/7
apple [1]  53/1
Applicant [2]  6/2 6/18
applicants [1]  14/8
application [1]  24/17
applied [1]  36/9
apply [1]  40/15
appreciate [2]  53/9 53/11
appreciation [3]  27/7 34/11 35/19
appropriate [4]  29/5 58/23 65/2 67/15
appropriately [1]  21/3
approved [2]  27/9 59/16
approving [1]  25/18
approvingly [5]  27/18 32/12 33/22 60/23
  61/9
April [7]  17/9 17/21 17/22 20/21 50/10 50/11
  57/21
April 12th [6]  17/9 17/21 17/22 20/21 50/11
  57/21
are [119]
argue [3]  44/17 52/19 54/24
argued [5]  23/24 49/12 49/17 60/16 62/1
argues [1]  45/3
arguing [5]  51/10 53/14 56/20 58/7 61/21
argument [27]  3/11 15/7 16/2 24/15 32/2
  32/4 32/5 34/1 35/25 41/19 42/9 42/17 44/2
  46/24 46/25 47/22 49/15 54/18 55/2 56/12
  57/7 59/24 60/11 62/20 65/16 65/17 72/10
arguments [7]  46/18 47/7 47/21 51/10 54/14
  60/6 63/12
arrearage [13]  4/23 5/1 6/11 7/2 8/3 8/4 10/1
  11/2 11/16 21/22 68/13 68/14 68/9/8
arrearages [3]  4/10 11/4 73/3
Article [2]  14/11 14/12
Articles [1]  14/9
as [71]  3/7 3/19 3/24 5/14 5/21 6/19 7/1 7/10
  7/24 8/14 11/19 12/22 13/14 16/16 18/5
  20/25 21/1 21/5 21/11 21/17 23/10 24/3 25/8
  28/9 28/11 28/23 29/19 29/22 33/21 36/17
  36/23 37/17 38/4 38/15 39/3 39/24 40/19
  42/6 42/15 43/23 44/13 44/19 48/13 49/14
  49/14 51/15 51/20 53/6 54/5 54/17 56/18
  57/2 57/9 58/6 58/19 59/11 62/25 63/21 64/9
  65/6 66/9 69/25 70/3 70/14 70/25 72/8 72/16
  73/5 73/10 76/16 77/10
ask [3]  36/21 74/10 74/10
asked [4]  8/4 35/18 53/16 55/22
asking [4]  11/15 69/1 69/1 69/24
asserted [1]  15/11
asset [5]  22/24 24/21 58/16 65/22 66/9
assets [19]  24/18 25/20 25/22 27/14 34/21
  34/23 35/22 36/9 36/11 39/22 42/24 43/2
  43/23 45/8 45/9 48/19 59/21 60/9 61/10

**B**

assign [1]  34/7
assigned [3]  9/16 73/18 73/19
assignment [12]  7/3 7/13 8/13 8/15 8/17 8/19
  9/9 9/10 9/11 9/24 10/2 10/5
Assistance [1]  14/10
assisting [1]  26/18
assume [3]  19/23 19/25 47/25
attach [3]  9/24 10/24 70/12
attached [6]  11/1 18/17 47/22 54/21 66/10
  69/3
attack [3]  57/10 62/24 63/2
attacked [2]  43/13 57/14
attacking [2]  51/1 51/3
attempting [3]  5/7 8/20 12/4
attempts [1]  12/4
attention [3]  53/4 54/9 65/10
attorney [4]  2/7 2/12 19/13 65/4
attorney's [3]  4/21 7/9 53/20
attorneys [5]  17/12 17/24 56/8 67/23 74/1
attractive [2]  24/7 41/16
authority [12]  10/11 11/18 11/18 11/23
  22/18 27/13 33/3 33/5 34/20 42/22 65/18
  69/6
authorizes [1]  24/12
automatically [1]  22/6
available [5]  54/5 65/11 76/7
avoid [1]  25/20
aware [4]  22/9 22/11 34/14 71/8

**B**

B1 [2]  30/23 34/3
back [8]  22/11 52/15 52/19 52/23 54/11
  54/24 58/10 66/23
bank [23]  16/10 21/1 23/6 24/4 29/14 30/20
  32/25 38/15 42/10 42/13 44/22 44/23 48/1
  48/15 58/8 58/9 58/11 59/3 59/7 60/7 61/6
  63/21 72/8
barn [1]  45/6
barred [2]  46/17 72/1
based [4]  5/9 34/2 64/12 64/17
basically [1]  4/25
basis [5]  3/19 3/24 10/21 11/14 31/15
be [88]
beat [1]  58/4
became [1]  64/20
because [49]  5/13 5/16 6/9 9/1 9/16 9/23 10/4
  18/22 19/9 19/10 20/13 20/21 21/20 22/1
  22/9 23/24 25/11 25/24 27/20 27/23 29/17
  32/23 32/25 33/7 39/16 39/18 40/19 41/19
  45/17 47/2 47/12 48/17 50/4 51/5 53/13 57/4
  59/6 59/17 59/22 59/25 60/13 60/22 62/16
  64/1 69/10 72/1 72/5 73/11 74/2
bed [1]  18/6
been [21]  3/21 3/22 5/8 8/17 15/8 15/20
  15/24 15/25 17/7 17/13 19/11 22/2 22/15
  33/8 39/25 40/14 46/18 56/10 60/13
  63/1 64/5 64/8 64/8 64/23 65/13 67/11 69/23
  71/3
BEERMANN [3]  2/1 53/20 67/10
before [10]  1/14 3/22 18/6 18/15 22/2 36/2
  45/19 47/7 50/24 62/6
began [1]  17/24
beget [1]  50/22
beginning [1]  21/11
behalf [4]  2/5 2/10 14/5 51/11
being [16]  7/22 8/25 14/21 14/22 15/18 15/22
  33/16 38/14 42/15 59/18 65/4 66/25 67/9
  67/16 72/22 76/14
believe [9]  10/2 12/17 13/9 20/5 20/16 25/25
  31/19 32/4 53/13
belong [1]  45/22
beneficiaries [1]  33/13
benefit [6]  27/15 27/20 34/25 42/24 48/7

**C**

781 [1]
benefits [2]  13/18 39/14
best [1]  51/11
better [1]  23/9
between [8]  22/21 24/5 32/13 32/17 33/19
  34/15 41/15 61/4
beyond [4]  25/5 25/7 41/8 42/5
bit [1]  47/4
bite [1]  53/1
Blom [12]  18/9 35/11 36/1 36/17 43/8 43/16
  57/9 57/15 58/11 58/16 62/21 72/16
blunt [1]  6/25
Boeing [10]  27/6 32/13 32/17 32/18 33/11
  34/14 35/7 35/7 39/5 61/4
boggles [1]  23/3
BOLDT [11]  2/7 3/24 5/10 10/22 12/4 12/17
  53/13 53/16 56/3 68/7 73/1
Boldt's [1]  70/11
bond [1]  56/1
book [1]  75/10
boot [1]  72/5
bootstrap [1]  72/3
boss [1]  71/19
both [5]  8/23 28/3 29/11 29/12 60/16
bottom [1]  41/11
bound [1]  6/2
brief [2]  61/24 63/13
briefed [3]  3/3 6/15 15/25
briefing [1]  73/4
briefly [1]  45/3
bring [2]  6/15 65/10
bringing [1]  58/8
brings [2]  9/7 18/12
broad [2]  24/17 29/18
Brothers [1]  25/15
brought [3]  7/20 8/6 54/9
Bureau [2]  26/8 26/10
business [5]  26/8 26/9 37/19 71/19 77/5
busy [1]  75/18
buying [5]  59/6 59/7 59/8 59/9 59/10

**C**

C-307 [1]  1/16
C3 [1]  36/7
calculations [1]  21/23
call [2]  33/21 37/10
called [5]  12/11 16/14 26/8 26/9 49/20
came [5]  7/18 46/23 49/9 50/2 54/19
can [54]  6/8 8/23 10/2 19/21 22/13 27/19
  28/6 29/21 30/23 32/9 32/16 33/7 36/21
  37/24 38/5 38/11 38/15 39/21 41/24 42/12
  43/13 47/15 51/5 52/9 52/10 52/12 57/9
  57/13 57/13 57/21 57/23 57/25 58/2 58/2
  58/17 59/23 60/9 60/23 60/25 61/8 61/10
  61/15 62/24 63/2 66/9 66/19 69/17 72/23
  73/3 74/9 74/9 74/10 75/3 76/5
can't [16]  4/25 30/23 32/21 33/7 33/24 34/17
  37/11 38/16 38/18 50/19 50/21 59/20 59/20
  59/21 62/13 62/15
Canada [1]  15/12
cancel [3]  47/24 55/15 55/16
cannot [7]  21/12 22/11 26/6 28/24 46/10
  50/18 60/4
care [3]  3/8 6/7 46/9
carefully [1]  44/10
Carter's [1]  52/2
case [108]
cases [9]  10/17 14/18 16/20 25/11 28/3 32/6
  63/13 63/22 73/17
cash [32]  35/13 36/24 37/1 38/11 38/17 39/7
  39/12 39/13 39/19 39/20 40/5 40/7 40/16
  41/24 45/7 45/8 45/21 45/22 45/24 46/5 46/6
  46/22 49/9 58/19 58/21 59/19 65/19 66/1

cash... [4] 66/2 66/15 66/15 66/18
cashing [1] 40/1
cause [1] 66/5
CD [3] 38/24 44/21 58/12
CD's [1] 58/8
cents [1] 39/2
certain [6] 34/17 37/24 40/10 40/12 40/13 66/16
certainly [1] 15/15 70/24 73/1
certificate [2] 38/8 38/9
certification [1] 56/22
certified [5] 18/25 19/2 19/20 19/20 19/22
certify [1] 77/4
certifying [1] 19/15
chance [3] 8/8 40/23 70/24
change [6] 12/12 12/13 22/12 22/13 46/10 51/20
changed [7] 33/8 34/3 47/8 47/9 60/14 61/16 63/7
changes [1] 38/25
check [1] 76/5
checked [1] 57/4
checks [2] 17/24 52/13
Chicago [1] 2/2
child [18] 3/18 9/4 10/18 12/6 14/3 14/21 15/13 22/12 22/13 46/15 51/17 51/25 62/8 62/16 62/18 70/15 73/14 73/18
children [2] 51/25 62/5
choose [1] 39/7
CIRCUIT [2] 1/4 1/4
circumstances [1] 36/11
citation [13] 13/24 17/5 17/7 19/10 19/15 21/2 21/13 21/13 23/2 46/23 49/8 49/21 62/9
citations [11] 18/13 18/14 18/17 18/19 54/22 55/3 57/6 57/8 64/14 65/4 69/23
cite [10] 8/3 10/12 10/14 10/22 13/22 16/13 25/15 26/7 50/16 61/9
cited [16] 5/23 13/1 13/20 13/21 16/10 19/11 23/5 27/18 27/24 32/6 36/8 36/17 49/20 60/23 63/14 63/20
cites [4] 6/13 25/11 25/13 32/12
citing [4] 10/10 17/1 33/22 47/10
Civil [2] 19/16 21/14
claim [5] 9/14 9/16 15/10 17/16 70/3
Clark [1] 2/2
clear [7] 19/1 21/12 30/20 35/23 64/17 65/5 72/10
clearly [3] 25/5 43/9 72/8
clerk [7] 15/2 53/17 53/18 53/19 54/2 54/3 56/13
clerk's [1] 55/7
clerks [1] 56/8
client [26] 7/19 7/24 8/25 18/19 22/21 31/2 31/10 31/17 32/19 33/14 33/19 35/7 35/14 35/16 36/21 37/5 37/6 37/6 37/11 38/5 38/18 39/12 51/12 69/9 70/9 70/11
client's [9] 31/8 33/13 34/12 34/22 35/1 37/7 43/2 43/22 45/18
closed [2] 15/1 15/5
club [10] 23/12 23/17 32/23 33/1 33/4 34/4 40/1 41/20 41/24 60/20
clubs [1] 28/10
clueless [1] 45/11
co [1] 76/4
co-op [1] 76/4
Code [5] 3/14 10/15 13/21 19/16 21/14
coin [1] 36/14
colaterally [1] 43/13
collaterally [3] 57/14 62/24 63/2
collect [10] 8/20 11/19 15/12 17/5 45/24 64/3 66/2 67/13 69/7 70/16

collected [2] 66/10 66/19
collecting [2] 3/18 12/6
collection [1] 68/14
come [8] 9/17 21/14 31/17 49/23 51/23 54/16 54/23 61/12
comes [1] 3/1
coming [2] 31/17 50/12
commanding [1] 27/11
comment [1] 65/15
commenting [1] 65/1
Commercial [1] 17/2
companies [6] 18/1 45/13 46/4 52/14 65/18 66/7
company [18] 22/25 27/2 31/4 32/18 35/2 35/6 36/22 37/22 38/19 46/25 48/18 49/2 49/5 55/10 55/16 66/4 67/8 67/9
company's [1] 31/9
compare [1] 41/18
compared [1] 35/19
compel [2] 24/17 36/7
complying [1] 48/20
comports [1] 24/24
conceding [1] 44/8
concerning [2] 61/2 65/3
concert [1] 60/5
conclude [1] 64/18
concluded [1] 76/21
conclusion [3] 26/24 27/21 42/21
conditions [4] 31/5 35/5 37/24 38/23
confers [2] 5/22 5/24
consent [1] 5/2
consequence [2] 48/5 48/22
consider [2] 68/7 68/10
considered [1] 63/12
consistent [1] 31/3
consolidate [1] 15/3
consolidated [3] 14/18 14/25 15/8
consolidates [1] 14/19
construction [3] 24/25 25/9 42/7
constructions [1] 25/2
construe [1] 26/13
construed [3] 24/16 41/8 42/12
construing [2] 25/7 42/5
consulting [1] 30/12
contained [2] 39/4 75/23
contending [1] 23/23
continuing [1] 4/9
contract [20] 22/21 27/15 27/19 30/10 31/22 32/13 32/17 32/22 33/10 33/19 33/24 37/21 38/10 38/21 39/21 42/24 45/12 55/9 61/4 61/6
contracts [3] 22/20 45/15 58/7
contractual [22] 29/15 29/22 29/23 29/25 30/3 30/8 30/15 30/17 30/24 34/24 35/2 35/23 39/5 43/3 43/22 44/23 45/18 45/20 47/19 48/25 49/6 61/11
contrasted [1] 25/23
control [2] 6/21 6/24
controversy [1] 16/24 16/25
conversion [8] 36/16 36/23 37/8 37/9 37/12 58/15 65/24 66/5
convince [1] 46/16
Cooper [2] 19/13 56/19
copies [1] 18/18
copy [8] 7/20 7/21 7/23 20/7 20/15 36/5 47/22 67/2
Corp [1] 17/3
corporate [2] 25/19 25/19
correct [12] 4/19 14/23 15/4 50/9 53/16 67/24 69/3 71/4 73/13 74/4 74/5 77/9
correcting [1] 71/19
could [28] 15/11 15/15 17/17 17/20 25/21 28/12 29/13 29/15 36/13 36/24 37/1 37/6

39/19 39/19 39/22 39/23 40/4 40/16 53/22 53/2 60/21 61/12 61/16 63/7 65/12 65/23 66/2 72/12
Counsel [34] 8/8 8/22 15/18 16/2 16/7 18/20 19/5 21/25 22/10 37/6 44/10 45/3 45/10 45/16 46/10 47/17 47/21 48/23 49/17 49/19 51/10 54/4 54/15 55/25 56/10 62/1 62/6 63/20 71/5 71/7 73/1 73/11 75/18 75/21
count [5] 18/11 21/17 22/16 22/17 43/23
country [2] 23/12 41/20
county [10] 1/3 1/4 1/16 2/12 2/12 7/9 29/20 77/2 77/5 77/14
couple [1] 36/2
course [1] 55/25
COURT [182]
Court's [4] 17/21 26/24 53/4 65/10
courthouse [1] 52/15
courtroom [2] 53/17 56/13
Courts [2] 24/17 43/16
coverage [1] 31/12
creating [1] 26/14
creditor [19] 17/19 17/23 18/21 18/22 19/6 26/12 27/5 27/16 27/20 28/13 35/1 38/8 39/16 42/25 48/6 59/19 67/18 67/22 72/25
creditor's [1] 59/21
creditors [2] 26/18 40/11
Crown [13] 4/9 6/5 7/4 9/15 10/3 11/4 11/9 11/13 11/18 11/24 15/12 69/5 70/16
CSR [2] 77/14 77/15
current [2] 8/2 9/4
currently [3] 11/25 15/18 67/9
custody [1] 6/21

**D**

DANIEL [1] 1/15
dare [1] 45/18
date [6] 18/4 34/15 34/16 35/19 50/9 54/17
dated [1] 7/25
dates [2] 54/19 54/20
dawned [1] 44/13
day [6] 1/17 17/13 49/22 75/8 75/17 75/18
days [19] 50/3 50/24 51/4 52/6 52/8 52/9 52/18 52/21 53/2 57/17 57/18 64/11 64/16 64/20 72/2 72/6 72/12 74/18 75/3
deal [1] 52/16
death [1] 33/13
Debra [2] 77/4 77/14
debt [1] 23/20
debtor [14] 17/6 23/11 27/6 29/7 29/24 29/24 30/1 30/9 36/8 36/12 45/1 48/5 48/7 65/23
debtor's [6] 27/14 29/2 34/21 42/23 61/10 63/20
decide [2] 25/2 71/10
decided [3] 28/17 36/2 65/25
decides [1] 43/4
decision [2] 16/13 28/16
declaratory [2] 69/25 70/23
declare [2] 43/19 70/19
deemed [1] 53/22
defense [3] 46/15 46/15 54/5
defenses [1] 52/24
definite [1] 16/24
delay [1] 68/1
deliver [1] 36/8
delivered [2] 26/4 29/3
denial [2] 52/18 52/22
denied [3] 50/8 50/12 67/12
deny [1] 55/23
denying [2] 66/21 72/21
department [14] 3/8 3/19 4/4 4/7 4/15 10/16 12/6 12/10 13/8 13/10 14/6 15/20 67/12 69/6
dependents [1] 14/8
deposit [3] 38/8 38/9 61/6

**D**

describe [2] 21/7 39/1
description [1] 39/3
despite [1] 27/11
determination [3] 43/21 68/13 69/5
determinative [1] 71/14
determine [4] 16/15 35/18 41/23 73/3
determined [2] 68/20 71/3
determines [2] 9/21 57/10
determining [1] 7/2
dicta [1] 47/13
did [23] 3/5 5/15 7/23 11/1 17/19 27/12
31/23 34/19 39/16 43/10 48/13 48/25 49/1
50/2 54/15 54/16 55/18 57/6 60/15 62/25
64/11 69/11 75/14
didn't [30] 5/13 8/7 9/23 10/22 13/22 24/13
44/12 44/21 45/25 46/1 46/2 46/4 46/20
46/21 47/13 47/14 47/19 54/18 55/2 55/8
55/14 55/15 56/7 57/7 57/20 61/1 62/9 62/10
65/17 68/15
die [1] 39/14
difference [2] 34/14 39/8
different [10] 30/6 38/7 38/12 38/14 39/9
45/13 46/3 49/24 59/2 64/8
dime [2] 33/12 33/14
direct [5] 21/18 27/13 34/20 42/23 64/3
directed [1] 20/4
directing [3] 34/22 43/2 72/22
directly [1] 43/13
disagree [5] 53/15 54/4 72/7 72/14 72/15
disagreed [1] 26/15
disavowed [1] 60/9
discover [1] 45/8
discovered [2] 24/18 36/9
discuss [2] 16/20 18/9
discussing [1] 63/22
discussion [1] 42/2
dismissed [2] 7/12 9/19
disperse [1] 55/25
disposes [1] 16/22
disposition [2] 6/20 6/21
dispositive [2] 44/9 64/25
disrespectful [1] 56/16
dissolution [1] 25/24
distributed [1] 72/25
distribution [2] 6/20 15/16
District [11] 16/12 26/7 26/9 26/12 28/2
30/21 33/22 36/20 43/6 44/6 64/18
Division [2] 28/2 36/20
divorce [1] 14/22
do [48] 3/23 9/14 11/22 12/10 16/1 20/7 20/9
20/12 20/16 21/21 25/21 26/6 28/7 28/12
32/16 32/21 33/3 33/5 33/7 33/24 34/18
35/18 35/22 39/23 44/1 46/20 46/21 47/19
50/13 51/5 55/8 55/11 56/3 59/23 60/4 61/1
61/23 62/20 63/14 64/24 65/1 65/20 66/8
67/1 67/3 69/17 71/20 77/4
document [8] 9/5 10/25 12/3 12/17 23/1
55/12 55/13 56/23
documentation [2] 37/15 58/24
does [13] 3/17 10/12 10/14 12/1 15/9 24/10
33/14 40/10 42/22 43/7 50/22 53/19 64/2
doesn't [16] 8/3 9/17 21/14 30/22 31/2 38/1
38/2 40/15 42/3 42/19 44/1 44/2 45/22 59/23
60/12 63/6
dog [1] 51/16
doing [9] 9/8 17/8 31/2 34/22 35/3 43/25
53/10 72/20 77/5
dollar [1] 47/2
dollars [1] 39/2
don't [41] 3/23 5/4 6/7 6/25 7/16 9/6 9/20
14/15 20/12 20/16 21/7 22/9 34/8 35/24 36/3
48/21 49/1 50/15 51/9 51/14 51/19 52/17
52/23 54/11 55/6 56/9 58/25 59/12 61/13
62/2 62/17 64/6 68/5
done [3] 31/6 31/21 66/3
double [1] 76/5
double-check [1] 76/5
down [4] 42/17 73/13 74/10 74/11
due [10] 4/8 4/11 11/9 11/19 31/11 31/14
44/19 46/20 69/7 70/16
during [3] 50/6 52/8 53/17
duty [1] 43/16

**E**

each [2] 11/21 48/1
earlier [1] 51/4
early [1] 38/17
easiest [2] 38/25 76/7
East [1] 2/8
effect [7] 8/20 10/4 10/6 12/21 17/20 43/12
44/17
effectively [2] 31/7 33/18
effectuate [1] 41/23
either [6] 4/14 5/22 7/12 15/11 15/14 16/23
elements [1] 11/21
eloquently [1] 60/16
eliminate [1] 63/4
eloquent [1] 45/17
eloquently [1] 51/8
else [13] 14/13 29/25 31/16 34/5 44/25 45/22
48/17 55/1 62/22 67/19 68/6 68/9 71/6
embezzled [1] 37/19
embezzlement [7] 36/16 36/23 37/8 37/9
37/13 65/24 66/6
emphasis [1] 44/14
employee [1] 32/14
employer [2] 12/24 12/25
employment [4] 13/11 26/17 30/11 30/25
end [5] 32/10 34/9 42/19 55/20 76/3
ended [5] 7/4 7/5 8/17
enforce [5] 9/4 11/19 28/13 46/12 69/7
enforceable [1] 49/22
enforced [1] 44/4
enforcement [7] 10/18 14/7 14/22 27/11
28/14 68/2 70/15
enhance [1] 29/6
ENRICO [1] 2/3
enter [5] 4/25 30/2 43/10 47/13 64/11
entered [8] 20/3 20/22 49/25 52/7 63/1 63/25
64/9 64/23
entering [1] 43/4
enthusiasm [1] 53/11
entire [2] 16/24 71/3
entirely [1] 64/17
entities [1] 21/3
entitled [9] 1/14 4/24 8/18 25/14 33/12 33/14
46/7 46/8 57/19
entry [1] 72/2
equate [1] 47/17
equitable [1] 29/10
equivalent [1] 53/23
errors [1] 65/11
ERVIN [15] 1/7 1/10 3/1 3/2 4/18 7/4 8/18
8/21 11/5 13/17 15/18 15/24 16/7 22/21 37/5
Ervin's [3] 9/15 17/11 17/23
escrow [1] 17/6
ESQ [4] 2/3 2/3 2/13 2/14
essential [1] 26/20
essentially [1] 11/3
establish [2] 11/22 11/23
established [1] 14/4
esteemed [1] 46/9
estimation [1] 35/24

**E** (cont.)

Evans [1] 7/22
even [8] 6/15 6/25 8/9 9/17 43/15 49/19
52/11 54/18
event [1] 23/5
every [4] 21/18 46/12 55/11 58/22
everybody [1] 28/7
everything [1] 34/5
exact [1] 59/24
exactly [5] 42/9 43/24 60/3 61/22 62/1
example [1] 44/18
exchange [2] 28/19 60/20
exchanges [3] 28/10 34/5 40/2
exclusive [2] 30/21 42/15
excuse [5] 9/2 17/11 29/20 57/24 61/12
execute [1] 52/10
executed [1] 19/18
Execution [1] 27/10
executive [6] 27/7 32/18 33/11 35/7 39/5 61/4
exempt [16] 23/24 23/25 24/3 24/20 40/10
41/13 41/21 42/10 44/3 47/16 49/13 60/1
60/9 61/16 62/15 66/19
exemption [10] 23/25 24/6 40/15 41/15 42/10
44/2 49/10 60/1 61/18 66/18
exemptions [2] 40/9 66/13
exempts [1] 40/12
exercise [4] 16/19 23/9 32/14 34/16
exercises [1] 33/11
exhibit [3] 19/7 19/9 56/19
existing [1] 6/1
exists [1] 9/11
expand [2] 25/4 42/3
expect [1] 61/23
explain [1] 9/18
explanation [1] 23/10
explicitly [1] 24/11
expunge [1] 43/17
extending [1] 50/19
extent [3] 5/3 28/11 48/23
extinguish [1] 5/1

**F**

face [1] 40/18
fact [24] 7/13 8/4 8/12 8/15 11/6 11/25 16/7
16/15 17/13 17/22 18/12 40/12 41/24 46/11
49/24 53/8 53/22 56/9 57/3 62/9 62/10 62/11
62/13 65/8
facts [3] 51/19 65/10 65/11
failure [1] 26/15
fair [1] 69/12
faith [1] 53/14
falls [4] 65/20 65/21 66/8 66/17
Families [1] 14/11
Family [3] 3/8 15/21 67/13
fancy [1] 36/14
far [1] 49/14
fault [2] 48/11 48/11
favor [1] 25/3
faxed [2] 7/19 8/25
feet [1] 58/2
few [2] 16/20 63/22
Fifth [1] 28/2
file [7] 18/15 52/21 57/5 58/14 72/2 72/12
74/16
filed [6] 6/25 7/9 15/20 15/24 22/15 50/24
52/5 64/13 64/16 64/19 68/16
files [1] 56/1
filing [3] 8/13 9/12 50/20
final [21] 16/21 16/22 17/4 49/22 50/1 52/6
52/12 57/20 58/1 58/3 63/23 64/1 64/20 68/3
71/1 71/9 71/22 71/25 72/11 72/19 73/5
finality [1] 16/17
finally [4] 53/1 53/6 55/19 55/20

**Financial** [3]  22/13 49/4 67/7
**find** [8]  20/18 24/7 24/13 24/19 41/17 43/11
45/8 62/19
**finding** [1]  62/23
**findings** [1]  75/22
**finds** [2]  43/9 62/25
**fine** [5]  74/19 75/7 75/24 76/9 76/12
**firm** [5]  5/8 56/20 65/7 67/10 67/17
**first** [18]  10/9 14/3 16/6 17/10 17/17 20/4
28/2 36/19 44/9 44/12 49/18 52/16 54/25
56/6 63/17 68/21 68/24 73/20
**five** [2]  34/3 44/12
**flies** [1]  40/18
**flippant** [1]  56/10
**floor** [1]  73/20
**follow** [3]  37/2 37/14 68/24
**follow-up** [1]  68/24
**force** [5]  8/19 10/4 10/5 44/17 65/18
**foreclosed** [1]  17/8
**foregoing** [2]  77/8 77/9
**forever** [1]  70/4
**Forget** [1]  49/23
**form** [7]  38/25 51/15 53/7 56/14 59/4 65/4
65/5
**forth** [3]  27/17 38/21 41/9
**forward** [2]  41/19 52/10
**found** [5]  48/1 49/11 49/12 55/3 57/5
**four** [3]  4/2 25/15 46/19
**fourth** [3]  26/9 26/12 52/25
**frankly** [2]  6/12 71/6
**Friday** [3]  75/25 76/6 76/10
**front** [3]  41/2 56/20 71/8
**frustrate** [1]  26/17
**frustrated** [1]  53/10
**frustrating** [1]  51/13
**full** [4]  8/19 10/3 10/5 26/23
**fully** [3]  3/3 15/25 37/23
**fund** [1]  31/16
**funds** [15]  5/7 16/16 20/4 23/1 30/9 30/10
33/18 50/25 55/11 55/13 55/14 55/25 64/4
67/4 72/22
**further** [4]  16/2 19/4 35/9 65/1

## G

**gave** [1]  36/5
**geez** [1]  21/9 60/18 62/7
**generally** [2]  13/22 16/22
**gentleman** [1]  33/11
**gentlemen** [1]  55/17
**get** [27]  3/5 30/4 35/9 35/10 35/25 38/9 39/21
42/16 44/12 51/2 52/15 52/17 52/23 56/4
57/19 57/20 59/11 59/12 59/13 59/14 59/14
59/22 60/24 62/10 62/18 68/1 69/20
**getting** [1]  13/18
**give** [20]  4/15 24/16 27/13 30/22 34/19 35/20
38/16 38/19 39/8 39/21 41/25 44/24 44/25
58/12 58/20 62/8 70/24 72/5 73/1 73/1
**given** [3]  69/10 70/2 77/7
**gives** [2]  10/16 32/14
**gloss** [1]  51/18
**go** [17]  12/25 21/19 22/11 27/25 28/17 38/7
45/7 52/10 52/12 52/19 52/23 54/11 58/19
59/22 60/25 66/23 71/17
**goes** [12]  16/19 23/8 24/9 24/14 25/6 25/7
42/4 42/5 43/15 58/10 63/24 73/12
**going** [18]  27/25 34/6 34/6 35/10 35/22 38/1
38/17 49/14 50/7 52/13 53/12 58/4 60/19
71/10 72/4 73/9 74/8 76/4
**gone** [1]  48/4
**Gonzalez** [1]  27/24
**good** [2]  53/14 69/16

**grab** [12]  30/22 30/23 32/9 42/12 42/16
47/15 52/13 60/19 61/19 62/13 62/15 75/10
**grabbed** [1]  58/17
**grabbing** [2]  25/18 61/15
**granted** [8]  52/8 63/10 68/11 69/15 73/12
73/22 74/3 74/7
**granting** [1]  15/19
**greater** [1]  8/5
**Group** [1]  67/7
**guess** [3]  48/2 73/8 73/9
**guise** [2]  25/8 42/6

## H

**had** [24]  1/13 8/8 9/19 17/12 19/11 20/22
29/15 29/23 48/2 49/17 50/4 50/5 51/6 54/14
56/23 57/6 64/5 64/8 64/22 66/4 68/20 69/6
70/3 72/1
**half** [2]  40/22 46/18
**halfway** [1]  41/11
**handed** [1]  12/17
**hands** [3]  26/1 57/23 57/25
**handwriting** [1]  53/25
**handy** [1]  20/10
**happened** [3]  14/17 51/4 60/15
**happening** [1]  30/14
**happens** [1]  48/21
**hard** [1]  47/11
**has** [55]  6/24 7/24 8/8 9/23 10/1 11/18 12/6
12/17 15/20 15/25 16/8 17/7 21/11 22/14
29/24 30/8 31/6 31/10 31/21 33/8 35/13
35/14 35/15 35/16 36/7 37/13 39/25 40/7
40/22 43/12 44/4 44/16 44/16 45/5 45/9
45/10 45/14 46/12 47/3 47/23 49/23 50/16
51/23 54/23 55/1 56/10 57/11 60/2 61/19
62/21 63/3 63/20 67/11 69/23 71/3
**hasn't** [4]  8/17 47/7 47/9 51/17
**have** [134]
**having** [1]  47/11
**he** [74]  3/25 9/1 19/15 31/4 31/12 32/18
33/12 35/16 36/12 36/24 36/25 37/1 37/2
37/2 37/13 39/9 39/10 39/12 39/13 40/22
40/25 44/14 44/17 45/17 45/19 46/10 46/12
46/15 47/10 47/22 47/23 48/2 48/3 48/9
48/10 48/13 48/13 49/23 50/2 50/4
50/12 50/13 50/25 51/8 51/18 52/1 52/3 52/4
52/5 52/15 53/2 53/3 53/10 53/10 54/23 55/1
55/2 55/2 56/10 56/22 59/25 60/11 61/20
61/20 63/21 66/1 66/2 66/4 70/13 71/15
71/21 72/1 72/5
**Health** [3]  3/8 15/21 67/12
**heard** [2]  46/19 47/6
**hearing** [5]  1/13 3/4 53/18 73/4 75/8
**held** [9]  15/18 27/10 36/11 65/20 65/22 66/25
67/10 67/16 72/22
**help** [1]  12/16
**helpful** [1]  47/20
**hence** [1]  57/5
**her** [3]  8/22 9/16 67/23
**here** [15]  7/11 8/5 19/6 20/17 22/10 31/2
38/20 41/20 42/14 42/16 45/1 45/16 47/8
49/7 72/20
**hereby** [1]  77/4
**herein** [1]  19/14
**HFS** [3]  7/24 8/1 9/3
**him** [22]  13/6 13/7 13/9 23/14 32/14 32/16
33/6 34/14 37/14 37/18 37/18 44/14 45/25
46/1 46/2 47/12 48/12 53/15 55/14 59/19
59/22 72/5
**his** [23]  23/11 27/7 33/6 33/12 33/13 34/23
35/4 35/18 37/19 43/3 46/2 46/18 47/18
47/21 48/12 48/25 49/14 49/19 51/11 51/11

**historical** [1]  24/25
**history** [1]  28/7
**hit** [1]  46/22
**HOB1** [1]  17/2
**Hoffmann** [2]  16/11 21/1
**hold** [4]  39/9 39/10 63/24 70/4
**holder** [2]  58/20 65/25
**holding** [11]  17/3 41/7 45/21 46/5 46/7 48/18
49/7 49/8 55/17 64/7 67/17
**Honor** [13]  12/20 13/15 14/16 22/15 27/8
28/5 45/12 54/14 54/17 56/5 67/1 68/8 75/11
**HONORABLE** [1]  1/14
**hope** [2]  18/3 55/19
**horse** [2]  45/5 58/4
**hour** [1]  40/22
**how** [13]  6/8 38/6 38/12 45/17 46/9 47/1
48/24 49/23 59/2 62/2 64/6 74/15 74/19
**However** [1]  30/18
**hypothetically** [2]  47/25 48/10

## I

**I'm** [4]  44/24 49/2 71/18 76/7
**idea** [1]  18/3
**IDES** [2]  13/12 13/15
**ignore** [5]  62/9 62/10 62/11 62/13 62/15
**IL** [10]  2/2 2/8 2/13 23/6 25/12 25/16 26/10
28/1 36/17 77/14
**ILCS** [4]  10/15 14/2 22/18 56/22
**ILLINOIS** [24]  1/1 1/4 1/16 3/8 3/14 3/23
10/15 12/22 13/8 13/10 13/21 14/6 15/12
15/20 16/13 19/16 21/14 24/3 28/8 28/15
42/20 67/12 77/1 77/6
**immediately** [1]  59/1
**impact** [2]  30/3 70/25
**implicit** [1]  24/21
**important** [1]  27/23
**importantly** [2]  7/7 9/9
**impressed** [1]  50/17
**inadequate** [2]  6/2 6/9
**Inc** [2]  25/16 26/10
**inception** [1]  43/12
**included** [1]  62/12
**income** [1]  7/25
**inconsequential** [1]  49/16
**incorrect** [1]  14/25
**incredibly** [1]  45/3
**indented** [1]  36/5
**independent** [1]  33/10
**indicate** [2]  19/4 32/8
**indicated** [4]  4/7 68/19 72/9 73/11
**indicates** [2]  15/2 43/9
**individual** [3]  3/16 3/17 23/20
**individuals** [3]  11/11 17/25 17/25
**information** [1]  65/6
**initial** [2]  50/14 52/19
**initially** [1]  65/13
**Inland** [1]  17/1
**instances** [1]  40/14
**Instead** [1]  44/17
**institute** [1]  14/5
**instructive** [1]  28/4
**insulting** [1]  56/16
**insurance** [43]  13/18 18/1 22/19 22/25 27/2
31/4 31/8 31/12 34/12 34/23 35/2 35/4 35/6
35/12 36/21 37/12 37/21 38/13 38/19 39/12
40/6 40/10 40/17 41/13 43/3 45/13 46/4 49/2
49/4 52/14 55/16 58/18 59/7 59/10 59/11
65/18 66/3 66/6 66/14 66/16 66/18 67/8 67/9
**insure** [1]  37/23
**intended** [1]  48/4
**interest** [7]  4/13 6/1 7/15 9/17 11/10 11/13
59/9

## I

interested [1] 70/9
interesting [3] 26/22 63/15 65/16
interpretation [2] 24/23 24/25
interrelationship [2] 24/5 41/15
interrupt [1] 29/17
intervene [32] 3/7 3/19 4/4 4/5 4/16 5/14 5/20 7/1 7/6 7/7 7/17 9/11 9/21 9/22 10/11 10/12 10/13 10/14 10/17 10/21 10/22 10/25 11/14 13/25 15/19 68/12 68/20 69/4 69/16 73/10 73/23 74/3
intervened [1] 74/13
intervention [5] 7/23 11/16 69/18 73/12 75/12
investment [1] 59/8
invite [1] 16/2
invoke [1] 39/20
involved [1] 5/16
involving [1] 28/5
is [235]
isn't [5] 8/15 22/3 29/18 32/20 34/13
issue [19] 3/21 5/15 5/19 12/12 14/16 16/8 18/8 34/15 35/20 48/24 48/24 49/10 49/19 56/2 56/25 65/2 65/7 65/12 73/6
issued [3] 55/4 65/6 65/7
issues [4] 63/15 73/14 73/18 73/21
issuing [1] 39/6
it [212]
it's [75] 3/21 3/25 4/6 4/17 5/12 7/14 7/25 10/23 12/7 12/9 13/9 14/1 14/15 15/8 18/25 19/2 19/2 19/7 19/21 21/9 21/17 23/24 30/11 30/11 30/12 30/15 30/21 30/24 30/25 32/8 32/23 33/16 37/17 38/3 38/10 38/10 38/14 38/21 39/1 41/7 42/10 42/16 43/11 45/21 46/14 46/17 47/16 48/4 49/9 49/20 49/22 51/13 51/14 51/15 52/12 53/24 54/1 54/2 54/19 55/5 58/1 58/3 59/25 61/18 62/12 62/14 62/23 64/17 65/1 65/16 65/22 66/12 68/5 70/18 71/22
Itasca [10] 23/5 24/4 28/16 29/13 30/19 32/11 32/25 60/3 60/7 62/11
its [6] 29/6 32/13 38/25 43/12 61/4 63/3
itself [1] 51/20

## J

JASICA [1] 1/15
job [3] 59/22 60/24 61/1
John [1] 50/9
JONATHAN [1] 2/3
Judge [91]
Judges [1] 73/20
judgment [77] 6/3 17/6 17/19 17/23 18/21 18/21 18/24 19/5 19/11 19/17 21/18 21/20 21/24 22/1 22/3 22/6 22/7 23/3 23/11 23/13 25/20 27/5 27/6 27/8 27/14 27/16 27/20 28/12 28/13 28/14 29/1 29/24 29/24 30/1 30/5 30/9 34/21 34/25 36/8 36/10 36/12 36/15 38/8 39/16 40/9 40/11 42/23 42/25 45/1 45/2 45/4 45/5 45/6 45/23 46/11 47/15 49/17 54/16 55/18 57/18 58/5 58/6 59/18 59/21 62/10 62/24 63/5 63/20 64/3 65/23 66/10 66/20 67/18 67/22 69/25 72/6 72/25
judgments [2] 24/19 26/19
judicial [2] 1/4 14/7
July [5] 75/1 75/2 75/5 75/6 75/16
July 17th [1] 75/16
July 7th [4] 75/1 75/2 75/5 75/6
June [4] 1/17 8/24 74/23 74/25
jurisdiction [1] 27/1
just [24] 3/5 3/13 3/25 4/5 6/16 13/5 19/23 21/10 23/3 29/9 32/19 33/9 38/24 48/13 59/15 61/25 62/3 62/17 62/20 64/25 68/1 69/14 69/23 76/6

## K

keep [11] 34/9 47/11 48/23 50/19 53/6 58/7 58/8 58/8 61/1 73/10 74/8
keeps [2] 47/10 62/7
Kennedy [2] 25/14 25/15
kicked [1] 51/16
kind [2] 29/18 56/11
knew [2] 19/6 56/21
know [29] 3/22 5/12 9/6 13/4 13/5 13/20 14/15 19/24 20/17 21/20 21/25 22/1 22/9 32/3 36/3 39/19 40/24 45/11 45/15 51/10 53/4 53/7 56/7 62/2 64/6 68/3 68/15 72/12 75/18
knowingly [1] 59/16
knowledge [1] 50/17
known [2] 19/6 21/11
knows [2] 50/15 56/14
Kyle [2] 19/13 56/19

## L

Labor [1] 25/16
lack [1] 23/9
Ladies [1] 73/13
laid [1] 69/14
LAKE [5] 1/4 2/12 7/9 77/6 77/14
language [8] 19/19 26/13 28/9 29/1 57/12 62/21 68/5 72/19
larceny [1] 37/10
large [1] 23/13
Larsen [21] 23/6 28/16 29/14 30/19 32/11 33/20 34/3 36/3 39/4 40/19 41/4 44/15 49/15 60/4 60/7 60/12 60/18 60/22 61/14 62/12 62/14
last [14] 6/18 26/23 40/22 47/8 49/12 51/2 53/17 56/4 56/7 62/1 65/15 66/24 67/3 68/19
late [2] 52/3 53/3
later [6] 7/6 7/8 18/10 50/3 52/8 64/12
law [13] 2/7 11/20 12/22 21/12 27/10 47/7 50/17 51/21 51/24 65/11 67/10 67/17 72/9
lawful [1] 68/14
lawyer [2] 53/11 54/8
lead [1] 42/18
least [10] 5/11 19/18 46/19 51/3 55/20 62/2 65/7 71/4 71/23 73/25
leave [2] 69/10 74/3
left [3] 45/6 64/18 74/12
legal [7] 3/24 10/10 10/21 11/23 12/12 43/12 56/8
Legislature [12] 28/8 28/15 29/12 29/13 34/2 40/3 40/4 60/15 60/17 60/21 61/12 63/7
lengthy [1] 42/1
less [1] 47/4
let [6] 19/23 29/17 52/16 60/19 68/24 75/10
let's [2] 47/25 60/24
letting [1] 12/14
Levacari [1] 49/21
level [1] 55/21
liability [1] 14/8
liberal [1] 25/1
liberally [5] 24/16 26/13 41/8 42/11 42/12
License [1] 77/15
life [27] 22/22 33/15 34/12 35/4 35/12 37/23 38/12 40/5 40/6 40/6 40/10 40/17 43/3 46/3 52/11 58/18 59/7 59/10 59/11 65/18 66/3 66/6 66/14 66/16 66/18 67/8 67/9
lifting [1] 18/5
light [1] 51/9
like [20] 13/6 20/11 31/15 31/15 31/16 32/19 33/9 34/8 36/4 46/14 54/19 59/15 61/7 61/13 70/18 70/22 74/16 74/20 75/20 76/8
limiting [1] 70/5
Lincoln [6] 22/22 46/25 48/4 49/4 67/6 67/7
line [5] 19/3 19/12 19/13 53/19 56/21
lines [1] 44/21
liquidate [1] 29/5
LISLE [1] 2/13
listened [1] 44/10
listening [1] 44/13
little [1] 47/4
LLP [1] 2/1
loan [4] 31/12 37/24 59/12 59/13
local [1] 6/13
located [1] 27/1
location [1] 19/3
logical [1] 33/25
long [2] 46/9 61/1
longer [2] 11/6 12/2
look [12] 7/20 8/7 8/8 14/2 25/14 28/4 28/6 28/20 47/23 52/1 61/7 66/23
looked [2] 6/12 18/15
looking [7] 3/13 8/10 8/24 13/24 15/13 53/7 75/14
looks [2] 13/6 36/4
lose [1] 48/7
loses [1] 48/10
lot [1] 72/9
lottery [1] 70/12

## M

machine [1] 77/7
made [9] 15/7 34/13 42/17 46/24 46/25 55/2 59/25 60/6 71/16
mail [1] 52/14
maintain [2] 37/7 37/11
make [17] 3/12 4/8 7/2 7/23 16/2 16/3 17/16 48/14 49/3 51/9 54/18 55/3 56/12 57/7 60/25 62/18 76/12
makes [2] 48/12 67/22
man [4] 49/1 51/17 55/8 55/12
man's [2] 45/22 45/24
manage [3] 43/22 59/20 61/10
management [5] 17/2 27/14 34/20 42/23 43/2
mandatory [1] 19/19
manifestly [1] 49/18
manner [2] 28/11 57/14
many [2] 49/23 54/14
March [8] 20/3 20/6 20/8 20/23 49/25 50/14 52/7 64/10
March 15th [5] 20/3 20/8 49/25 52/7 64/10
March 17 [1] 20/23
market [1] 58/13
marriage [3] 1/6 25/12 25/24
Martin [1] 26/10
materials [1] 30/13
math [1] 53/2
matter [12] 1/14 5/14 11/3 16/6 25/23 29/22 49/24 51/21 56/7 56/9 60/12 71/3
may [18] 6/1 6/2 7/25 13/4 14/4 14/24 16/4 17/16 17/20 19/8 20/12 24/2 25/10 29/6 31/12 42/8 43/18 71/2
May 17 [1] 7/25
May 19th [1] 17/20
me [44] 7/11 7/19 8/9 8/25 9/2 9/5 12/16 12/18 14/14 15/10 15/15 17/12 19/23 26/22 29/17 29/20 38/19 38/25 41/3 41/12 44/13 44/24 45/14 48/14 50/17 52/16 56/12 56/16 57/24 58/12 58/20 61/12 65/2 65/12 68/24 70/18 70/20 70/23 71/16 74/1 74/10 74/11 75/10 75/17
mean [6] 12/1 29/19 51/9 56/9 69/22 70/1
meaning [3] 39/2 41/18 42/15
means [2] 25/4 77/6
meant [1] 25/2

## M

mechanism [2] 22/5 24/1
Medina [2] 23/12 32/23
membership [14] 23/12 23/14 23/17 23/19
24/13 28/18 32/24 33/2 33/4 33/6 41/20
41/24 46/3 60/20
memberships [3] 28/9 34/4 40/2
method [1] 29/4
middle [1] 14/2
millions [1] 46/14
mind [1] 23/4
mindful [1] 40/3
mine [1] 57/6
MIRABELLI [7] 2/1 2/3 44/7 53/21 59/25
60/11 67/1
misdirect [1] 53/4
misses [1] 60/11
mistake [1] 71/16
modify [2] 22/14 47/18
Monarch [3] 22/22 67/6 67/8
Monday [2] 9/1 76/4
money [55] 6/6 6/6 6/23 8/22 13/10 15/16
17/10 17/18 25/18 30/4 31/3 32/19 33/15
35/20 36/14 37/14 37/18 38/16 38/19 38/24
39/1 39/19 39/21 41/25 42/13 44/24 44/25
47/14 47/16 47/24 48/9 48/17 48/20 48/21
49/7 49/9 49/12 55/17 57/19 57/20 57/24
58/1 58/12 58/13 58/20 58/25 59/14 62/8
62/16 69/2 69/23 70/3 70/6 70/10 72/11
monies [11] 4/8 4/10 11/8 18/5 30/1 66/24
67/14 67/15 69/5 70/13 70/16
month [1] 21/19
monthly [1] 38/2
months [1] 38/11
more [13] 7/6 9/9 12/15 29/5 39/24 47/20
48/16 49/1 52/2 56/14 64/16 64/19 72/5
most [7] 26/22 26/25 39/3 47/6 55/24 61/2
65/5
motion [55] 3/5 5/13 6/12 6/15 7/1 9/12 9/25
13/20 15/22 15/23 16/1 16/9 18/11 18/18
18/23 20/22 21/5 21/8 22/14 24/5 49/19 50/4
50/7 50/8 50/11 50/13 50/22 50/23 50/23
51/6 52/4 52/7 52/17 52/18 52/20 52/22 53/9
53/12 55/24 56/4 56/24 63/9 63/18 64/13
64/15 64/19 64/25 65/9 65/14 66/22 67/11
71/24 72/21 73/10 76/13
motions [5] 3/3 49/24 50/19 50/20 50/21
Mr [29] 3/24 4/20 5/10 10/22 12/3 12/17
13/17 15/24 20/14 21/5 21/8 49/11 50/10
53/7 53/9 53/13 53/16 53/16 54/5 56/3 67/1
67/6 68/7 68/23 70/11 71/18 71/21 71/25
73/1
Mr. [4] 44/7 49/4 59/25 60/11
Mr. Lincoln [1] 49/4
Mr. Mirabelli [3] 44/7 59/25 60/11
MS [36] 3/13 4/2 4/3 7/4 7/21 9/6 10/9 12/8
12/14 12/19 12/24 13/6 13/12 13/15 13/17
14/1 14/15 14/23 15/4 68/11 69/3 69/15 70/5
70/8 73/14 73/16 73/17 74/14 74/21 75/6
75/12 75/19 75/25 76/3 76/9 76/19
Ms. [12] 3/11 3/12 4/18 7/3 7/22 8/18 8/21
9/15 11/5 15/18 16/7 68/9
Ms. Ervin [6] 4/18 8/18 8/21 11/5 15/18 16/7
Ms. Ervin's [1] 9/15
Ms. Evans [1] 7/22
Ms. or [1] 7/3
Ms. Salzwedel [1] 3/12
Ms. Stalter [2] 3/11 68/9
much [7] 12/15 44/14 47/1 47/20 54/1 74/15
74/19
Mundelein [1] 2/8
must [9] 10/5 24/1 24/19 31/4 41/23 42/11
Mutual [2] 22/22 67/8
my [64] 4/17 4/20 5/6 6/8 7/18 7/24 8/25 15/6
18/11 18/15 18/18 18/19 18/22 18/23 19/7
19/8 21/6 22/21 23/4 31/2 31/7 31/10 31/17
32/19 33/13 33/14 33/19 34/12 34/22 35/1
35/7 35/14 35/16 35/24 36/21 37/5 37/7
37/10 38/4 38/15 38/18 39/11 43/1 43/2
43/22 43/23 45/18 46/9 53/23 56/18 56/19
58/12 58/12 58/13 58/20 60/11 63/14 63/16
69/9 70/8 71/4 72/10 75/10 77/9
myself [1] 34/9

## N

name [53] 53/20 53/22 53/24
nature [1] 29/2
near [1] 36/6
necessarily [1] 12/1
necessary [3] 54/8 57/11 68/5
need [10] 22/17 38/22 59/3 62/5 62/8 62/16
66/23 67/19 68/6 68/10
needed [2] 14/20
needs [1] 59/4
Needy [1] 14/11
neither [1] 24/24
net [2] 66/15 66/18
never [6] 3/22 15/8 39/13 45/19 62/22 63/1
new [6] 25/9 28/4 42/7 57/3 65/8 65/11
nicest [1] 45/16
NINETEENTH [1] 1/4
no [47] 5/23 6/13 8/5 9/9 9/10 11/6 12/2 18/5
18/16 18/24 21/4 21/4 21/7 22/5 22/18 22/23
26/5 28/24 31/4 33/2 33/2 33/19 33/25 33/7
34/17 39/11 39/17 39/22 39/22 40/20 41/6
41/10 43/12 44/16 49/7 49/9 55/12 57/15
58/5 58/14 61/22 64/5 68/1 68/8 68/16 69/15
77/15
nobody [1] 45/14 52/13
non [5] 24/20 34/11 60/9 65/3 73/20
None [4] 18/20 19/20 37/19 68/18
normally [2] 71/18 73/12
North [3] 1/15 2/2 2/12
Northeastern [2] 16/11 36/18
not [125]
notarized [1] 59/4
note [3] 41/5 64/24 65/2
noted [3] 54/6 54/18 63/21
notes [2] 16/18 77/10
noteworthy [1] 66/12
nothing [7] 8/18 22/7 24/7 41/17 49/6 55/1
56/10
notice [10] 4/24 5/2 8/1 8/14 12/9 12/12
12/19 12/22 56/1 70/1
notion [1] 41/14
now [34] 3/1 5/11 7/1 7/5 7/13 7/18 8/2 9/3
9/7 18/11 19/22 21/1 22/16 23/8 25/11 27/23
33/3 33/5 33/7 34/6 34/6 35/19 45/3 47/20
50/12 52/24 54/23 54/24 54/25 58/21 67/25
70/3 72/24 74/9
nowhere [1] 54/20
number [3] 5/21 57/16 57/17
numbers [2] 54/16 54/25

## O

obedience [1] 27/12
objecting [5] 4/18 5/9 7/22 7/23 69/13
objection [3] 5/5 31/23 32/1
objects [1] 8/9
obligation [3] 31/10 39/11 63/3
obligations [1] 35/16
obtain [3] 21/19 36/14 37/24
obtained [1] 15/1
obtaining [1] 25/18
occasion [2] 39/25 68/19
occurred [1] 37/20
occurs [1] 16/16
office [4] 2/12 4/21 7/9 10/17
officer [2] 6/22 25/19
oh [5] 13/12 15/4 21/9 29/14 60/24
okay [12] 13/19 19/24 20/1 32/8 40/24 41/4
50/6 61/23 75/17 76/11 76/12 76/17
omission [1] 54/9
omissions [2] 25/10 42/8
once [4] 12/11 18/6 53/24 73/11
one [23] 5/21 6/18 7/13 8/6 11/21 14/21 14/21
14/22 16/18 16/22 18/11 24/13 39/24 46/23
50/22 55/2 55/5 55/22 57/16 67/22 68/15
68/23 69/18 74/24
only [12] 8/3 10/3 22/13 28/22 40/12 44/15
46/23 57/6 67/21 67/22 69/12 73/19
op [1] 76/4
opinion [2] 53/23 63/16
opportunity [1] 73/2
opposed [1] 68/4
opposing [3] 8/8 46/9 54/15
option [1] 75/20
orally [1] 60/17
order [95]
ordered [6] 15/17 17/14 25/25 47/6 49/13
55/10
ordering [2] 49/2 49/5
orders [14] 16/21 26/16 26/19 30/3 43/17
50/1 50/1 63/22 63/23 64/11 69/17 72/3 72/6
72/24
original [3] 18/14 18/18 57/6
other [25] 3/14 4/5 6/4 6/10 15/22 21/7 22/7
23/23 28/10 29/8 36/8 40/2 40/14 47/22 53/3
54/7 55/7 56/2 60/8 64/6 68/12 68/15 70/13
73/19 75/20
others [1] 40/13
otherwise [1] 57/15
our [16] 5/8 10/11 10/16 10/20 10/21 48/11
49/8 53/22 53/23 53/24 62/18 68/11 69/15
70/9 74/22 76/3
out [22] 6/6 6/16 7/11 19/17 26/8 38/7 43/10
51/16 52/1 52/12 56/18 58/21 59/12 59/13
59/22 60/18 60/21 60/25 61/3 61/12 62/3
69/14
outside [5] 8/24 31/7 31/8 35/4 72/6
over [32] 5/8 7/13 8/13 8/15 15/17 17/11
17/15 17/18 18/6 23/3 25/6 34/24 42/5 43/7
43/20 44/11 44/11 45/5 47/2 47/5 47/14 48/9
48/20 49/14 51/15 51/18 54/15 55/18 60/3
64/22 67/5 69/24
overly [2] 29/18 35/25
override [1] 29/21
overriding [1] 51/22
overruled [3] 32/1 44/16 60/13
owe [1] 48/17
owed [4] 6/5 11/4 30/1 69/5
owing [1] 11/9
own [3] 48/12 63/3 63/14

## P

page [5] 16/18 36/4 36/6 41/11 42/1
paid [4] 33/16 37/23 38/4 51/17
panel [1] 51/22
papers [1] 54/7
paragraph [6] 4/2 14/3 26/23 28/20 28/21
41/12
parallel [1] 16/12
Park [1] 2/8
part [6] 25/22 32/3 32/5 36/10 37/25 65/22
participate [1] 70/2
particular [4] 13/22 13/23 43/11 44/3

parties [8]  4/14 4/25 6/1 11/24 16/23 30/4 35/6 64/4
party [9]  17/6 22/20 23/2 23/23 29/8 30/2 33/20 37/4 65/23
passionate [1]  35/25
path [3]  12/12 12/13 28/17
pay [8]  31/10 34/14 37/22 38/1 48/5 48/6 49/1 51/24
paying [1]  48/13
payment [9]  11/19 12/11 12/13 28/13 30/24 32/15 32/15 49/3 69/7
payments [1]  31/14
peace [1]  70/4
penalty [1]  38/18
pendency [2]  50/6 64/12
pending [3]  15/23 20/22 50/24
Penn [3]  22/22 67/6 67/8
penny [1]  46/15
pension [1]  31/16
people [1]  51/24
perceive [2]  25/10 42/8
perfect [3]  24/5 41/15 60/6
perhaps [5]  44/11 45/11 45/11 52/21 67/25
period [1]  54/10
permission [1]  5/18
permit [2]  40/1 63/7
permitted [2]  11/20 32/9
permitting [1]  63/6
person [3]  36/7 39/18 47/23
pertaining [1]  71/23
petition [23]  3/7 3/9 3/10 4/8 4/19 7/1 10/11 10/13 10/13 10/21 10/23 11/2 13/20 15/19 68/11 68/12 68/15 68/20 69/4 69/16 73/2 73/23 74/17
Petitioner [8]  1/8 2/5 3/15 11/11 17/5 17/7 19/14 71/5
Petitioner's [4]  19/5 21/25 37/5 37/6
phonetic [1]  49/21
Pick [3]  25/12 25/23 28/23
pills [1]  52/3
placed [1]  26/1
Plaintiff [2]  24/10 64/2
pleading [3]  21/9 21/13 54/6
pleadings [2]  9/25 54/21
PM [2]  1/17 76/21
PNC [6]  16/10 20/25 57/18 57/22 63/21 72/8
point [11]  4/6 6/16 24/10 27/17 41/6 41/10 44/9 48/16 49/11 64/23 67/14
pointed [2]  7/10 56/18
pointing [1]  57/25
policies [9]  22/20 34/23 40/11 40/13 55/15 65/19 66/14 66/16 66/19
policy [34]  31/5 31/6 31/7 31/13 33/16 34/13 35/13 36/22 37/12 37/15 37/17 38/13 38/22 38/23 39/12 39/20 40/6 40/17 41/13 43/3 44/3 45/25 47/3 47/23 47/25 48/10 51/22 58/19 58/20 59/15 62/4 62/7 65/25 66/2
portion [3]  16/25 33/25 73/25
position [11]  8/16 17/5 18/23 18/24 19/24 20/25 29/18 29/19 43/1 43/23 64/2
possible [1]  45/17
possibly [1]  6/8
post [4]  50/18 50/20 66/10 66/20
posts [1]  56/1
postulating [1]  30/7 31/19
pot [2]  70/6 70/10
potential [1]  15/10
pounding [2]  48/23 48/24
power [9]  44/20 39/23 40/5 42/3 42/20 43/10 44/1 60/2 61/19
powerful [1]  62/21

powers [1]  36/17
PPC [1]  12/13
practical [1]  29/22
precisely [1]  48/16
premium [1]  49/3
premiums [3]  31/11 37/22 49/1
prepared [2]  3/4 53/20
preparing [2]  18/15 75/21
present [1]  11/22
presentment [1]  3/6
preserve [1]  9/25 11/2 21/22
preserved [2]  4/9 4/13
preserving [1]  6/11
presume [8]  9/23 10/1 22/8 23/22 30/10 34/2 57/7 66/17
presuming [1]  31/13
pretty [1]  53/25
previous [2]  19/9 21/2
previously [1]  19/14 28/22 69/11
price [1]  39/7
printout [1]  15/1
prior [4]  17/12 18/4 64/14 72/23
PRITIKIN [2]  2/1 67/10
private [1]  26/2
probably [2]  40/16 76/6
procedure [5]  11/9 21/15 38/21
proceeding [6]  11/25 12/7 17/4 28/12 64/1 66/11
proceedings [9]  1/13 4/10 16/21 26/15 63/23 66/20 70/15 76/21 77/8
proceeds [4]  25/21 30/12 36/15 36/22
process [2]  12/5 70/17
program [2]  11/7 14/10
property [6]  6/20 17/2 28/25 29/2 29/5 29/7
prospectively [1]  22/14
protected [3]  4/14 11/17 11/24
protecting [1]  11/12
provide [3]  3/23 12/4 24/1
provided [2]  3/24 67/4
providing [1]  27/11
provision [3]  22/23 24/11 25/9
provisions [6]  24/6 25/1 26/14 37/3 41/16 42/7
public [7]  3/14 10/15 13/21 29/4 51/22 62/4 62/7
pulled [2]  60/18 60/21
purchase [1]  38/7
purpose [2]  26/21 65/9
purposes [3]  3/18 8/12 22/8
pursuant [2]  26/3 30/9
put [12]  18/6 21/22 32/24 41/19 44/14 44/22 45/19 53/24 57/23 57/25 64/2 72/18
puts [1]  74/22
putting [2]  27/17 38/24

**Q**

quash [1]  20/22
quashed [1]  19/10
question [4]  6/8 7/14 9/7 63/17
questioned [1]  3/22
quite [5]  6/12 23/8 23/10 43/1 71/6
quote [2]  36/6 44/22
quoted [1]  40/19

**R**

raise [2]  5/15 52/24
raised [5]  16/8 46/12 52/25 56/25 65/13
raises [1]  21/8
raising [2]  5/19 8/11
rate [1]  59/9
rather [2]  21/17 23/12
RAYMOND [4]  1/10 2/7 11/12 22/21
re [3]  1/6 25/12 61/21

reach [1]  37/24
43/20 47/14 60/9 61/8
reached [1]  27/21
reaches [3]  25/7 42/5 43/7
reacted [3]  29/11 29/12 29/13
read [12]  3/9 3/9 15/25 32/7 40/21 42/11 42/14 45/12 60/8 63/13 63/13 64/6
readily [2]  29/3 48/19
reads [2]  25/9 42/7
real [2]  40/7 52/11
Really [1]  14/17
reason [4]  51/5 66/1 68/1 70/1
reasonable [1]  54/10
reasons [6]  51/8 55/5 55/23 64/22 66/21 76/15
rebutting [1]  61/20
receive [8]  17/24 24/2 31/3 31/11 33/15 34/10 39/14 72/11
receives [2]  3/16 70/13
receiving [3]  30/9 30/10 32/19
recent [1]  55/24
recipients [1]  14/9
recite [2]  71/22 76/13
recites [1]  4/23
recognizing [1]  11/4
reconsider [21]  15/24 18/12 50/4 50/7 50/14 51/6 52/4 52/17 52/19 52/22 55/24 56/25 63/19 64/13 64/15 64/25 65/9 66/22 67/1 71/24 72/21
reconsideration [1]  50/8
record [3]  53/8 56/13 76/15
records [1]  43/18
recover [2]  36/13 65/24
redeem [1]  39/7
reflect [2]  74/6 75/21
refuse [3]  38/16 58/21 58/23
refused [4]  23/15 23/18 23/18 66/4
regarding [1]  25/1
regular [6]  31/3 31/15 32/19 38/3 70/14 70/17
regularly [3]  30/13 31/18 33/15
rehear [1]  18/12
rejected [1]  44/5
rejects [1]  24/22
related [1]  73/21
relationship [6]  29/23 29/25 30/16 30/18 39/6 44/23
release [2]  9/24 55/14
released [4]  67/15 67/17 72/23 72/24
relevant [4]  3/14 11/7 12/7 14/16
relief [3]  5/3 68/25 70/23
remedy [2]  25/10 42/8
remitted [1]  20/5
repeat [1]  44/10
repeating [1]  34/9
reply [13]  10/7 16/1 18/16 18/23 19/8 21/6 21/6 56/19 61/23 74/20 75/4 75/5 75/6
REPORT [2]  1/13 77/8
reported [1]  77/6
Reporter [1]  77/5
representation [2]  5/25 6/9
represented [1]  19/14
request [3]  11/14 58/24 63/9
requested [1]  71/21
require [1]  69/11
required [5]  10/24 12/25 20/19 58/6 68/18
requirement [2]  26/3 40/20
requires [4]  24/8 41/17 56/15 61/5
requiring [1]  24/12
research [1]  63/15
resign [3]  28/9 33/6 46/2
resignation [2]  23/19 24/12
resolution [1]  26/25

**R**

resolve [1] 25/3
resolved [1] 74/15
respect [10] 10/10 10/12 11/8 12/3 16/3
 16/23 44/20 46/21 64/13 66/24
respectfully [5] 53/14 54/4 63/9 72/14 72/15
respond [3] 69/10 70/24 73/2
Respondent [4] 1/10 2/10 11/11 29/8
responds [1] 24/19
response [6] 3/10 10/7 16/1 65/13 68/16
 74/16
responsibility [1] 19/21
restrict [2] 25/4 42/4
retirement [1] 31/16
retro [1] 22/11
retroactivity [1] 22/8
return [2] 18/16 59/9
reverse [1] 46/16
reversed [2] 26/5 28/24
revoked [1] 10/3
rewrite [1] 29/21
right [44] 3/20 4/15 5/10 5/14 5/15 5/17 5/21
 5/23 5/24 9/20 9/22 10/1 10/17 10/23 11/23
 13/25 14/13 15/9 20/24 30/22 31/3 32/14
 32/17 33/12 38/6 40/18 45/7 45/9 45/24
 46/12 48/25 54/16 54/17 55/11 58/22 58/25
 61/11 61/17 63/11 67/3 68/22 69/13 71/12
 74/14
rights [25] 3/17 12/2 16/23 27/7 27/15 27/19
 29/15 29/22 30/3 30/24 31/8 31/9 34/11
 34/25 35/2 35/19 35/23 42/24 43/4 43/22
 45/18 45/20 47/19 49/6 55/9
role [1] 13/13
room [2] 21/4 51/16
routinely [1] 30/2
rule [3] 6/13 6/14 54/6
ruled [1] 72/13
rules [4] 24/24 25/1 34/17 51/20
ruling [1] 39/18
rulings [1] 75/22

**S**

S-K-E-E-N [1] 27/3
S-P-O-N-T-E [1] 43/19
S-U-A [1] 43/19
SafeCo [1] 27/2
said [49] 1/15 3/25 10/22 17/3 17/4 21/1
 25/20 26/5 28/24 31/22 31/25 32/21 33/2
 34/8 35/21 39/3 39/17 39/22 40/4 42/14
 45/20 46/5 46/7 47/3 47/4 47/23 48/14 48/19
 49/6 49/7 49/9 49/20 50/3 50/6 53/18 54/19
 55/16 58/11 58/14 59/15 59/20 59/25 60/12
 61/13 61/25 62/3 63/21 66/24 76/19
sale [8] 23/17 26/2 29/4 29/4 29/6 29/7 30/12
 33/4
SALZWEDEL [17] 2/14 3/12 4/2 12/8 12/19
 12/24 13/6 13/12 13/15 13/17 14/15 14/23
 15/4 73/14 73/17 75/12 76/9
same [11] 27/21 28/11 28/11 33/23 39/11
 42/21 44/10 44/21 48/13 56/20 59/17
sanctions [5] 21/5 21/9 53/9 53/13 76/14
SARINA [6] 1/7 7/4 11/12 17/11 17/23 37/5
satify [1] 27/8
satisfaction [2] 24/18 36/10
satisfy [3] 23/20 26/20 30/5
satisfying [1] 26/19
savings [1] 58/12
say [28] 10/8 18/22 31/24 37/13 38/1 38/19
 38/20 45/9 45/15 50/7 51/15 52/1 52/7 57/21
 58/2 58/20 59/3 59/23 61/9 61/13 61/17 62/3
 65/5 71/5 71/12 71/13 75/15 76/15
saying [10] 16/19 29/14 33/17 39/15 45/16

**S (continued)**

says [32] 9/5 9/6 14/3 19/1 19/3 24/23 25/5
 27/21 32/10 32/13 32/22 33/3 33/21 33/24
 34/17 37/22 38/4 41/14 42/19 42/21 43/6
 43/20 53/20 57/9 57/18 57/23 60/4 60/5 62/8
 62/12 62/14 62/17
Schak [12] 18/9 35/10 36/1 36/17 43/8 43/16
 57/9 57/15 58/10 58/15 62/20 72/16
schedule [2] 73/4 76/8
schedules [1] 74/22
scheme [1] 26/18
search [1] 26/17
seat [2] 28/19 60/19
seats [2] 34/4 40/2
second [11] 16/11 16/11 26/7 30/20 32/3
 33/22 36/4 36/18 43/6 44/5 64/18
section [19] 10/14 14/7 15/13 17/3 24/1 24/6
 24/7 24/11 24/15 24/21 26/17 27/22 28/8
 40/25 41/16 41/17 60/24 65/21 66/13
Security [2] 10/19 13/11
see [9] 6/25 8/9 13/12 20/11 21/5 21/8 28/6
 74/21 74/22
seek [1] 5/7
seeking [18] 4/7 4/12 4/22 5/4 5/12 6/4 6/10
 6/23 7/6 7/7 7/16 9/3 9/10 10/25 13/9 21/24
 67/13 70/22
seeks [1] 8/2
seem [4] 9/14 40/13 63/6 73/24
seems [2] 56/15 69/12
seen [2] 18/13 62/22
sell [4] 27/6 27/7 28/25 33/6
selling [2] 29/8 31/1
sent [7] 7/24 12/24 13/2 13/7 13/9 18/18
 45/14
separate [2] 16/25 69/21
sequester [2] 26/2 28/25
served [1] 50/5
service [4] 18/16 25/16 26/8 26/9
services [4] 3/9 3/16 15/21 67/13
set [4] 38/21 41/9 47/2 73/3
shall [5] 19/1 19/19 54/7 54/7 57/12
she [7] 8/9 9/16 11/6 12/1 12/15 36/13 74/10
sheriff [4] 26/4 28/23 29/3 29/9
shoes [2] 8/21 37/7
short [1] 9/2
should [22] 4/5 4/15 9/14 10/7 13/24 18/22
 19/6 19/7 21/10 21/25 24/16 25/3 26/13
 51/20 52/5 63/1 65/13 69/9 74/1 74/6 76/9
 76/15
shouldn't [4] 4/9 9/12 9/13 57/24
side [1] 51/13
sign [11] 19/4 21/10 54/8 54/11 54/12 55/12
 55/13 56/14 56/23 57/8 62/9
signatory [1] 44/24
signature [9] 51/2 53/19 53/23 54/24 55/7
 56/7 63/5 65/3 65/3
signed [16] 18/20 18/25 19/2 19/7 19/12
 19/15 21/2 23/1 23/2 35/6 35/8 53/18 54/1
 54/2 54/7 58/9
signing [2] 21/15 53/6
similar [3] 26/25 39/3 61/2
similarly [2] 23/23 28/20
simple [5] 12/9 40/7 43/1 46/10 53/2
simply [2] 4/12 12/5
since [10] 7/21 34/1 39/25 43/5 44/6 47/8
 67/11 67/12 69/22 73/22
sir [2] 16/5 71/17
sitting [1] 6/6
situated [1] 6/19
situation [4] 30/7 30/8 38/15 38/15
six [3] 30/23 38/11 40/21
Skeen [1] 27/3

**S (continued)**

so [69] 3/13 3/4/12 5/8 6/8 6/19 6/24 7/15
 8/20 8/24 9/20 11/10 11/13 11/21 11/22 12/7
 12/16 14/12 15/13 15/19 17/8 17/17 18/3
 18/25 20/24 21/15 21/25 28/15 29/11 36/9
 38/6 39/15 39/21 41/2 43/7 44/14 44/16 45/6
 45/17 47/4 47/20 48/9 48/18 50/12 53/3 54/4
 54/14 54/23 56/24 64/4 64/10 64/15 64/24
 66/8 66/21 66/23 68/2 68/15 68/25 69/13
 69/16 72/1 72/3 72/12 72/20 74/6 74/15 76/6
 77/10
Social [1] 10/19
sold [4] 25/19 26/2 26/4 28/22
some [12] 6/5 6/10 9/4 16/24 41/13 41/13
 46/24 46/25 63/14 63/15 64/14 69/24
somebody [6] 26/16 37/17 48/17 60/23 60/25
 61/5
somehow [2] 23/25 56/13
someone [1] 29/25
something [10] 7/18 12/11 12/13 24/2 31/1
 38/3 47/21 51/4 58/9 71/6
sometimes [1] 71/20
somewhat [2] 18/8 47/12
Son [1] 23/6
sooner [1] 57/1
sorry [4] 3/25 4/3 10/14 35/24
sort [6] 6/11 9/4 40/6 65/21 69/24 73/7
sought [2] 27/5 27/5
Sounds [3] 70/18 70/20 70/22
speak [2] 12/15 70/3
speaking [1] 4/21
special [1] 27/12
specie [3] 36/13 36/13 39/2
specific [6] 5/7 23/2 31/14 35/16 66/13 66/14
specifically [1] 70/10
sponte [1] 43/18
spousal [1] 14/3
squarely [1] 66/8
SS [2] 1/2 77/2
STALTER [23] 2/13 3/11 3/13 4/3 7/21 9/6
 10/9 12/14 14/1 68/9 68/11 69/3 69/15 70/5
 70/8 73/16 74/14 74/21 75/6 75/19 75/25
 76/3 76/19
stand [2] 8/21 37/7
Standard [1] 75/12
standing [3] 22/10 39/15 71/7
started [1] 9/18
starting [1] 10/12
state [25] 1/1 3/16 3/17 5/2 5/3 5/13 7/11
 7/16 8/5 9/3 9/18 14/5 15/11 17/16 17/17
 21/21 24/9 24/14 25/6 42/4 42/20 43/15
 51/23 77/1 77/6
STATE'S [5] 2/12 4/21 7/8 8/16 74/1
stated [3] 5/21 24/4 76/15
statement [5] 6/5 27/9 41/12 56/22 68/23
states [2] 26/11 51/9
stating [1] 22/7
statute [39] 5/22 5/23 6/13 13/23 19/1 21/3
 21/4 23/25 24/16 25/4 25/8 28/4 30/18 30/21
 31/20 33/8 34/19 37/4 39/25 40/8 40/10 42/4
 42/6 42/11 42/15 44/2 44/16 47/9 50/18
 56/15 57/12 58/6 59/22 60/1 60/14 61/8
 61/17 61/18 62/17
statute's [1] 26/20
statutes [3] 3/23 24/3 26/3
statutory [4] 3/19 13/23 24/24 70/17
stay [4] 18/3 18/5 50/3 51/7
stayed [10] 17/13 17/13 17/14 17/15 20/20
 20/24 52/16 57/17 64/12 64/21
STEELE [15] 2/3 4/20 20/14 21/8 49/11
 50/10 53/7 53/10 53/16 54/6 67/6 68/23
 71/18 71/21 71/25
Steele's [1] 21/5
stepped [3] 31/21 35/15 71/15

still [7]  8/19 9/11 10/3 10/5 11/9 39/1 62/15
stock [4]  25/25 27/7 32/15 34/10
stocks [1]  59/19
stomp [1]  58/2
Street [4]  1/16 2/2 2/8 2/12
strict [1]  25/1
strikes [1]  15/15
strongest [1]  32/5
sua [1]  43/18
sub [1]  65/22
subject [2]  6/21 34/16
submit [3]  37/15 58/2 59/4
subparagraph [4]  5/12 5/17 5/18 28/21
substance [1]  51/15
successive [2]  50/18 50/21
such [6]  24/23 26/19 29/2 29/7 29/9 64/9
sufficient [1]  21/16
suggest [1]  64/7
suggested [1]  55/23
Suite [1]  2/2
superior [1]  9/15
supplemental [2]  63/23 63/25
supplementary [2]  16/21 26/14
support [23]  3/18 8/1 8/2 9/4 10/18 12/6 14/4
 14/7 15/13 22/12 22/13 39/17 40/14 46/15
 51/17 51/25 62/8 62/16 62/18 70/15 73/15
 73/19 73/20
supported [4]  26/25 47/21 51/25 62/6
suppose [1]  56/2
Supreme [1]  6/14
sur [1]  21/6
sure [10]  4/8 20/14 22/10 62/18 67/24 70/25
 74/11 76/2 76/13 76/20
surrender [17]  22/19 31/4 31/7 34/4 35/13
 35/14 35/17 37/3 37/16 38/5 38/20 38/22
 40/16 46/1 58/19 58/24 66/15
surrendered [2]  34/24 35/15
surrendering [1]  28/18
SUZANNE [2]  2/14 12/15
SWERDLOVE [1]  2/1

**T**

tag [1]  74/12
take [9]  3/7 17/20 28/24 31/12 38/17 57/13
 59/12 59/13 61/5
taken [1]  77/10
takes [3]  18/23 18/23 18/24
talk [1]  3/15
talked [1]  45/10
talking [5]  34/10 40/22 40/25 42/2 44/19
talks [3]  26/24 37/4 46/10
TANF [1]  14/10
technicalities [1]  52/2
technically [1]  52/11
tell [8]  9/13 14/14 19/21 44/15 48/25 49/2
 71/16 75/17
telling [1]  74/1
Temporary [1]  14/10
ten [1]  39/10
tender [1]  66/4
term [1]  23/9
terminate [4]  45/25 49/5 59/14 61/6
terminated [1]  69/23
terminating [1]  31/22 35/4
terms [7]  29/9 31/5 35/5 37/14 38/23 39/20
 41/8
testimony [1]  77/7
than [20]  4/5 6/5 6/10 8/5 22/7 29/9 36/8
 38/7 38/12 38/14 39/24 47/22 52/2 55/7 59/3
 60/8 64/7 64/16 64/19 72/6
Thank [10]  4/3 4/17 12/14 44/7 56/3 56/5

that [387]
that's [59]  3/21 5/3 6/6 9/5 10/20 10/21 11/1
 11/13 14/24 15/7 15/24 20/25 21/20 27/17
 27/23 30/6 30/10 30/13 31/18 31/19 31/20
 31/25 32/10 32/17 32/24 33/17 34/21 35/3
 35/17 39/9 39/16 41/19 43/21 43/23 43/24
 48/1 48/11 48/11 48/16 49/14 49/18 51/3
 53/1 56/20 57/19 58/16 59/13 59/15 59/17
 60/3 60/13 60/14 61/22 62/1 64/24 68/14
 71/15 74/19 75/24
theft [1]  37/9
their [8]  3/17 5/13 5/25 7/1 9/14 9/24 13/13
 19/21 21/23 21/23 26/19 35/22 35/23 43/21
 54/9 58/2 72/25 74/16
them [5]  3/7 5/24 6/14 7/24 9/13 18/20
 19/22 31/1 36/13 43/16 46/22 46/24 54/12
 61/9 67/17
then [18]  7/10 8/16 9/12 9/19 9/23 17/1 18/4
 20/20 23/3 47/24 48/7 48/10 50/8 51/6 57/12
 61/17 63/24 69/19
theory [1]  40/14
there [60]  3/18 4/10 4/13 5/23 6/6 8/4 10/18
 10/23 11/13 11/22 12/2 12/11 13/19 13/23
 14/18 15/10 18/16 18/24 21/3 21/4 21/7 22/6
 22/17 22/23 30/7 30/17 31/14 36/5 38/10
 39/1 39/2 39/11 39/15 39/19 40/20 46/11
 47/2 47/14 51/5 52/13 53/19 55/11 55/17
 58/5 61/17 63/5 63/22 64/5 64/8 65/6 66/13
 67/19 68/1 68/16 70/13 72/9 74/10 74/11
 74/12 76/4
there's [5]  3/2 3/3 22/5 39/19 39/22
therefore [4]  41/22 42/11 44/3 49/13
thereof [1]  36/15
these [15]  4/9 19/20 22/20 32/6 34/6 34/7
 47/7 51/10 53/18 54/12 54/16 54/19 54/21
 54/21 73/5
they [96]
thing [4]  44/11 59/17 62/5 65/15
things [4]  3/15 32/25 40/3 53/3
think [60]  3/2 3/6 3/24 9/1 9/20 9/21 9/22
 19/7 20/3 20/12 26/22 28/3 28/7 33/25 44/9
 44/21 46/17 46/17 46/24 47/12 48/22 49/18
 51/2 51/19 53/1 53/22 53/25 53/25 54/11 54/13
 54/25 55/19 57/11 63/17 63/18 64/24 65/1
 65/16 65/20 66/8 66/12 68/5 69/9 69/22 71/7
 76/6
thinking [1]  44/20
thinly [1]  21/6
third [5]  3/5 17/6 22/20 23/2 23/7 25/13
 25/16 26/10 28/1 29/8 30/2 33/20 36/4 36/18
 36/20 37/4 52/25 62/4 65/23
Third-Parties [1]  64/4
Third-Party [7]  17/6 22/20 29/8 30/2 33/20
 37/4 65/23
this [83]
Thorlief [21]  23/6 28/16 29/14 30/19 32/11
 33/20 34/2 36/3 39/4 40/19 41/4 44/14 49/15
 60/4 60/7 60/12 60/18 60/22 61/14 62/11
 62/14
those [30]  4/12 11/8 11/21 12/2 18/17 18/19
 25/22 28/3 29/11 29/12 30/4 30/23 32/24
 36/11 43/3 45/14 45/15 45/20 50/1 51/19
 52/8 55/5 57/8 59/19 60/6 64/12 66/21 67/14
 67/15 68/14
though [1]  52/11
thought [1]  61/6
three [16]  5/21 17/25 18/19 22/16 32/24
 43/24 45/13 46/3 49/25 50/1 52/8 52/9 55/7
 64/11 65/22 74/24
through [14]  9/3 10/16 16/19 22/2 23/8
 28/25 30/23 34/3 41/11 42/1 42/2 70/14
 70/17 73/7

throughout [1]  7/22
throw [1]  52/1
Thursday [2]  75/18 76/5
thus [1]  43/18
tied [1]  18/8
ties [1]  10/19
time [29]  4/6 6/24 15/6 20/21 22/12 36/24
 37/1 38/11 43/14 46/17 47/5 47/8 47/11
 49/12 50/20 51/23 51/23 52/14 54/10 54/12
 57/13 62/6 63/2 64/23 68/1 72/1 74/16 74/19
 76/7
timeliness [2]  5/16 5/16
timely [9]  4/6 7/14 16/9 18/7 49/19 49/20
 55/6 62/23 63/19
times [4]  40/21 44/12 46/19 49/23
timing [1]  47/1
Title [1]  10/19
today [2]  3/4 3/6 5/4 56/20
told [1]  39/24
too [4]  20/17 41/3 53/2 70/20
took [4]  25/23 37/17 37/18 56/8
top [1]  36/6
transcribed [1]  76/16
transcript [2]  75/23 77/9
transfer [2]  74/10 74/11
transferable [2]  34/12 34/13
transferred [1]  74/2
trial [11]  23/14 23/16 23/17 23/18 27/13
 27/19 34/19 42/22 50/19 50/20 55/21
tried [5]  23/13 23/16 33/1 54/23 63/14
true [3]  48/1 73/16 77/9
try [3]  52/15 54/24 72/3
trying [5]  21/21 21/21 25/14 47/11 69/22
Tuesday [1]  9/1
turn [5]  22/6 22/16 47/5 55/18 64/22
turned [14]  5/8 15/17 17/11 17/15 17/18 18/6
 19/17 34/24 42/17 47/2 49/13 60/3 67/4
 69/24
turning [3]  23/3 32/15 48/20
turnover [40]  8/22 16/16 18/1 20/20 23/1
 23/11 23/14 33/1 33/18 36/22 43/5 45/9 46/8
 46/8 47/6 47/18 47/24 48/2 48/14 48/21
 49/25 50/1 50/14 50/25 51/1 52/5 55/4 55/10
 55/13 58/1 58/3 63/1 64/4 64/5 64/9 64/11
 64/20 65/14 65/19 72/3
turns [1]  48/9
two [19]  3/2 3/3 5/21 6/9 8/12 11/10 14/18
 16/18 21/17 25/11 30/4 35/5 41/5 50/2 52/9
 55/6 57/17 64/11 69/17
type [3]  53/25 58/16 66/9
types [1]  66/14
typically [1]  12/10
typing [1]  53/22

**U**

ultimately [2]  17/7 64/15
uncertainties [1]  25/3
unconditional [2]  5/23 5/24
under [51]  5/12 5/21 6/9 7/10 10/24 12/22
 14/6 14/9 14/11 16/18 17/3 17/20 19/12
 19/15 21/14 22/5 22/18 22/23 23/25 24/3
 24/14 25/8 27/21 28/20 30/19 32/23 32/25
 32/9 36/7 36/11 37/24 38/22 42/6 42/10
 42/21 43/25 44/4 54/6 56/22 57/11 57/15
 60/1 60/2 61/18 61/19 65/21 66/12 72/15
 73/23 74/3 74/7
underlying [1]  52/23
understand [10]  7/16 12/16 12/23 13/14
 29/19 32/2 41/6 62/4 62/5 64/17
understanding [5]  4/18 4/20 5/6 15/6 70/8
unemployment [1]  13/18
unfortunately [1]  48/4

**U**

unit [1]  14/4
unless [5]  44/25 47/16 55/25 58/23 66/17
until [12]  8/8 17/13 17/15 17/20 17/22 20/20
33/10 57/4 57/20 57/23 57/25 72/10
up [13]  3/1 3/5 7/18 9/7 18/12 22/10 29/3
36/9 38/18 47/11 58/8 68/24 71/15
upheld [1]  23/21
uphold [1]  43/5
upon [7]  16/15 29/9 33/13 50/5 52/10 66/10
66/20
us [9]  8/22 35/20 41/25 44/15 50/5 51/18
55/24 62/8 74/22
USC [1]  10/20
used [1]  65/5

**V**

vacate [5]  15/23 18/11 43/17 63/10 64/19
vacated [1]  19/11
valid [10]  10/4 12/2 19/17 22/3 22/4 54/13
54/22 55/3 55/18 58/5
validate [1]  54/12
value [12]  29/6 34/15 34/16 35/13 36/15
37/25 40/7 40/17 58/19 65/19 66/2 66/15
values [1]  66/18
variable [1]  40/5
various [1]  64/22
veiled [1]  21/6
verses [1]  43/16
versus [25]  3/2 16/10 17/2 18/9 21/1 23/6
25/15 26/10 27/3 28/16 29/14 32/11 35/10
36/1 36/17 43/8 57/9 57/15 58/10 58/16 60/4
60/7 62/11 62/21 72/16
very [3]  28/3 53/10 62/19
victim [1]  48/12
view [1]  71/4
void [6]  43/11 43/11 43/17 43/19 47/13 63/4
vouching [1]  54/1

**W**

Waites [4]  73/13 73/18 74/2 74/9
waived [2]  46/18 55/1
walk [1]  38/18
want [20]  8/7 8/21 14/14 19/24 33/3 33/5
34/8 35/24 37/10 37/14 39/15 39/18 41/18
50/3 51/14 57/22 58/3 58/21 70/12 70/14
wanted [6]  36/25 37/2 52/4 59/18 66/1 70/1
wants [8]  38/9 44/17 46/16 47/17 50/13
51/18 52/1 53/3
was [77]  3/5 4/10 7/11 7/12 7/22 9/25 12/4
13/2 13/6 13/8 13/19 14/17 14/25 15/2 15/17
16/14 17/9 17/14 17/14 17/15 19/17 19/18
20/2 20/3 20/3 20/20 20/21 20/24 21/2 22/3
23/21 25/23 26/1 27/6 28/21 33/23 35/18
35/23 36/1 36/5 40/3 41/12 42/9 42/17 44/13
44/19 44/20 45/20 46/24 47/1 47/1 47/12
49/7 50/2 50/12 50/24 51/5 52/6 54/17 54/25
55/2 59/24 60/9 60/17 60/22 63/19 64/1
64/15 64/19 64/21 65/6 65/8 65/12 69/3
71/22 72/1 72/10
Washington [9]  27/3 27/10 32/12 33/9 33/23
35/18 47/10 59/16 61/3
Washington's [1]  39/17
wasn't [3]  17/22 49/12 56/25
Waukegan [2]  1/16 2/13
way [10]  21/7 26/5 31/18 38/25 42/2 45/17
51/20 53/2 60/8 70/20
ways [1]  8/23
we [91]
weak [1]  62/19
week [6]  9/2 74/24 75/8 75/16 76/3 76/5
weeks [2]  8/5 74/24
well [20]  3/2 7/25 8/11 9/8 9/13 15/9 31/25

went [4]  26/7 42/1 45/7 58/11
were [18]  7/21 14/18 18/5 18/18 18/20 25/22
26/20 47/8 54/13 54/20 54/21 54/22 60/6
64/12 67/4 68/18 72/23 74/2
weren't [1]  65/11
what [65]  4/1 6/24 9/5 9/6 9/13 11/1 12/10
12/16 12/21 13/14 14/17 18/22 19/24 20/3
21/20 25/5 26/22 31/1 31/6 31/19 31/20
31/21 31/25 32/10 33/20 34/21 35/3 35/17
39/16 40/24 40/25 43/24 45/15 45/16 45/19
46/25 47/3 48/3 48/8 48/20 50/2 50/13 53/9
56/14 56/15 59/13 60/3 60/14 60/15 60/16
61/13 61/22 62/1 62/17 65/7 66/23 68/25
69/21 70/11 72/13 72/20 73/25 74/12 75/14
76/8
whatever [8]  30/13 37/10 47/4 51/8 57/21
58/2 66/1 72/23
when [26]  5/15 7/8 7/11 8/4 11/15 14/8 16/15
16/16 16/20 17/4 22/2 22/3 28/4 28/6 28/20
30/7 34/9 36/11 39/7 43/21 48/5 48/9 52/7
57/18 57/19 61/2
where [11]  10/17 19/3 26/11 26/23 35/10
37/21 39/4 40/15 42/19 54/16 74/21
Wherever [1]  47/14
whether [26]  5/20 5/25 7/14 7/15 8/9 10/10
11/8 16/8 18/7 30/11 30/11 30/12 30/24
30/25 30/25 53/24 62/23 62/23 63/18 71/1
71/2 71/10 71/12 71/13 72/16 73/5
which [34]  5/17 5/18 5/22 9/25 10/2 10/20
15/1 15/5 15/24 19/10 22/16 23/22 25/12
25/23 27/2 28/21 28/23 32/4 32/7 33/23
34/23 36/1 43/8 44/9 49/11 51/23 54/7 54/10
55/11 61/3 63/22 66/16 70/23 75/17
while [2]  24/4 41/14
who [8]  13/2 19/13 25/19 27/6 35/6 48/19
53/18 65/6
who's [5]  19/5 33/11 48/18 56/14 56/19
whole [5]  33/15 36/10 40/5 49/10 56/2
whose [1]  25/2
why [18]  3/24 3/25 4/3 6/25 7/5 7/7 7/16 8/13
9/8 9/10 9/18 11/13 15/7 20/25 32/24 33/17
56/25 71/15
wiggle [1]  21/4
will [28]  3/6 12/10 12/12 16/6 18/9 20/18
22/16 29/21 35/9 37/23 39/8 40/23 47/5
48/15 51/2 56/2 56/6 62/3 65/15 73/1 73/6
75/7
wins [1]  70/11
wish [2]  3/12 16/3
wished [1]  5/14
withdraw [1]  53/12
withdrawing [1]  53/8
withdrawn [1]  76/14
withdrew [2]  11/7 12/1
withheld [1]  8/3
withhold [5]  12/9 12/19 12/22 12/25 13/10
withholding [1]  8/1
within [6]  52/6 54/20 66/8 66/17 72/2 72/12
without [8]  5/1 5/2 23/1 23/2 44/8 63/4 63/5
63/6
witness [4]  19/3 19/12 19/12 56/21
witnesses [1]  59/5
won't [1]  72/18
word [2]  36/14 56/4
worry [1]  62/17
would [38]  3/13 4/14 5/1 8/16 9/14 9/15
20/10 20/14 23/24 26/17 28/7 30/2 30/3 37/2
37/13 40/13 47/20 59/3 64/8 65/5 66/4 67/14
67/21 67/25 69/9 70/23 71/5 72/1 72/7 73/23
73/24 74/16 74/20 74/25 75/1 75/20 75/25
76/6

wouldn't [1]  48/3
write [1]  71/8
written [3]  25/8 42/6 60/17
wrong [5]  46/20 46/21 49/18 53/5 54/25

**Y**

yeah [4]  29/15 31/13 34/5 48/16
year [3]  8/14 39/10 39/13
years [5]  7/6 7/8 36/2 39/11 51/18
yes [11]  5/11 10/9 13/16 16/5 20/9 45/4 46/6
49/7 64/21 69/20 75/6
yesterday [1]  7/19
yet [2]  6/16 45/19
you [218]
you're [1]  45/1
young [1]  53/11
your [38]  12/20 13/15 13/20 13/20 14/16
19/24 22/15 27/8 28/5 29/18 29/19 37/14
37/15 37/23 39/22 40/23 41/6 41/12 45/12
48/6 48/11 49/1 50/17 52/25 53/17 54/14
54/17 56/4 56/5 57/23 57/25 63/12 67/1 68/8
70/4 75/10 75/18 76/8
yourself [1]  46/16

**Z**

Zeit [2]  77/4 77/14